No. 23-35518

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, ET AL.,

*Plaintiffs-Appellees,*

*v.*

RAÚL LABRADOR, ET AL.,

*Defendant-Appellant,*

---

On Appeal from the United States District Court
for the District of Idaho

No. 1:23-cv-00142-BLW
The Honorable B. Lynn Winmill

---

## OPENING BRIEF OF APPELLANT

---

RAÚL R. LABRADOR
  *Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
lincoln.wilson@ag.idaho.gov
brian.church@ag.idaho.gov

THEODORE J. WOLD
  *Solicitor General*

JOSHUA N. TURNER
  *Deputy Solicitor General*

LINCOLN DAVIS WILSON
  *Chief, Civil Litigation and
  Constitutional Defense*

BRIAN V. CHURCH
  *Deputy Attorney General*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................iii

INTRODUCTION.......................................................................................................1

STATEMENT OF JURISDICTION ................................................................................2

ISSUES FOR REVIEW ...............................................................................................2

ADDENDUM ............................................................................................................3

STATEMENT OF THE CASE .......................................................................................3

    A.  The Attorney General Responds to Representative Crane by Letter.................3

    B.  Plaintiffs Sue the Attorney General and Others Based on the Crane Letter......5

    C.  The Attorney General Voids the Crane Analysis and Withdraws the Letter. ....6

    D.  The State Seeks to Protect the Attorney General's Immunity and Moves to Dismiss the Case........................................................................................6

    E.  The Attorney General Issues Opinion No. 23-1, Addressing the Idaho Attorney General's Enforcement Authority of Idaho Code § 18-622............................7

    F.  The County Prosecutors Move to Dismiss and File Declarations Regarding the Crane Letter and Their Authority. .................................................................. 10

    G.  Plaintiffs Claim the Crane Letter Chilled Their Speech, but Their Conduct Demonstrates Otherwise. ................................................................................ 12

    H.  The District Court Defers Consideration of Its Jurisdiction Over the County Prosecutors, but Concludes It has Jurisdiction Over the Attorney General. .......................................................................................................................... 13

    I.  The Attorney General Files an Appeal One Day After the Preliminary Injunction was Entered, and the District Court Stays Proceedings................................ 16

SUMMARY OF THE ARGUMENT .......................................................................... 16

STANDARD OF REVIEW ....................................................................................... 17

ARGUMENT ................................................................................................. 18

I. The Eleventh Amendment And Article III Require Dismissal Of Plaintiffs' Claims Against The Attorney General. .............................................................. 18

    A. Plaintiffs' claims must be dismissed because the Attorney General has immunity under the Eleventh Amendment. ............................................... 19

        1. Without jurisdiction over the county prosecutors, the *Ex parte Young* exception does not apply. ........................................................................ 20

        2. The district court ignored the Attorney General's opinion regarding his enforcement powers. ................................................................................ 23

        3. This Court's decision in *Wasden* is inapposite. ......................................... 25

    B. Plaintiffs' claims must be dismissed because Plaintiffs lack standing. ........... 27

    C. Plaintiffs' claims must be dismissed because they are not ripe. ...................... 31

    D. Plaintiffs' claims must be dismissed because they have become moot ........ 34

II. Unusual Circumstances Counsel in Favor of Reassignment on Remand. .......... 39

CONCLUSION ................................................................................................. 42

## TABLE OF AUTHORITIES

### CASES

*Alden v. Maine,*
    527 U.S. 706 (1999) ................................................................18

*Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006) .................................................19, 23, 39

*Assiniboine and Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil and Gas Conserv. of the State of Montana,* 792 F.2d 782 (9th Cir. 1986) .........................................32, 33

*Bishop Paiute Tribe v. Inyo Cnty.,*
    863 F.3d 1144 (9th Cir. 2017) ...............................................32

*Blanchette v. Conn. Gen. Ins. Corps.,*
    419 U.S. 102 (1974) ...............................................................32

*Cal. Trucking Ass'n v. Bonta,*
    996 F.3d 644 (9th Cir. 2021) .................................................36

*Culinary Workers Union, Local 226 v. Del Papa,*
    200 F.3d 614 (9th Cir. 1999) .................................................37

*Disability Rights Montana, Inc. v. Batista,*
    930 F.3d 1090 (9th Cir. 2019) ..........................................39, 41

*Eaglesmith v. Ward,*
    73 F.3d 857 (9th Cir. 1995) ...................................................18

*Ehco Ranch, Inc. v. State ex rel. Evans,*
    107 Idaho 808, 693 P.2d 454 (1984) .....................................24

*Ex parte Young,*
    209 U.S. 123 (1908) .......................................................*Passim*

*Lee v. Oregon,*
    107 F.3d 1382 (9th Cir. 1997) .......................................2, 31, 32

*Log Cabin Republicans v. United States*,
658 F.3d 1162 (9th Cir. 2011) ............................................... 35

*Los Angeles Cnty. Bar Ass'n v. Eu*,
979 F.2d 697 (9th Cir. 1992) ................................................. 19

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) .................................................. 26

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ................................................. 27

*Nat'l Council of La Raza v. Cegavske*,
800 F.3d 1032, 1045 (9th Cir. 2015) ..................................... 39

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ........................................................ 32, 33

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*,
--- F.4th ---, 2023 WL 5286171 (3d Cir. Aug. 17, 2023) ................... 17, 30, 35

*Newman v. Lance*,
129 Idaho 98, 102, 922 P.2d 395 (1996) (per curiam) ................ 8, 9, 22

*Owen Equip. Erection Co. v. Kroger*,
437 U.S. 365 (1978) ......................................................... 18, 19

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004) ................................................. 25

*Preminger v. Peake*,
552 F.3d 757 (9th Cir. 2008) ................................................. 18

*Rocky Mountain Farmers Union v. Corey*,
913 F.3d 940 (9th Cir. 2019) .............................................. 18, 35

*Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*,
968 F.3d 264 (3d Cir. 2020) ................................................. 29

*State v. Summer*,
139 Idaho 219, 224, 76 P.3d 963 (2003 ................................ 8, 9, 26

iv

*Stock West, Inc. v. Confederated Tribes,*
   873 F.2d 1221 (9th Cir. 1989) ........................................................17

*Students for a Conservative America v. Greenwood,*
   378 F.3d 1129 (9th Cir. 2004) ........................................................36

*Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.,*
   240 F.3d 832 (9th Cir. 2001) ..........................................................18

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014). .......................................................................27

*Thomas v. Anchorage Equal Rights Comm'n,*
   220 F.3d 1134 (9th Cir. 2000) (en banc).......................................28

*Thompson v. McCombe,*
   99 F.3d 352 (9th Cir. 1996) ............................................................18

*Tingley v. Ferguson,*
   47 F.4th 1055 (9th Cir. 2022) ............................................30, 36, 37

*Trudeau v. Direct Marketing Concepts, Inc.,*
   90 Fed. App'x 486, 2003 WL 23019099 (9th Cir. 2003) ..............41

*Trump v. New York,*
   141 S.Ct. 530 (2020) ...............................................................31, 33

*United States v. Sears, Roebuck & Co.,*
   785 F.2d 777 (9th Cir. 1986) ..........................................................38

*Wash. Env't Council v. Bellon,*
   732 F.3d 1131 (9th Cir. 2013) ..........................................................2

*Whole Woman's Health v. Jackson,*
   142 S.Ct. 522 (2021) .......................................................................20

*Wolfson v. Brammer,*
   616 F.3d 1045 (9th Cir. 2010) ........................................................29

*Ybarra v. Legislature,*
   166 Idaho 902, 466 P.3d 421 (2020) ................................................4

## STATUTES

28 U.S.C. § 1292(a)(1). ........................................................................2

28 U.S.C. § 1331 .................................................................................2

28 U.S.C. § 1343 .................................................................................2

Idaho Code § 18-623 ...........................................................................9

Idaho Code § 31-2002 .......................................................................34

Idaho Code § 31-2227 .................................................................. 8, 20

Idaho Code § 67-1401(6)(7) ................................................ 4, 20, 21, 24

Idaho Code § 67-802(7) .......................................................................8

Idaho Code § 67-9401(6) .....................................................................4

Idaho Code § 18-622.....................................................................*Passim*

N.J. Stat. § 2C:58-33(a)) ....................................................................30

## OTHER AUTHORITIES

*Abortion Billboards in Idaho*, (Aug. 8, 2023)  https://tinyurl.com/yc4kz2w4; accord KREM 2 News, *Planned Parenthood launches billboard campaign in North Idaho*, (July 28,2023) https://tinyurl.com/47rkpxfm.......................................................13

Andrew Baertlein, *Planned Parenthood billboards will direct Idahoans to out-of-state abortion care*, KTVB7 (July 25, 2023, 7:47 PM MDT) https://tinyurl.com/7x6d225a...........12

Attorney General Opinion No. 23-1 .........................................................*Passim*

Idaho House Bill 242 ...........................................................................9

Idaho State Legislature, *The Sine Die Report 2023: A Summation of the 2023 Legislative Session*, https://tinyurl.com/5fha6ubh (last visited Aug. 28, 2023) .............................3

Kyle Simchuk, *Planned Parenthood launches billboard campaign in North Idaho*, Krem 2 News (July 28, 2023, 10:12 PM PDT), https://tinyurl.com/5n8f6u4t. .....................12

**RULES**

9th Cir. R. 28-2.7 ...................................................................................................3

Fed. R. Evid. 201 ...................................................................................................3

Idaho Rule of Evidence 201 ...............................................................................13

## INTRODUCTION

Plaintiffs asked the district court for a preliminary injunction against the Idaho Attorney General over an interpretation of Idaho's criminal law on abortion that the Attorney General has not threatened, does not hold, did not defend, cannot prosecute, and will not enforce. The district court gave it to them. But that was an advisory opinion and drastic relief against a sovereignly immune state officer.

The district court's injunction announced the unopposed position of the Plaintiffs as constitutional law in this non-existent controversy. To do so, it distorted the record and reduced Article III and Idaho's sovereign immunity to empty shells. The district court focused solely on the Attorney General, who cannot enforce Idaho criminal law, and paid no mind to those who can—the county prosecutors who denied under oath that they would enforce the statute in the manner the Plaintiffs sought to enjoin. It found a purported threat of prosecution from a private letter that the Attorney General withdrew and never sent to Plaintiffs, yet it ignored the Attorney General's public disavowal that he lacks prosecutorial authority over the law in question and would not enforce it in any event. And it "quoted" the Attorney General as having "unambiguously confirmed" the Court's view, but it omitted the back half of the Attorney General's sentence, without any ellipsis to indicate having done so.

The district court's order is an injunction against nothing. It exceeds Article III's limitations on federal judicial power. This Court should vacate the injunction and remand to a new district judge with instructions to dismiss for lack of jurisdiction.

## STATEMENT OF JURISDICTION

Plaintiffs alleged federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. *See* 4-ER-440. The Attorney General contested the district court's jurisdiction based both on his Eleventh Amendment sovereign immunity and the lack of a justiciable controversy under Article III. *See generally* 1-ER-019, 1-ER-024. In addition, a majority of the county prosecutor codefendants also contested the district court's jurisdiction under Article III, 3-ER-293-98; 3-ER-205-07; 3-ER-204; 3-ER-201-03; 3-ER-198-200; 3-ER-161-63; 3-ER-145-47, which the district court was required to address before proceeding to the merits. *See Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013); *Lee v. Oregon*, 107 F.3d 1382, 1392 (9th Cir. 1997). But the district court deferred consideration of the county prosecutors' jurisdictional motions while nevertheless finding a justiciable controversy existed as to the Attorney General, against whom it granted a preliminary injunction on July 31, 2023. 1-ER-018, 1-ER-055-56, 1-ER-060. The Attorney General filed a notice of appeal the next day. 4-ER-460. This Court has jurisdiction to review that order, and the district court's jurisdiction, under 28 U.S.C. § 1292(a)(1).

## ISSUES FOR REVIEW

Does a federal district court have jurisdiction to enjoin a state official from enforcing an interpretation of law if the official has voided and withdrawn the interpretation, legally has no authority to enforce the interpretation, formally disclaimed any authority or intent to enforce it, and never communicated it to the plaintiff or to

any official with enforcement authority, let alone threatened any plaintiff with enforcement?

## ADDENDUM

An addendum containing pertinent statutes is filed concurrently with this brief. 9th Cir. R. 28-2.7.

## STATEMENT OF THE CASE

This appeal is necessary because the district court opined on an abstract, moot, and unripe question that was undisputed by either party. Plaintiffs sued the Attorney General, all 44 county prosecutors in Idaho, and members of the Idaho State Board of Medicine and Idaho State Board of Nursing, claiming their constitutionally protected activity was threatened by the Attorney General. The basis of that threat was the Attorney General's response to an inquiry from Idaho State Representative Brent Crane.

### A. The Attorney General Responds to Representative Crane by Letter.

During the 2023 Idaho Legislative Session[1]—Representative Crane asked the Attorney General whether the Attorney General believed Idaho law prohibited the provision of abortion pills, the promotion of abortion pills, and referring women across

---

[1] The Idaho Legislature began its session on January 9, 2023, and adjourned on April 6, 2023. *See* Idaho State Legislature, *The Sine Die Report 2023: A Summation of the 2023 Legislative Session*, https://tinyurl.com/5fha6ubh (last visited Aug. 28, 2023). The Court can take judicial notice of this fact, which is not subject to reasonable dispute and is accurately and readily determined from a government report. *See* Fed. R. Evid. 201.

state lines to obtain abortion services or prescribing abortion pills that will be picked up across state lines. 3-ER-344. This request went to the Attorney General because the Idaho Attorney General has an enumerated power of providing advice "upon any question of law relating to [Representative Crane's] respective office[]." Idaho Code § 67-9401(6); *see also Ybarra v. Legislature*, 166 Idaho 902, 911, 466 P.3d 421, 430 (2020).

On March 27, 2023, the Attorney General responded to Representative Crane's questions by letter ("Crane Letter"). The Office of the Attorney General hand-delivered the Crane Letter, which addressed in summary fashion Representative Crane's questions. The Attorney General answered the third question with one paragraph advising Representative Crane that an "Idaho health care professional who refers a woman across state lines to an abortion provider or who prescribed abortion pills for the woman across state lines has given support or aid to the woman in performing or attempting to perform an abortion and has thus violated the statue." 3-ER-345.

The Attorney General provided Representative Crane this advice as an "informal opinion" or "level two" opinion. 3-ER-338. That means that the opinion is provided as an attorney-client privileged communication, and it addresses "questions of law of some complexity where a response in writing is appropriate or expected," unlike a level one verbal opinion that "involve[s] simple matters." *Id.* This advice, hand delivered to the Representative, was not an "official attorney general opinion" or "level three" opinion. *Id.* A level-three opinion is an official opinion of the Office of the Attorney General that Idaho law requires be published for public inspection. Idaho Code § 67-1401(6)

4

Official opinions address "questions of major important and/or statewide interest." 3-ER-338. Additionally, a level-three opinion will follow a certain format, setting forth the statement of the question, the conclusion, analysis of the questions, and authorities considered, and provide the lead author's name in addition to the Attorney General's signature. 3-ER-340. The Crane Letter did not utilize that format, and as a level-two opinion, it was not distributed to other persons or posted on the Attorney General's official opinion portal. *See* 3-ER-349.

**B.  Plaintiffs Sue the Attorney General and Others Based on the Crane Letter.**

On April 5, 2023, nine days after the Crane Letter was hand delivered to Representative Crane, Plaintiffs filed suit in federal court against the Attorney General, all 44 Idaho county prosecutors, and the Idaho Board of Medicine and Idaho Board of Nursing. Plaintiffs' lawsuit was based entirely on the Crane Letter, repeatedly asserting that the Attorney General's interpretation of the law—and not the law itself or anyone else's view of the law—violated their rights. *E.g.,* 4-ER-439, 4-ER-444, 4-ER-448-53. Although Plaintiffs named every Idaho county prosecutor, their complaint contained no allegations implicating the county prosecutors. Plaintiffs' complaint asserted claims under the First Amendment, the Commerce Clause, and Due Process Clause. 4-ER-450-54. Plaintiffs also filed a motion for temporary restraining order and preliminary injunction concurrently with their complaint. 4-ER-374-76. That motion sought to enjoin enforcement of Idaho's abortion statute "as interpreted by [Attorney General] Labrador." 4-ER-396.

**C. The Attorney General Voids the Crane Analysis and Withdraws the Letter.**

Upon learning that the Crane Letter had been publicly disseminated and was being misrepresented as something akin to an official enforcement directive, the Attorney General promptly withdrew the Crane Letter and declared its analysis void. The Crane Letter "was not a guidance document, nor was it ever published by the Office of the Attorney General." 3-ER-349. As discussed above, it was issued as a level two, informal opinion, which was hand delivered to the Representative. The Attorney General further explained in the "Withdrawal Letter" that the Crane Letter had "been mischaracterized as law enforcement guidance." *Id.* For that and other reasons, the Withdrawal Letter made clear that the analysis in the Crane Letter was "void in its entirety" and that "[i]t does not represent the views of the Attorney General on any question of Idaho law." 3-ER-350.

The Withdrawal Letter was provided to the district court and parties the same day as its issuance, before a scheduling conference that had been set to determine whether an emergency hearing was necessary. 1-ER-007.

**D. The State Seeks to Protect the Attorney General's Immunity and Moves to Dismiss the Case.**

Consistent with the district court's expedited scheduling, the Attorney General filed a response to the Plaintiffs' motion for a preliminary injunction and a motion to dismiss just nine days after the complaint was filed. That motion sought to dismiss the case on the grounds that the Attorney General was immune from suit under the

Eleventh Amendment, Plaintiffs lacked standing, Plaintiffs' suit was not ripe, and Plaintiffs' suit was moot. 1-ER-008-09. On April 24, 2023, the district court heard the preliminary injunction motion and motion to dismiss. 2-ER-063-114.

### E. The Attorney General Issues Opinion No. 23-1, Addressing the Idaho Attorney General's Enforcement Authority of Idaho Code § 18-622.

Following the hearing, the Attorney General moved for leave to submit supplemental briefing on two matters. 3-ER-311-15. The first brought to the district court's attention a formal opinion, AG Opinion 23-1, (a level-three opinion) that had been issued on April 28, 2023. 3-ER-312. That opinion disavowed the authority to prosecute or assist in prosecuting persons under Idaho Code § 18-622 "unless a county prosecutor specifically so requests and an appointment is made by the district court under Idaho Code § 31-2603." 3-ER-320. The Attorney General sought supplemental briefing to address the effect of AG Opinion 23-1 on the existence of a justiciable Article III controversy. 3-ER-312. The Attorney General also sought leave to file a brief narrowly addressing "the extent to which Plaintiffs' intended conduct here—counseling and referrals for out-of-state abortions—constitutes protected speech under the First Amendment." 3-ER-313.

The district court denied both requests. 3-ER-290-92. It faulted the Attorney General for issuing the formal opinion after the conclusion of the original, expedited briefing schedule. 3-ER-291. And it was concerned that Plaintiffs had already "waited several weeks for urgent relief"—despite its stated concern, the district court would not

7

issue its preliminary injunction order for eight more weeks. *Id.* So, the Court indicated it would resolve the then-pending motions based on the briefs "that the parties timely filed." 3-ER-292. But it did not strike Opinion No. 23-1.

Opinion No. 23-1 began by recounting that the Attorney General "is Idaho's 'chief legal officer,' but not its chief law enforcement officer." 3-ER-318 (citing *Newman v. Lance*, 129 Idaho 98, 102, 922 P.3d 395, 399 (1996)). It cited to Idaho Code § 31-2227, which expresses Idaho's policy that the county sheriff and county prosecuting attorney have primary duty of enforcing all penal provisions. *Id.* And then it referred to Idaho Code § 31-2604, granting prosecutors plenary authority to prosecute felonies. *Id.* Opinion No. 23-1 then acknowledged that the Legislature had removed the Attorney General's ability to "exercise supervisory powers over prosecuting attorneys in all matters pertaining to their duties." *Id.* (quoting *Newman*, 129 Idaho at 102, 922 P.3d at 399, and citing *State v. Sumner*, 139 Idaho 219, 224, 76 P.3d 963, 968 (2003) The Opinion also noted that the Governor's authority under Idaho law permitted him to require the Attorney General to aid a prosecuting attorney, but "may not require the Attorney General to assume those duties himself." *Id.* (citing Idaho Code § 67-802(7)). The Opinion then identified two ways in which a prosecutor could request that the Attorney General either assume the prosecution or seek appointment of a special assistant Attorney General to prosecute the case, subject to approval of the state district court in either manner. *Id.* (citing Idaho Code § 31-2603).

The Opinion first addressed whether the Attorney General had independent authority to prosecute violations of Idaho Code § 18-622. The Opinion concluded the Attorney General did not, referring to specific instances where the Attorney General had been granted such authority, including a recent enactment, Idaho House Bill 242 that authorized the Attorney General to prosecute violations of Idaho Code § 18-623 if the prosecutor refused to prosecute. 3-ER-319-20. An earlier version of House Bill 242, the Opinion noted, gave the Attorney General discretion to prosecute violations of Idaho Code § 18-622, but the final, enacted version did not contain such authority. 3-ER-319. The Opinion concluded that the Legislature had not granted the authority to the Attorney General to prosecute violations of Idaho Code § 18-622 and that the Attorney General "has no power to bring independent prosecutions under that statute." 3-ER-319.

Opinion 23-1 next concluded that the Attorney General may only prosecute violations of Idaho Code § 18-622 on request from a county prosecutor. 3-ER-319-20. It did so after examining *Newman v. Lance* and *State v. Summer*. In *Newman*, the Opinion explained, the Idaho Supreme Court prohibited the Attorney General "from asserting dominion and control" over cases unless there was a request by the county prosecutor. 3-ER-319 (quoting *Newman*, 129 Idaho at 104, 922 P.2d at 401). And in *Summer*, the Idaho Supreme Court noted that a 1998 change in law removed the Attorney General's supervisory powers and "apparently reduc[ed] the authority of the Attorney General in relation to county prosecuting attorneys." *Id.* (citing *Summer*, 139 Idaho at 224, 76 P.3d

at 968). The *Summer* decision reaffirmed that unless the Attorney General has a statutory grant of prosecutorial authority, he may only prosecute upon a motion by the county prosecuting attorney, filed with the district court under Idaho Code § 31-2603. 3-ER-320. Lastly, the Opinion explained that the Attorney General has no referral power, because unlike Idaho prosecutors who have specific authorizations to request assistance and a mechanism to do so, "Idaho law does not grant a reciprocal right to the Attorney General to refer a matter to county prosecutors." *Id.* And so it is within the county prosecutor's discretion to bring charges "absent an express referral to the Attorney General and an appointment by the district court." *Id.* (citing Idaho Code § 31-2603). The Opinion concluded that "the Idaho Attorney General may not bring or assist in a prosecution under Idaho Code § 18-622 unless a county prosecutor specifically so requests and an appointment is made by the district court under Idaho Code § 31-2603." *Id.*

### F. The County Prosecutors Move to Dismiss and File Declarations Regarding the Crane Letter and Their Authority.

Around the time of the district court's hearing on the preliminary injunction motion, Plaintiffs finally began to serve the county prosecutors. 4-ER-490-502 (Civil Docket for Case 1:23-CV-142-BLW). Some prosecutors were not served until after the preliminary injunction hearing. *See id.* As these prosecutors came into the case, they provided declarations informing the Court and Plaintiffs that:

(1) the Attorney General's Office had never sent them copies of the Crane Letter;

10

(2) they only received the Crane Letter in connection with the litigation;

(3) they did not regard the Crane Letter as any type of guidance or directive to them or to their offices from the Attorney General's Office;

(4) their office had taken no position regarding the scope of enforcement under Idaho Code § 18-622;

(5) their prosecutorial decisions are based on each prosecutor's independent legal duty, interpretation of the law, and discretion, and that is no less true with respect to Idaho Code § 18-622;

(6) the Attorney General had no supervisory power over each prosecutor's work or the power to direct each prosecutor to initiate a prosecution without the prosecutor's consent;

(7) the prosecutor was unaware of any prosecution or threat of prosecution brought by that prosecutor's office against any of the Plaintiffs under Idaho Code § 18-622; and

(8) none of the Plaintiffs had facilities in their respective counties.

*See* 3-ER-142; 3-ER-152; 3-ER-155; 3-ER-158; 3-ER-164; 3-ER-171; 3-ER-174; 3-ER-177; 3-ER-180; 3-ER-183; 3-ER-185; 3-ER-192; 3-ER-195; 3-ER-208; 3-ER-211; 3-ER-214; 3-ER-217; 3-ER-220; 3-ER-223; 3-ER-229; 3-ER-231; 3-ER-234; 3-ER-241; 3-ER-245; 3-ER-249; 3-ER-252; 3-ER-255; 3-ER-259; 3-ER-263; 3-ER-267; 3-ER-275; 3-ER-279; 3-ER-283; 3-ER-286.

Based in part on their declarations, the county prosecutors also filed or joined motions to dismiss Plaintiffs' complaint against them and responses to Plaintiffs' motion for a preliminary injunction. 3-ER-293-98; 3-ER-205-07; 3-ER-204; 3-ER-201-03; 3-ER-198-200; 3-ER-161-63; 3-ER-145-47. The prosecutors challenged the district court's jurisdiction and additionally argued that Plaintiffs' complaint—which only referred to the county prosecutors in the "Parties" section—failed to state a claim for relief against them. *E.g.*, 3-ER-206.

## G. Plaintiffs Claim the Crane Letter Chilled Their Speech, but Their Conduct Demonstrates Otherwise.

Just days before the district court issued its decision, Planned Parenthood began a billboard campaign in Idaho to advertise its understanding of Idaho Code § 18-622: that it was legal for women to cross state lines for an abortion. The chief executive officer of Planned Parenthood Great Northwest explained the purpose of the billboards: "So, people know it is not illegal, in fact, to leave the state of Idaho to access abortion care."[2] Another news station reported that the billboards "are a direct response to an increasing number of Idaho patients who are unsure if they can legally leave the Gem State for an abortion procedure. The billboards state it is legal, [CEO] Gibron said."[3] Although these actions clearly demonstrated Plaintiff Planned Parenthood did

---

[2] Kyle Simchuk, *Planned Parenthood launches billboard campaign in North Idaho*, Krem 2 News (July 28, 2023, 10:12 PM PDT), https://tinyurl.com/5n8f6u4t.

[3] Andrew Baertlein, *Planned Parenthood billboards will direct Idahoans to out-of-state abortion care*, KTVB7 (July 25, 2023, 7:47 PM MDT) https://tinyurl.com/7x6d225a.

not feel threatened by the Crane Letter, Plaintiffs had earlier asserted that they were

chilled by the interpretation of Idaho Code § 18-622 in the Crane Letter. *See* 4-ER-451.

Yet their actions tell a different story. Planned Parenthood was not chilled in its speech.[4]

Here is a photo of one of Plaintiffs' billboards:[5]



### H. The District Court Defers Consideration of Its Jurisdiction Over the County Prosecutors, but Concludes It has Jurisdiction Over the Attorney General.

On July 31, the district court granted Plaintiffs' motion for a preliminary

injunction. Although the district court noted that it had an obligation to determine

---

[4] The State brought this information to the district court's attention in its motion to stay filed Aug. 2, 2023. 3-ER-134.

[5] Image sourced from KTVB, *Abortion Billboards in Idaho*, (Aug. 8, 2023) https://tinyurl.com/yc4kz2w4; accord KREM 2 News, *Planned Parenthood launches billboard campaign in North Idaho*, (July 28, 2023) https://tinyurl.com/47rkpxfm. The Court can take judicial notice of this fact under Federal Rule of Evidence 201.

whether subject matter jurisdiction existed and the county prosecutors had challenged the court's jurisdiction, it limited its decision to "address only Attorney General Labrador." 1-ER-018. The court concluded that the Attorney General lacked sovereign immunity. 1-ER-023. The court also held that Plaintiffs satisfied Article III's standing requirements. 1-ER-043.

Much could be said about the district court's analysis. But two aspects are of special relevance here. First, the district court stated that the Attorney General could have "definitively establish[ed] that no case or controversy exists" and that "all it would have taken is for Attorney General Labrador to denounce the Crane Letter's interpretation or make an affirmative statement that he, or his office, will not enforce Idaho's criminal abortion statute in such a manner." 1-ER-055-56. "Instead," according to the district court, "the Attorney General has strained at every juncture possible to distance himself from his previous statement without committing to a new interpretation or providing any assurances to this Court or the Medical Providers. Attorney General Labrador's targeted silence is deafening." 1-ER-056.

Second, the district court refused to find any disavowal based on an inaccurate quoting of the preliminary injunction hearing transcript. The court emphasized that "the [Attorney General's] counsel unambiguously confirmed that it had *not* disavowed the Crane Letter during oral argument." 1-ER-040. But when it cited counsel's statement, it did so only after selective edits that omitted material that contradicted the district court's point.

14

Here is what the district court's opinion said:

> Finally, if there is any lingering doubt, the State's counsel unambiguously
>
> confirmed that it has *not* disavowed the Crane Letter during oral argument:
>
>> The Court: Well, just to be clear you not only on behalf of the Attorney
>> General but also the prosecuting attorneys that you represent, there is
>> still no disavowal of the legal analysis or conclusion drawn in letter;
>> correct?
>>
>> Mr. Wilson: Your Honor, I'd say that that is – it's correct.

1-ER-040. And here is what the official transcript actually says:

```
21              THE COURT:  Well, just to be clear, you -- not only on
22     behalf of the attorney general but also the prosecuting
23     attorneys that you represent, there is still no disavowal of the
24     legal analysis or conclusions drawn in that letter; correct?
25              MR. WILSON:  Your Honor, I'd say that that is -- it's
```

43

```
1     correct, but it's not the right framing of the issue.  And
2     that's because if there is no properly presented context for us
3     to have an opinion on this issue, then we don't have an opinion
4     on this issue.  Nothing has called on us to do so.
5              But more importantly --
```

15

2-ER-104-05.

Ultimately, the district court enjoined the Attorney General from "enforcing Idaho's criminal abortion statute as interpreted in the Crane Letter," 1-ER-059-60, but it refused to address whether it had jurisdiction over any county prosecutor.

## I. The Attorney General Files an Appeal One Day After the Preliminary Injunction was Entered, and the District Court Stays Proceedings.

The day after the district court's decision, the Attorney General filed a notice of appeal. 4-ER-460-65. The Attorney General also sought a stay of all proceedings, including the preliminary injunction. 3-ER-125-37. The district court denied the motion to stay the preliminary injunction, but it granted the stay "as it pertains to all proceedings, including discovery and all other motions in this case, pending appeal." 3-ER-123-24.

## SUMMARY OF THE ARGUMENT

Plaintiffs asked the district court to enjoin the Attorney General from enforcing an opinion about Idaho law—Plaintiffs do not take any issue with the law itself. That is a strange request on its own. But what is more strange yet is that Plaintiffs pressed their injunction demand even after the Attorney General disavowed any intent to enforce his once-held, and later retracted, opinion. The Attorney General went to great lengths to make clear that not only did he not intend to enforce that view, but he also *could not* enforce *any* view he held about the law. Idaho law has deliberately only granted

county prosecutors such enforcement authority. None of that mattered to the district court. And that is constitutionally troubling on several levels.

First, the Attorney General retains sovereign immunity—as recognized and protected by the Eleventh Amendment—because he has no connection to the enforcement Plaintiffs claim to fear. That makes *Ex parte Young*'s exception inapplicable. Second, Plaintiffs lacked standing under Article III when they filed their complaint, and subsequent events have only further removed their claims from Article III's demands. Plaintiffs have not shown an injury in fact; their claims are not ripe; and their claims are moot. It may seem like the Attorney General is throwing jurisdictional arguments at the wall hoping something sticks, but he is not. The applicability of all of these doctrines reflects just how inappropriate this case is for federal adjudication.

Pre-enforcement challenges should be unusual. "To bring one, the plaintiff must show that the stakes are high and close at hand." *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, --- F.4th ---, 2023 WL 5286171 *6 (3d Cir. Aug. 17, 2023) ("NSSF"). But the district court cast off fundamental limits on its jurisdiction and prejudged a hypothetical dispute with what belongs in constitutional casebooks as a paradigmatic advisory opinion. This Court should reverse and dissolve the district court's injunction, with instructions to dismiss the Attorney General on remand.

## STANDARD OF REVIEW

Federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225

(9th Cir. 1989). Thus, Plaintiffs have "the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). This Court reviews de novo whether Plaintiffs have standing to pursue their claims, *Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008); whether Plaintiffs' claims are ripe, *Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001) and whether Plaintiffs' claims have become moot, *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019). This Court also reviews de novo whether the Attorney General is immune from suit under the Eleventh Amendment. *Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir. 1995) (citation omitted).

ARGUMENT

## I. The Eleventh Amendment And Article III Require Dismissal Of Plaintiffs' Claims Against The Attorney General.

Federal courts are not open for every plaintiff. Federal judges do not have discretion to opine on every question brought to the bench. And federal plaintiffs do not have the right to sue every state official named as a defendant. The Constitution has granted federal courts limited jurisdiction and limited power over state officers. The limits of a federal court's power to decide only cases and controversies is a "fundamental precept." *Owen Equip. Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Similarly, a state's "immunity from suit is a fundamental aspect of the sovereignty." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Neither can be disregarded or evaded—to the contrary, federal courts have an "independent obligation to determine whether subject-

18

matter jurisdiction exists.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted); *Owen Equip.*, 437 U.S. at 374.

Plaintiffs' case against the Attorney General violates both of these fundamental limitations. The Eleventh Amendment bars their claims against the Attorney General, and Article III also requires dismissal of their claims because Plaintiffs have not shown an injury in fact. The district court erred by exercising jurisdiction over the Attorney General and permitting this case to proceed. Its decision should be reversed, and its injunction should be dissolved.

### A. Plaintiffs' claims must be dismissed because the Attorney General has immunity under the Eleventh Amendment.

The Eleventh Amendment to the US Constitution bars this lawsuit from proceeding against the Attorney General. The district court wrongly denied the Attorney General the sovereign immunity required by the Eleventh Amendment based on the *Ex parte Young* doctrine. *See* 209 U.S. 123 (1908) That doctrine's exception is inapplicable here. The narrow exception is triggered only where the state official being sued has "some connection with the enforcement of the [allegedly unconstitutional act]." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). The connection "must be fairly direct"—it cannot merely be "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Id.* Here, the Attorney General lacks the necessary connection with enforcement of Idaho Code § 18-622.

The Attorney General has no authority to enforce Section 622 against Plaintiffs. Idaho law is clear on that point. Moreover, the Attorney General put to bed any question on the matter by issuing a formal opinion outlining the limits of his enforcement authority over Section 622. Idaho law grants that authority to county prosecutors, but there is no jurisdiction against them, so any assistance authority the Attorney General has is also insufficient to abrogate his sovereign immunity.

1. Without jurisdiction over the county prosecutors, the *Ex parte Young* exception does not apply.

To bypass the Eleventh Amendment and subject a state official to suit, a plaintiff must seek an injunction that is capable of providing real, prospective relief. That means that Plaintiffs here must "direct this Court to any enforcement authority the attorney general possesses in connection with [Idaho Code § 18-622] that a federal court might enjoin him from exercising." *See Whole Woman's Health v. Jackson*, 142 S.Ct. 522, 534 (2021). Plaintiffs cannot do that.

The district court glossed over that failure and instead thought the Attorney General's general responsibility to "assist" a county prosecutor "in the discharge of duties" subjected him to suit. 1-ER-020; 1-ER-022; 1-ER-023. But that holding ignores three important points of Idaho law. First, the Attorney General does not have the authority to enforce Idaho Code § 18-622. *See* Idaho Code § 67-1401; Idaho Code §§ 31-2604, 31-2227; *see also* 3-ER-319-20. Second, only Idaho's county prosecutors have the authority to enforce Section 622. 3-ER-319-20; *see also* Idaho Code §§ 31-2604, 31-2227.

And third, the Attorney General can exercise his "assistance" responsibility only if a county prosecutor has first independently exercised his own enforcement authority and initiated a prosecution. Idaho Code § 67-1401(7)

This alone demonstrates that the district court incorrectly relied on the *Ex parte Young* exception. The Attorney General does not have any direct enforcement authority of Section 622, and no county prosecutor has requested the Attorney General's assistance to prosecute a Section 622 case, much less indicated an intent to initiate a prosecution based on the Crane Letter's interpretation of Section 622. It is just the opposite. Plaintiffs' complaint contains zero allegations regarding any threat faced from a county prosecutor. And the named county prosecutors have made clear that they never received the Crane Letter, do not consider it any type of guidance or directive regarding Section 622, and have not adopted the Crane Letter's interpretation of Section 622. 3-ER-142; 3-ER-152; 3-ER-155; 3-ER-158; 3-ER-164; 3-ER-171; 3-ER-174; 3-ER-177; 3-ER-180; 3-ER-183; 3-ER-185; 3-ER-192; 3-ER-195; 3-ER-208; 3-ER-211; 3-ER-214; 3-ER-217; 3-ER-220; 3-ER-223; 3-ER-229; 3-ER-231; 3-ER-234; 3-ER-241; 3-ER-245; 3-ER-249; 3-ER-252; 3-ER-255; 3-ER-259; 3-ER-263; 3-ER-267; 3-ER-275; 3-ER-279; 3-ER-283; 3-ER-286.

The district court's belief that the Attorney General's "assistance" responsibility was sufficient to remove the Attorney General's constitutional immunity is at odds with Idaho law and the Idaho Supreme Court's interpretation of it. In *Newman v. Lance*, the Idaho Supreme Court made clear that the Attorney General's "assistance" responsibility

depends entirely on the enforcement authority of a county prosecutor and in no way confers to the Attorney General any independent enforcement authority. *Newman*, 129 Idaho at 102, 922 P.2d at 399. The *Newman* case involved a county prosecutor who had requested the Idaho Attorney General's assistance in prosecuting two murder cases. *Id.* at 99-100, 922 P.2d at 396-97. The Attorney General agreed but later sought to assume exclusive prosecutorial responsibility for the cases. *Id.* at 100, 922 P.2d at 397. The Idaho Supreme Court rejected the Attorney General's attempt to exercise such expansive enforcement authority and "prohibit[ed] the Attorney General from asserting dominion and control over the cases." *Id.* at 104, 922 P.2d at 401. The court explained that Idaho law "contemplates a collaborative effort between the Attorney General and the Prosecuting Attorney, not the functioning of one to the exclusion of the other." *Id.* at 102, 922 P.2d at 399.

The *Newman* case confirms that the district court's decision put the cart before the horse. The district court cannot on the one hand decline to determine whether Plaintiffs have standing to sue any county prosecutor but on the other hand rest its jurisdiction over the Attorney General on their inclusion in the case. In other words, the district court's *Ex parte Young* analysis logically depends on the presence of at least one county prosecutor against whom Plaintiffs have a live claim. But again, the district court expressly refused to address that question, even though it was faced with a motion to dismiss by the county prosecutors based in part on jurisdictional issues. 1-ER-017; 1-ER-018.

22

Make no mistake, Plaintiffs definitively lack standing against the county prosecutors. It is not as though the district court silently assured itself of jurisdiction over at least one county prosecutor. The district court did not devote a word of analysis to its jurisdiction over any county prosecutor. Had it done so, it would have quickly found jurisdiction to be lacking. Plaintiffs' claims depend entirely on the Crane Letter. But the county prosecutors had no knowledge of the Crane Letter until Plaintiffs sued them and attached it to their pleadings. As Plaintiffs' notably silent complaint demonstrates, there is simply no basis to find that any county prosecutor threatened, or posed a threat to, Plaintiffs with enforcement of the Crane Letter's interpretation of Section 622. The Court need not remand to the district court to address jurisdiction over the county prosecutors. It has its own duty to ensure jurisdiction over the Attorney General, which means it must address jurisdiction over the county prosecutors. Plaintiffs have not affirmatively demonstrated that jurisdiction exists over the county prosecutors.

2. <u>The district court ignored the Attorney General's opinion regarding his enforcement powers.</u>

The Attorney General's lack of connection to enforcement of Section 622 here is plain. The Attorney General, however, provided even more clarity by issuing a formal opinion addressing in detail the limits of his Section 622 enforcement authority—and thus the district court's jurisdiction—under governing Idaho law. 3-ER-316. But despite its fundamental obligation to satisfy itself as to its own jurisdiction, *Arbaugh*, 546 U.S.

at 514, the district court wholly ignored this opinion—it did not cite or reference the opinion anywhere in its decision. *See generally* 1-ER-002-61.

Opinion No. 23-1 addressed two points relevant to the Attorney General's immunity in this case. First, the Opinion concluded that the Legislature has not given the Attorney General independent authority to prosecute violations of Idaho Code § 18-622, although the Legislature had recently provided the Attorney General with such authority in another statute concerning abortion trafficking. 3-ER-318-19. Second, the Opinion examined Idaho Code § 67-1401(7) and concluded that "the Attorney General's authority under this statute is entirely derivative: it exists only if the county prosecutor specifically requests the assistance of the Attorney General via an appointment by the district court under Idaho Code § 31-2603." 3-ER-319. And the Opinion explained that while prosecutors could refer a matter to the Attorney General by requesting his assistance and appointment by the district court, the Attorney General did not have a reciprocal right to refer a matter to county prosecutors. 3-ER-320.

Opinion No. 23-1 is relevant to the Eleventh Amendment analysis, and the district court should have considered it. In Idaho, the Attorney General's opinions are "not binding" but "are entitled to consideration." *Ehco Ranch, Inc. v. State ex rel. Evans*, 107 Idaho 808, 811, 693 P.2d 454, 457 (1984).

To be clear, an Attorney General's opinion is not a way to dictate an *Ex parte Young* outcome. But here, Opinion No. 23-1's analysis is relevant both because it is consistent with Idaho law and the Idaho Supreme Court's interpretation of the relevant

statutes and because it confirms that the Attorney General himself is disclaiming any enforcement authority in the precise circumstances at issue. For at least those reasons, the district court should have considered it.

3. This Court's decision in *Wasden* is inapposite.

The district court based its *Ex parte Young* analysis on this Court's prior decision in *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004). 1-ER-020. But this case is unlike the *Wasden* matter in a significant way: in *Wasden*, there was unquestionably federal jurisdiction over a county prosecutor. The plaintiffs brought facial challenges to the statutes themselves, unlike here, where Plaintiffs challenge just an interpretation of a statute. *See id.* at 914-15. The *Wasden* plaintiffs named both the Ada County Prosecutor and the Attorney General, and there was no doubt that the county prosecutor was "a proper defendant with respect to those provisions creating the potential for prosecution." *Id.* at 919 (noting that "[t]he Ada County prosecutor acknowledges, correctly, that he is a proper defendant"). Thus, *Wasden* involved a situation where a county prosecutor with enforcement authority was a proper defendant and the Attorney General could have provided assistance on request. But here, no prosecutor has taken any action with respect to the Crane Letter, and Plaintiffs have not alleged otherwise. There is no prosecutor over whom the district court has jurisdiction, and so the Attorney General has no connection with the enforcement of the law and maintains immunity.

The *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022), decision, cited by the district court, is not to the contrary. That case involved a challenge to an Arizona statute governing the order of names appearing on election ballots. *Mecinas,* 30 F.4th at 894. The Arizona Secretary of State was a proper defendant without immunity because she published Arizona's Election Procedures Manual that "contain[ed] detailed instruction on ballot design and expressly require[d] counties to order candidates' names on ballots in accordance with the Statute." *Id.* at 900. The county officials who printed the ballots had "no discretion to disregard" that manual, and so *Ex parte Young*'s connection requirement was satisfied. *Id.* at 903-04.

Here, the Attorney General has no supervisory authority over prosecutors, *see State v. Summer*, 139 Idaho 219, 224, 76 P.3d 963, 968 (2003) (discussing 1998 legislative changes), and the prosecutors make their own independent decisions on the meaning of Idaho law and whether to bring criminal charges to enforce Idaho Code § 18-622, as detailed in their declarations, 3-ER-142; 3-ER-152; 3-ER-155; 3-ER-158; 3-ER-164; 3-ER-171; 3-ER-174; 3-ER-177; 3-ER-180; 3-ER-183; 3-ER-185; 3-ER-192; 3-ER-195; 3-ER-208; 3-ER-211; 3-ER-214; 3-ER-217; 3-ER-220; 3-ER-223; 3-ER-229; 3-ER-231; 3-ER-234; 3-ER-241; 3-ER-245; 3-ER-249; 3-ER-252; 3-ER-255; 3-ER-259; 3-ER-263; 3-ER-267; 3-ER-275; 3-ER-279; 3-ER-283; 3-ER-286. And so, without a prosecutor to assist, the Attorney General has no connection to the enforcement of

Idaho Code § 18-622—especially not when enforcement is based on a voided and withdrawn interpretation of Section 622 that no county prosecutor has ever endorsed.[6]

**B. Plaintiffs' claims must be dismissed because Plaintiffs lack standing.**

The district court also erred in its standing analysis. Plaintiffs do not have standing to sue the Attorney General over an opinion of Idaho law that he never had authority to enforce against Plaintiffs (or anyone), never threatened to enforce against Plaintiffs (or anyone), and did not enforce against Plaintiffs (or anyone). Plaintiffs cannot press a controversy in federal court that simply does not exist. That is exactly what Article III prevents.

Plaintiffs acknowledge that they have no Article III injury in the conventional sense. They instead seek pre-enforcement review of the Attorney General's opinion expressed in the Crane Letter. But pre-enforcement review is only available where "the threatened enforcement [is] sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Here, the Crane Letter does not constitute "a credible threat of prosecution," so Plaintiffs cannot demonstrate an Article III injury is "certainly impending." *Id.* at 158-59.

---

[6] To the extent the Court reads *Wasden* to permit the Attorney General to self-initiate criminal proceedings without the request for assistance of a prosecutor or without the Governor directing such assistance, this Court should revisit that holding en banc. The Attorney General recognizes that the Court must generally sit en banc before overruling a prior panel's opinion, unless the prior opinion is clearly irreconcilable with now-controlling law (or analysis). *See Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003).

Plaintiffs seem to think that their mere allegation of chilled First Amendment speech satisfies the injury-in-fact requirement. Not so. They must still show that they face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (citation omitted). The following three factors guide that determination: (i) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," (ii) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (iii) "the history of past prosecution or enforcement under the challenged statute." *Id.* (citation omitted). Plaintiffs' standing falters on the second and third factors.

There are several reasons Plaintiffs cannot show "a realistic danger of sustaining a direct injury" here. *Id.* The most obvious is that the Attorney General has no authority to prosecute any Plaintiff and enforce the Crane Letter's interpretation of Section 622. That is devastating to Plaintiffs' case. The district court bootstrapped its Eleventh Amendment analysis on this point, 1-ER-032, but even if the court were correct that the Attorney General has "some connection" to enforcement of Section 622 for *Ex parte Young* purposes, that is woefully insufficient for concluding that Plaintiffs established "a realistic danger of sustaining a direct injury." The Eleventh Amendment analysis is concerned with whether a court's injunction can possibly enjoin a state official's unconstitutional conduct. But the pre-enforcement analysis requires a plaintiff to demonstrate "a realistic danger of sustaining a direct injury" from a state official's

unconstitutional conduct. Those two standards are very different: the former does not by any means necessarily include the latter. The district court got the law wrong by assuming it did.

Another reason Plaintiffs cannot show a realistic danger here is that the Attorney General did not himself communicate a specific warning or threat to initiate proceedings against Plaintiffs. The Crane Letter was initially a private communication that the Attorney General hand-delivered to Representative Crane. It later was published by a third party, but the Attorney General did not do so. Even though the source of the communication matters a great deal, the district court paid no regard to how Plaintiffs learned of the Crane Letter's opinion. To make matters worse for Plaintiffs, the content of the Crane Letter is too general to be considered a warning or threat to initiate proceedings against Plaintiffs. There is nothing in the Crane Letter suggesting Plaintiffs face a non-generalized enforcement threat.

The district court thought Plaintiffs' self-censorship was "sufficient for standing." 1-ER-035. But a plaintiff cannot manufacture standing by self-censoring—a plaintiff must additionally show a "threat of specific future harm." *Sherwin-Williams Co. v. Cnty. of Delaware, Pennsylvania*, 968 F.3d 264, 270 (3d Cir. 2020). Chilled speech is not alone sufficient for standing.

Even if it were, Plaintiffs' self-censorship must be based on "a *plausible* and *reasonable* fear of prosecution." *Wolfson v. Brammer*, 616 F.3d 1045, 1062 (9th Cir. 2010) (citations omitted). There is no record evidence to support a plausible or reasonable

fear of prosecution from the Attorney General, not least because the Attorney General cannot enforce the Crane Letter's view of the law and the Plaintiffs' complaint contains zero allegations that the county prosecutors present any threat of enforcement to them. On top of this, Plaintiffs' sponsorship of billboards in Idaho advertising where Idaho women can go to receive abortions reveals that they are not self-censoring. Plaintiffs' fear is not only implausible and unreasonable, but it is also nonexistent.

Plaintiffs also cannot show any enforcement history with respect to the interpretation they challenge. That too weighs against standing. *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022). Admittedly, there was not much time for enforcement of the Crane Letter's view of the law, so this factor does not say much either way. But Plaintiffs bear "the burden to show standing, and this indeterminate factor does not help it carry that burden." *NSSF*, --- F.4th ---, 2023 WL 5286171 *4. Like the threat factor, it undermines Plaintiffs' standing. And together, these circumstances show that Plaintiffs face no threat from the Crane Letter.

A recent decision from the Third Circuit illustrates the jurisdictional issue here. In *NSSF*, a plaintiff brought a pre-enforcement challenge against a recent New Jersey law that was passed to "combat 'bad actors in the gun industry.'" *Id.* (citing N.J. Stat. § 2C:58-33(a)). The law had only been in effect for four months before the plaintiff filed suit and moved for a preliminary injunction, which the district court granted. *Id.* The Attorney General had never enforced the law against anyone. *Id.* at *4. Still, on appeal, the plaintiff argued that pre-enforcement review was appropriate because (1) New

Jersey had "repeatedly" said that it would deploy the law against gun-industry members; (2) the Attorney General had already established a dedicated office to enforce the law; and (3) New Jersey sought an emergency stay of the district court's injunction, demonstrating a desire to enforce the law. *Id.* at *4-5. But the Third Circuit held that none of that was sufficient to show a credible threat. The court could only say that "the Attorney General 'might sue' the Foundation or its members, 'but it might not.'" *Id.* at *5.

Like *NSSF*, Plaintiffs seek an injunction against the Attorney General. That adds speculation that is fatal to standing. For one, Plaintiffs' targeting of a single state official who is "constrained by explicit guidelines or ethical obligations" lessens any risk of enforcement against them. *Id.* at *4. For another, any "eventual action will reflect both legal and practical constraints, making any prediction about future injury just that—a prediction." *Trump v. New York*, 141 S.Ct. 530 (2020). This case poses a far greater degree of speculation and uncertainty than what was present in *NSSF*. "With so much still vague and uncertain, a court should not weigh in." *Id.*

### C. Plaintiffs' claims must be dismissed because they are not ripe.

Plaintiffs' claims against the Attorney General should also be dismissed because they are not ripe. The question of ripeness is particularly relevant when a party seeks pre-enforcement review of a statute, or as here, an interpretation of a statute. *Lee*, 107 F.3d at 1387-88. The ripeness component in Article III seeks "to ensure that courts adjudicate live cases or controversies and do not 'issue advisory opinions [or] declare

rights in hypothetical cases.'" *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (citation omitted). "While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur." *Lee*, 107 F.3d at 1387 (citation omitted). A ripeness analysis examines both the constitutional and prudential components. *Bishop Paiute Tribe*, 836 F.3d at 1153.

This Court reviews ripeness as it is presented on appeal, so the state of things now, as opposed to before the district court, is what matters. *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974) ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."); *see also Assiniboine and Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil and Gas Conserv. of the State of Montana*, 792 F.2d 782 (9th Cir. 1986). The Attorney General's injury-in-fact analysis overlaps with the constitutional component of ripeness, so that analysis will not be repeated here. The Plaintiffs' claims lack ripeness for those same reasons. They also lack ripeness based on the doctrine's prudential component.

Three post-filing developments have made Plaintiffs' claims unfit for judicial decision and vanquished whatever hardship (minor as it already was) Plaintiffs face from a withheld decision. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). First, the Crane Letter has been withdrawn and voided, so to the extent it ever had any legal force or effect, it does not now. 3-ER-349-50. Second, the county prosecutors have denied that the Crane Letter is a source of authority, so any perceived threat of prosecution is implausible and unreasonable now. *See e.g.*, 3-ER-256. And

third, the Attorney General has affirmatively disavowed any enforcement authority under Section 18-622, so Plaintiffs lack a credible threat from the Attorney General. 3-ER-319-21; *see also* 3-ER-134 (reiterating in motion to stay). These three developments leave no "concrete basis" for a judicial decision, which means there is no "fitness for judicial decision." *See Assiniboine*, 792 F.2d at 788; *see also Nat'l Park Hosp. Ass'n*, 538 U.S. at 808. They also demonstrate that Plaintiffs face no hardship from a withheld decision. There is just no basis for Plaintiffs to claim that the Attorney General poses any threat to them. That is why even before the district court issued its injunction, Plaintiffs were speaking in the very manner they claimed the Attorney General's opinion chilled.

This case is even less ripe for judicial decision than the controversy presented in *Trump*, 141 S.Ct. at 536. As in *Trump*, Plaintiffs' claims at best are "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 535 (citation omitted). For instance, Plaintiffs' claims depend on a county prosecutor adopting the Crane Letter's interpretation of Section 622 *and* initiating an enforcement action against Plaintiffs *and* requesting the Attorney General's assistance *and* the Attorney General accepting that request *and* a state district court appointing the Attorney General. This series of speculative and contingent events underscores that Plaintiffs' "case is riddled with contingencies and speculation that impede judicial review." *Id.* The district court should have dismissed it for lack of ripeness.

33

**D. Plaintiffs' claims must be dismissed because they have become moot.**

The doctrine of mootness provides yet another, independent reason this case does not belong in the federal courts. The district court said that the Attorney General could have "definitively establish[ed] that no case or controversy exists" by "denounce[ing] the Crane Letter's interpretation or mak[ing] an affirmative statement that he, or his office, will not enforce Idaho's criminal abortion statute in such a manner." 1-ER-055-56. That statement is perplexing because the Attorney General did just that when he issued Opinion 23-1. The Attorney General recognizes that the district court failed to take any notice of the Opinion, so perhaps that accounts for the incongruity. But that oversight should be corrected now.

Opinion No. 23-1 is a formal opinion issued by the Attorney General with respect to his authority to bring prosecutions under Idaho Code § 18-622. The Opinion proclaims unambiguously that the Attorney General has no authority to enforce Section 622 unless a county prosecutor specifically requests that he be authorized to do so, *and* he is appointed to do so by the state district court. As the Attorney General put it:

> The Legislature has conferred prosecutorial authority on the Attorney General to prosecute specific crimes in specific circumstances. For example, the Legislature has granted the Attorney General authority to prosecute violations of criminal law by county elected officials acting in their official capacity. Idaho Code § 31-2002. . . . The Legislature has not granted the Attorney General any such authority to prosecute violations of Idaho Code § 18-622. Thus, the Attorney General has no power to bring independent prosecutions under that statute.

3-ER-318-19.

34

If that were not clear enough, the Attorney General rescinded the Crane Letter. *See* 3-ER-349-50. He stated the consequences of that rescission directly to the district court: this "opinion that does not state the attorney General's opinion on any question of Idaho law and is void and withdrawn … *is not an opinion that is being enforced*." 2-ER-107-08 (emphasis added). He emphasized that he "neither holds nor defends" the interpretation of the Crane Letter. 3-ER-300; 3-ER-332.

And if all of that left any ground to question, no room for doubt remained when the Attorney General told the district court in briefing that "even if a case were referred to him by a county prosecutor, the Attorney General does not defend the theory of the Crane Letter and it is not being enforced." 3-ER-134. "Put simply, the Attorney General has shown that he does not intend to bring any prosecution consistent with the theory of the Crane Letter." *Id.* It is hard to imagine how the Attorney General could have more convincingly disavowed any intent to enforce the Crane Letter's analysis against Plaintiffs. *Cf. NSSF*, 2023 WL 5286171, at *4 ("Though statements made in litigation are hardly dispositive, they do matter."). Given these statements, there is nothing left to enjoin or declare illegal. *Corey*, 913 F.3d at 949. The district court's decision is "advisory and in violation of the limitations of Article III." *Id.*

The Withdrawal Letter also mooted Plaintiffs' claims. "[A] case is moot when the challenged statute is repealed, expires, or is amended to remove the challenged language." *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011). This case does not involve a statute, but the same principle applies to the Crane Letter.

The Withdrawal Letter has voided the challenged "legal" basis for the Plaintiffs' alleged threat much the same as repeal of a statute voids any basis for challenging harm flowing from that statute. The Attorney General did not equivocate when he declared the Crane Letter void: "This case is moot . . . because the challenged rules have been changed and will not apply in future elections." *See Students for a Conservative America v. Greenwood*, 378 F.3d 1129, 1131 (9th Cir. 2004).

The district court suggested that a threat existed because the Attorney General purportedly failed to disavow the Crane Letter. But this holding shows a serious misunderstanding of this Court's "disavowal" cases, which are inapposite here for many reasons. Those cases concern situations where operative state law prohibits the plaintiff's conduct, such that "the government's failure to disavow enforcement" weighs in favor of standing. *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022); *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). In such cases, the reason the disavowal matters is because the law remains on the books, and if the enforcement authorities do not disavow it, that is "strong evidence that the state intends to enforce the law." *Cal. Trucking Ass'n*, 996 F.3d at 653. But that principle has little application here, since Plaintiffs do not contend that the law itself prohibits their conduct (in fact, they contend the opposite). *See* 4-ER-449; 4-ER-392-93. Instead, their sole grievance is with an *interpretation* of the law in the Crane Letter. And since that letter has been withdrawn and rendered void, and Plaintiffs do not contend that the law itself prohibits their conduct, there is nothing left for them to challenge.

Thus, to the extent the disavowal cases apply at all, their standard was more than met when the Attorney General withdrew the Crane Letter and thus disclaimed any enforcement. The district court suggested that disavowal would still require something more—a repudiation "of the legal analysis or conclusions drawn in that letter." 1-ER-040. But this too misunderstands this Court's disavowal jurisprudence, which is about the "failure to disavow enforcement," *Tingley*, 47 F.4th at 1068 (emphasis altered), not a "substantive" rejection. *Cf.* 1-ER-039. Neither Plaintiffs nor the district court cited any authority holding that disavowal requires the government to affirmatively state that its own actions are wrong. Having no Article III controversy does not require the parties to agree with one another; it just requires them not to be engaged in conflict over some actual injury. And so long as the law being challenged will not be enforced against the Plaintiffs, no such controversy exists.

The analysis in *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir. 1999), cited by the district court, is not to the contrary. There, "the attorney general undisputedly threatened the union with enforcement of [the challenged statute], and fervently continued to do so until after the district court granted the union's request for a TRO." *Id.* at 618. Here, there was no threat, there was no enforcement, and to the extent that a chill existed, it was not reasonable under the circumstances.

Finally, the district court erred to the extent it rested its mootness holding on a statement from the Attorney General's counsel during the motion hearing. The district court said that counsel agreed there had been no disavowal. 1-ER-040. But the district

court selectively quoted counsel's statement and inexplicably omitted key language immediately following its truncated quote. Here is the colloquy the district court should have cited:

> THE COURT: Well, just to be clear, you -- not only on behalf of the attorney general but also the prosecuting attorneys that you represent, there is still no disavowal of the legal analysis or conclusions drawn in that letter; correct?
>
> [COUNSEL]: Your Honor, I'd say that that is – it's correct*, but it's not the right framing of the issue. And that's because if there is no properly presented context for us to have an opinion on this issue, then we don't have an opinion on this issue. Nothing has called on us to do so.*
>
> *But more importantly –*

2-ER-104-05 (omitted material italicized). This colloquy shows that the Attorney General in no way agreed there had been no disavowal. Rather, counsel explained that the Attorney General disavowed by withdrawing the Crane Letter and did not need to disavow by affirmatively recanting.

The combination of the Attorney General Opinion No. 23-1 and the Withdrawal Letter spells mootness for Plaintiffs' claims. Plaintiffs' claims should be dismissed.

## II.    Unusual Circumstances Counsel in Favor of Reassignment on Remand.

On remand, whether upon affirmance or reversal, this matter will return to the district court for further proceedings. Because of unusual circumstances involving this case, the Attorney General seeks to ensure that he and the other defendants, and the subject matter of the lawsuit, receive fair treatment on remand. This is the rare occasion where reassignment is appropriate "both for the judge's sake and the appearance of justice." *See United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986).

This Court has set forth three factors to determine whether unusual circumstances exist:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1100 (9th Cir. 2019) (citation omitted). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015). Here, there are grounds under both factors (1) and (2) to find unusual circumstances in the district court's treatment of the Attorney General's arguments below that warrant reassignment to a different district judge on remand.

First, the district court failed to address key materials proffered by the Attorney General that went to the court's jurisdiction. Most significantly, it ignored Attorney General Opinion No. 23-1 without explanation. Opinion No. 23-1 is centrally relevant and was submitted to the district court. The Attorney General even requested supplemental briefing regarding its import to subject matter jurisdiction, which gave the district court an independent obligation to consider it. *Arbaugh*, 546 U.S. at 514. But the district court denied that request and then went on to ignore the Opinion entirely. Only by ignoring the Opinion was the district court able to say that the Attorney General

failed to disavow his intent to enforce the Crane Letter's interpretation. And in the same manner, the district court concluded that it had jurisdiction without considering any of the motions to dismiss by the county prosecutors, much less their direct statements disclaiming any intent to enforce the interpretation of the Crane Letter. The district court's refusal to consider these critical materials leads to an appearance of impropriety that would be best cured by reassignment to a new judge on remand.

Second, the district court not only failed to consider critical documents going to its jurisdiction, but also misquoted and mischaracterized the Attorney General's arguments in order to find jurisdiction. In its decision, the district court said the deputy attorney general "unambiguously confirmed that it [the Attorney General] has *not* disavowed the Crane Letter during oral argument." 1-ER-040. It then provided a quote from the April hearing. *Id.* But as described above, the district court selectively quoted counsel and omitted a relevant and material portion of the response. The misquote is troubling, especially where the Office of the Attorney General represents most of the remaining county prosecutors and must appear before the Court again.

Third, the district court also issued various orders that prejudiced the Attorney General and suggested that the Attorney General's assertion of procedural rights on behalf of himself and the county prosecutors was improper. For one, after setting the preliminary injunction for expedited briefing and hearing, the district court rejected the Attorney General's request to submit supplemental briefing on Opinion 23-1, which went directly to the Court's jurisdiction. Then, the district court complained that

40

"[d]espite the Court rejecting the submission of supplemental briefing, the [Attorney General] proceeded to file three separate notices of supplemental declarations regarding the Court's subject-matter jurisdiction," which the district court did not consider in its order. 1-ER-011. But those notices of supplemental declarations related to the timely motions to dismiss by county prosecutors, filed under a schedule set by agreement with Plaintiffs, and again, they directly implicated the court's subject matter jurisdiction. The district court's persistent use of procedural devices to avoid considering the Attorney General's submissions raises additional questions of fairness.

Under the circumstances, "reassignment is advisable to preserve the appearance of justice." *Batista*, 930 F.3d at 1100. This case is at an early stage in the litigation—in fact, at its threshold stage—and so there can be no harm or waste in reassigning the matter to a different district judge. *Id.* Given the preliminary nature of the proceedings, there would not be any "waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Trudeau v. Direct Marketing Concepts, Inc.*, 90 Fed. App'x 486, 488, 2003 WL 23019099 *2 (9th Cir. 2003).

## CONCLUSION

For the foregoing reasons, this Court should hold that the Attorney General has Eleventh Amendment sovereign immunity and that there is no federal court jurisdiction over this matter. Appellant respectfully requests the Court to vacate the preliminary injunction and remand with instructions to dismiss the Attorney General. The case

41

should also be reassigned to a different district judge to preserve the appearance of fairness.

Respectfully submitted,

August 29, 2023.

HON. RAÚL R. LABRADOR
Attorney General

/s/ *Joshua N. Turner*
JOSHUA N. TURNER
Deputy Solicitor General
LINCOLN DAVIS WILSON
Chief, Civil Litigation and
Constitutional Defense Division
BRIAN V. CHURCH
Deputy Attorney General

*Attorneys for Appellant*

## STATEMENT OF RELATED CASES

The undersigned attorney or self-represented party states the following:

I am not aware of any related case.


/s/ *Joshua N. Turner*                                        August 29, 2023
JOSHUA N. TURNER

43

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

9th Circuit Case No.:             23-35518

I am the attorney representing Appellant.

**This brief contains 10,157 words,** including 192 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.


/s/ *Joshua N. Turner*                                    August 29, 2023
JOSHUA N. TURNER

44

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing/attached documents on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Description of Documents: Appellant's Opening Brief


/s/ *Joshua N. Turner*                                         August 29, 2023
JOSHUA N. TURNER