# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PLANNED PARENTHOOD GREAT NORTHWEST,
HAWAI'I, ALASKA, INDIANA, KENTUCKY; *et al.*,

*Plaintiffs-Appellees*,

*v.*

RAÚL R. LABRADOR, in his Official Capacity
as Attorney General of the State of Idaho,

*Defendant-Appellant.*

*and*

MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE; *et al.*,

*Defendants.*

On Appeal from the United States District Court
for the District of Idaho, No. 1:23-cv-00142-BLW
(Hon. B. Lynn Winmill)

## BRIEF FOR APPELLEES

PETER G. NEIMAN
ALAN E. SCHOENFELD
MICHELLE NICOLE DIAMOND
RACHEL E. CRAFT
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
peter.neiman@wilmerhale.com

*Attorneys for Plaintiffs-Appellees*

September 26, 2023

JENNIFER R. SANDMAN
CATHERINE PEYTON HUMPHREVILLE
PLANNED PARENTHOOD FEDERATION
  OF AMERICA
123 William Street
New York, NY 10038
(212) 965-7000

*Attorneys for Plaintiff-Appellee
Planned Parenthood Great Northwest,
Hawaii, Alaska, Indiana, Kentucky*

**ADDITIONAL COUNSEL LISTED ON INSIDE COVER**

KATHERINE V. MACKEY
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6993

COLLEEN R. SMITH
STRIS & MAHER LLP
AMERICAN CIVIL LIBERTIES UNION OF IDAHO
  FOUNDATION COOPERATING ATTORNEY
1717 K Street NW, Suite 900
Washington, DC 2006
(202) 800-5749

*Attorneys for Plaintiffs-Appellees*

DINA FLORES-BREWER
AMERICAN CIVIL LIBERTIES UNION
  OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
(208) 344-9750

ANDREW BECK
MEAGAN BURROWS
RYAN MENDÍAS
SCARLET KIM
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633

*Attorneys for Plaintiffs-Appellees*
*Drs. Caitlin Gustafson and Darin*
*Weyhrich*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 2

STATEMENT OF ISSUES ON APPEAL ............................................ 3

STATEMENT OF THE CASE ............................................................. 3

    A.    Factual Background .......................................................... 3

    B.    Health Care Providers Sue Asserting That The Labrador Interpretation Violates Their Constitutional Rights ............ 6

    C.    AG Labrador's Procedural "Withdrawal" Of His Opinion Letter .................................................................................. 8

    D.    Proceedings Before The District Court ............................... 8

SUMMARY OF THE ARGUMENT ..................................................... 14

STANDARD OF REVIEW ................................................................... 15

ARGUMENT ....................................................................................... 17

I.    AG LABRADOR IS NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY ....................................................................................... 17

    A.    Under *Wasden*, AG Labrador Is A Proper Defendant ......... 18

    B.    Neither *Newman* Nor AG Opinion 23-1 Undermine The Outcome Dictated By *Wasden* .......................................... 24

II.    AG LABRADOR'S REMAINING JUSTICIABILITY ARGUMENTS FAIL ................. 26

    A.    Health Care Providers Have Standing Because They Are Injured By The Labrador Interpretation's Threat Of Enforcement ...................................................................... 26

        1.    Health Care Providers have a concrete plan to violate the Labrador Interpretation ............................... 28

        2.    The Labrador interpretation was a threat of enforcement ............................................................. 28

        3.    Enforcement history has "little weight" for new laws ...................................................................... 33

    B.    The Case Is Ripe Because Plaintiffs Have Standing And Because Prudential Ripeness Is Satisfied ............................................34

    C.    AG Labrador's Litany Of Post-Filing Actions Have Not Mooted The Case ................................................................................38

III.    REASSIGNMENT TO A NEW DISTRICT COURT JUDGE IS UNWARRANTED ............................................................................41

CONCLUSION .....................................................................................44

# TABLE OF AUTHORITIES

Page(s)

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023) .................................................................12, 30

*Almerico v. Denney*,
    532 F. Supp. 3d 993 (D. Idaho 2021) .................................................24

*Arizona Right to Life Political Action Committee v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003) ...........................................................27

*Babbitt v. United Farm Workers National Union*,
    442 U.S. 289 (1979)...................................................................24, 27

*Bishop Paiute Tribe v. Inyo County*,
    863 F.3d 1144 (9th Cir. 2017) ...........................................................34

*Bolden-Hardge v. Office of California State Controller*,
    63 F.4th 1215 (9th Cir. 2023) ............................................................16

*California Pharmacists Association v. Maxwell-Jolly*,
    596 F.3d 1098 (9th Cir. 2010) ...........................................................15

*California Pro-Life Council, Inc. v. Getman*,
    328 F.3d 1088 (9th Cir. 2003) ...........................................................31

*California Trucking Association v. Bonta*,
    996 F.3d 644 (9th Cir. 2021) .................................................30, 33, 34

*Culinary Workers Union, Local 226 v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) .................................................26, 33, 38

*Dobbs v. Jackson Women's Health Organization*,
    142 S. Ct. 2228 (2022).................................................................4, 39

*Fikre v. FBI*,
    904 F.3d 1033 (9th Cir. 2018) .................................................39, 40, 41

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................................26, 38

*Idaho Building and Construction Trades Council, AFL-CIO v. Wasden*,
836 F. Supp. 2d 1146 (D. Idaho 2011) ..............................................................21

*Krechman v. County of Riverside*,
723 F.3d 1104 (9th Cir. 2013) ...........................................................16, 42, 44

*Lopez v. Candaele*,
630 F.3d 775 (9th Cir. 2010) ..............................................................39

*McClung v. City of Sumner*,
548 F.3d 1219 (9th Cir. 2008) ............................................................35

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) .........................................................39, 40, 41

*McDonald v. Lauren*,
808 F. App'x 576 (9th Cir. 2020) ....................................................42, 44

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) ..............................................................17

*National Shooting Sports Foundation v. Attorney General of New Jersey*,
--- F.4th ---, 2023 WL 5286171 (3d Cir. Aug. 17, 2023) ..................................33

*Newman v. Lance*,
922 P.2d 395 (Idaho 1996) .........................................................18, 20, 24, 25

*Patel v. City of South El Monte*,
2022 WL 738625 (9th Cir. Mar. 11, 2022) .....................................................16

*Pershing Park Villas Homeowners Association v. United Pacific
Insurance Co.*, 219 F.3d 895 (9th Cir. 2000)...........................................16, 35, 37

*Pimentel v. Dreyfus*,
670 F.3d 1096 (9th Cir. 2012) ..........................................................15

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004) ....................................................................*passim*

*Shetty v. Lewis*,
2017 WL 1177993 (N.D. Cal. Mar. 30, 2017) ..................................................43

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)............................................................................34, 35

*Thomas v. Anchorage Equal Rights Commission*,
220 F.3d 1134 (9th Cir. 2000) ...........................................11, 27, 34

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) ...................................................*passim*

*Trump v. New York*,
141 S. Ct. 530 (2020)........................................................................38

*United National Insurance Co. v. R&D Latex Corp.*,
242 F.3d 1102 (9th Cir. 2001) ........................................................16

*Yamada v. Snipes*,
786 F.3d 1182 (9th Cir. 2015) .........................................................35

## STATUTES

28 U.S.C.
§ 1292(a)(1) ......................................................................................2
§ 1331.................................................................................................2
§ 1343................................................................................................2

Idaho Code
§ 18-622 ...................................................................................*passim*
§ 31-2227 .........................................................................................22
§ 31-2603 ...................................................................................25, 42
§ 67-140 ....................................................................................*passim*

## OTHER AUTHORITIES

Baertlein, Andrew, *Planned Parenthood Billboards Will Direct
Idahoans to Out-of-State Abortion Care*, KTVB7 (July 25, 2023,
7:47 PM MDT), https://tinyurl.com/7x6d225a....................................32

Idaho Capital Sun, *Nation's First Interstate Abortion Ban Bill Awaits
Idaho Governor's Signature*,
https://idahocapitalsun.com/2023/03/30/nations-first-interstate-
abortion-ban-bill-awaits-idaho-governors-signature/ (last visited
Sept. 20, 2023) ........................................................................................5

*Idaho Attorney General Issues Legal Analysis Affirming the Prohibition of Abortion Pills*, Stanton Int'l, https://stantoninternational.org/chemicalabortion/ ................................................5

Simchuk, Kyle, *Planned Parenthood Launches Billboard Campaign in North Idaho*, Krem 2 News (July 28, 2023, 10:12 PM PDT), https://tinyurl.com/5n8f6u4t ................................................................32

Stanton Int'l, *Stanton Healthcare Locations*, https://stantoninternational.org/stanton-healthcare/ ...........................................5

# INTRODUCTION

On March 27, 2023, Idaho Attorney General Raúl Labrador issued a letter in which he interpreted the state's abortion ban, Idaho Code § 18-622, to prohibit medical providers from giving patients truthful and accurate information about legal out-of-state abortion services, including referrals for such services, or anything else deemed to "assist" the patient in obtaining an abortion out of state (the "Labrador Interpretation"). The Labrador Interpretation is an unprecedented overreach that infringes on the rights of Appellees Dr. Darin Weyhrich, Dr. Caitlin Gustafson, and Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky (collectively, "Health Care Providers") under the First Amendment and the Due Process Clause, and, if vindicated, could permit Idaho to penalize abortions occurring in states where abortion is legal.

While AG Labrador's conduct raises important First Amendment and due process issues, the scope of this appeal is narrow. AG Labrador is challenging the preliminary injunction below only on grounds of Eleventh Amendment sovereign immunity, standing, ripeness, and mootness. The Eleventh Amendment does not prohibit suit under *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), which holds that the *Ex Parte Young* exception to Eleventh Amendment immunity applies here. Nor is there any deficiency with regard to standing or ripeness, because the Labrador Interpretation communicated a clear threat of

prosecution directed specifically at Health Care Providers and caused them to cease engaging in constitutionally protected conduct. Finally, though AG Labrador has repeatedly sought to moot this case post-filing, his attempts are insufficient voluntary cessations, and regardless have failed to disavow the substance of the Labrador Interpretation, which is the source of harm to Health Care Providers.

The positions taken by AG Labrador before the district court and on appeal show that he wants to have his cake and eat it too. His goal is to intimidate medical providers from advising their clients about out-of-state abortions and assisting them in accessing this care—an unconstitutional goal he succeeded in accomplishing until the district court issued its injunction—while avoiding legal challenges to his blatantly unconstitutional position. This Court should affirm the district court's well-reasoned grant of the preliminary injunction and reject AG Labrador's extraordinary request for the case to be reassigned on remand.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. The Attorney General filed a notice of appeal on August 1, 2023, appealing the district court's order granting a preliminary injunction against the Attorney General. This Court has jurisdiction to review that order under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES ON APPEAL

(1)     Whether this Court's decision in *Planned Parenthood v. Wasden* controls and defeats AG Labrador's claim to sovereign immunity.

(2)     Whether the Labrador Interpretation's threat to Health Care Providers creates Article III injury and ripeness.

(3)     Whether AG Labrador's unilateral post-litigation tactics moot the controversy created by his unconstitutional interpretation of Idaho Code §18-622, where his subsequent statements did not make absolutely clear that his unconstitutional behavior could not reasonably be expected to recur.

(4)     Whether such rare and extraordinary circumstances are present that this case must be assigned to a different judge on remand.

## STATEMENT OF THE CASE

### A.     Factual Background

Appellees are health care providers practicing in Idaho.  Dr. Darin Weyhrich and Dr. Caitlin Gustafson have each practiced obstetrics and gynecology in Idaho for nearly two decades.  4-ER-430 ¶ 2; 4-ER-419 ¶ 2.  Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky ("Planned Parenthood") is the largest provider of reproductive health services in Idaho and provides a broad range of reproductive and sexual health services.  4-ER-410 ¶ 4.  It employs licensed health professionals in Idaho and neighboring states, including Washington.  4-ER-412

¶ 10.   Until the Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), and Idaho's abortion ban took effect, Planned Parenthood and Drs. Weyhrich and Gustafson, as well as other providers, performed safe and legal abortions in Idaho.  *See* 4-ER-410 ¶ 4; 4-ER-431 ¶ 8.

In 2020, the Idaho legislature passed Idaho Code § 18-622, banning nearly all abortions in the state.  Idaho Code § 18-622 makes it a felony to perform or to attempt to perform an abortion, carrying a penalty of two to five years in prison.  It also mandates that any "health care professional who performs or attempts to perform an abortion or who assists in performing or attempting to perform an abortion in violation of this subsection" have their license suspended for six months upon the first offense, and permanently revoked upon the second.  *Id*. § 18-622(1).

On March 27, 2023, AG Labrador, responding to an inquiry from a state legislator, issued a formal opinion letter, on his letterhead and under his own signature, interpreting Idaho's abortion ban to bar Idaho doctors from referring patients to providers of lawful abortions outside of Idaho (the "March 27 Opinion").  The March 27 Opinion states that:

> Idaho law prohibits an Idaho medical provider from … referring a woman across state lines to access abortion services[.] … The plain meaning of assist is to give support or aid.  An Idaho health care professional who refers a woman across state lines to an abortion provider … has given support or aid to the woman in performing or attempting to perform an abortion and has thus violated the statute.

3-ER-345.

Shortly thereafter, Stanton Healthcare, a company that describes itself as "seek[ing] to replace abortion businesses around the world" and providing "alternatives to abortion,"[1] publicly released the March 27 Opinion and issued a press release praising its legal analysis.[2] Media coverage of the March 27 Opinion and the Labrador Interpretation ensued, reporting that, "[a]ccording to Labrador, medical providers located in Idaho cannot refer a woman across state lines for an abortion[.]"[3] Medical providers across the state thus learned that, according to Idaho's chief legal officer, making medically appropriate referrals for out-of-state abortion care, or otherwise helping patients leave the state to obtain abortions that are legal in the state where they are provided, somehow violated Idaho law. As detailed below, in the face of this threat, Health Care Providers immediately ceased providing patients with medical advice about how and where to access such care, referrals, and other assistance.

---

[1] Stanton Int'l, *Stanton Healthcare Locations*, https://stantoninternational.org /stanton-healthcare/ (last visited Sept. 14, 2023).

[2] *See Idaho Attorney General Issues Legal Analysis Affirming the Prohibition of Abortion Pills*, Stanton Int'l, https://stantoninternational.org/chemicalabortion/ (last visited Sept. 12, 2023).

[3] Idaho Capital Sun, *Nation's First Interstate Abortion Ban Bill Awaits Idaho Governor's Signature*, https://idahocapitalsun.com/2023/03/30/nations-first-interstate-abortion-ban-bill-awaits-idaho-governors-signature/ (last visited Sept. 20, 2023).

**B.      Health Care Providers Sue Asserting That The Labrador Interpretation Violates Their Constitutional Rights**

On April 5, 2023, Health Care Providers filed suit in the U.S. District Court for the District of Idaho against AG Labrador, the County Prosecutors in each of Idaho's counties, and the Idaho Boards of Medicine and of Nursing, seeking a preliminary injunction enjoining enforcement of the abortion ban in the unconstitutional manner set forth in the Labrador Interpretation.  4-ER-488.

Health Care Providers explained that as a result of the Labrador Interpretation and under threats of loss of their professional licenses and, potentially, criminal prosecution, they were forced to stop their prior practice of advising patients about legal, out-of-state options for terminating their pregnancies.  4-ER-413 ¶ 17; 4-ER-422-223 ¶¶ 14-18; 4-ER-432-433 ¶¶ 14-18.  They were likewise forced to cease assisting patients by making referrals or scheduling appointments, and could no longer communicate with out-of-state physicians to facilitate continuity of care for patients with medically complex pregnancies.  4-ER-413 ¶ 17; 4-ER-422-223 ¶¶ 14-18; 4-ER-432-433 ¶¶ 14-18.

As Health Care Providers explained, as a result of AG Labrador's threat, they could no longer fully engage in this speech because it "support[ed] or aid[ed]" patients seeking out-of-state abortion care in states that have not banned abortion and was thus, according to the Attorney General, illegal under Idaho law.  3-ER-345.

The Labrador Interpretation also had devastating consequences for Health Care Providers' patients. 4-ER-413-414 ¶¶ 18-21; 4-ER-424 ¶¶ 19, 21; 4-ER-433-434 ¶ 20. As the evidence established, without access to referrals or other guidance, patients are sometimes unable to access abortions in other states or are inhibited from doing so because they do not have the guidance of a trusted health care provider and must rely on less accurate information. 4-ER-413 ¶ 18; 4-ER-424-425 ¶¶ 21, 24; 4-ER-434 ¶¶ 21-22. Patients may be forced to carry unwanted pregnancies to term, which can have serious medical, social, and economic consequences for pregnant patients and their families. 4-ER-414 ¶ 20; 4-ER-424 ¶ 22; 4-ER-434 ¶ 25. While other patients may ultimately be able to access abortions, their care may be delayed or compromised due to the lack of a referral. 4-ER-414 ¶ 19; 4-ER-424 ¶ 21; 4-ER-434 ¶ 26. Delays in care can result in dire health consequences. 4-ER-414 ¶ 20; 4-ER-425-426 ¶ 25; 4-ER-434-436 ¶¶ 26-28.

Health Care Providers argued that by preventing them from providing their patients with information about essential health care that is legal where it is being provided, the Labrador Interpretation violates the First Amendment. Health Care Providers also argued that the Labrador Interpretation violates their due process rights to the extent that it threatens to penalize them for providing lawful out-of-state abortions or assisting patients in accessing such abortions.

### C. AG Labrador's Procedural "Withdrawal" Of His Opinion Letter

Two days after Health Care Providers filed suit, AG Labrador issued a letter on April 7, 2023 (the "April 7 Letter") announcing that he "withdrew" the March 27 Opinion. 3-ER-349. Though AG Labrador now contends that the April 7 Letter makes the original Labrador Interpretation "void," Opening Br. of Appellant ("AG Br.") 6, it did not actually address the substance of the Labrador Interpretation. Its purported withdrawal was merely procedural; it took issue only with how the March 27 Opinion was issued and how it became public. Notably absent from the April 7 Letter was any statement disavowing or disclaiming the legal reasoning or conclusions of the Labrador Interpretation.[4] Because the April 7 Letter did not abandon the conclusion that providing referrals for lawful out-of-state abortions violated Idaho law, Health Care Providers did not resume providing referrals. 3-ER-363-365 ¶¶ 5-6, 12; 3-ER-370-371 ¶¶ 5-6, 9; SER-040 ¶¶ 5-7.

### D. Proceedings Before The District Court

After Health Care Providers filed their complaint and motion for a temporary restraining order and preliminary injunction, AG Labrador moved to dismiss, and the parties briefed both motions on an expedited schedule set by the district court.

---

[4] Similarly, the County Prosecutors represented by AG Labrador have explicitly refused to disavow the Labrador Interpretation, stating that their offices "ha[ve] taken no position regarding the scope of enforcement under Idaho Code § 18-622." 3-ER-212 ¶ 5; *see also* 3-ER-215 ¶ 5; 3-ER-218 ¶ 5; 3-ER-221 ¶ 5; 3-ER-224 ¶ 6.

4-ER-488-495. AG Labrador chose not to address the merits, instead arguing only jurisdictional issues. On April 24, 2023, the district court heard oral argument on the motion to dismiss and motion for preliminary injunction. 4-ER-496.

At the hearing, the district court gave AG Labrador the opportunity to explain whether he now agreed that the abortion ban did not prohibit referrals or assistance for lawful out-of-state abortion care, or whether his purported withdrawal of the March 27 Opinion letter was merely procedural. Counsel for AG Labrador stated that he "wouldn't characterize issuing this opinion as a mistake," but would only say that there was "an abuse of the opinion process" because the March 27 Opinion was intended to be private. 2-ER-095. Similarly, when the district court asked for clarification on whether "there [was] still no disavowal of the legal analysis or conclusions drawn in that letter," counsel for AG Labrador answered "that is … correct," but then contended "it's not the right framing of the issue" because "if there is no properly presented context for [the Attorney General] to have an opinion on this issue, then [the Attorney General does not] have an opinion on this issue." 2-ER-104-105.

Following the hearing, AG Labrador sought leave to file two supplemental briefs seeking to add new arguments that could have been included in the original motion papers but were not. 3-ER-311-315. AG Labrador also issued a

supplemental opinion describing his views on when the Attorney General may participate in a criminal prosecution ("AG Opinion 23-1"). 3-ER-316-321.

The district court rejected these requests to "relitigate the preliminary injunction and motion to dismiss." 3-ER-291. Observing that nothing prevented AG Labrador from issuing AG Opinion 23-1 or briefing the merits during the original schedule, the court declined to "impose further delay for matters that could and should have been brought sooner." 3-ER-291-292.

AG Labrador and the County Prosecutors proceeded to file several more belated and uninvited filings before the district court, including a multitude of supplemental declarations and a second motion to dismiss by a subset of the County Prosecutors. 4-ER-498-503. None of these filings disavowed the substance of the Labrador Interpretation.

On August 29, 2023, the district court granted Health Care Providers' motion for a preliminary injunction as to AG Labrador. 1-ER-004.[5] The court held that sovereign immunity did not bar Health Care Providers from proceeding against him, that Health Care Providers had standing, that the case was not moot and was ripe, and that Health Care Providers were entitled to a preliminary injunction.

---

[5] The court declined to issue an injunction against the State Boards, and deferred ruling on the County Prosecutors' second motion to dismiss. 1-ER-015. The County Prosecutors are therefore not subject to the preliminary injunction and are not part of this appeal.

The district court held that Eleventh Amendment sovereign immunity did not bar the proceedings as to AG Labrador because "the Ninth Circuit has already affirmatively answered whether the *Ex parte Young* exception applies to Attorney General Labrador" in *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), which considered a "nearly identical argument." 1-ER-020. The court rejected AG Labrador's contention that *Wasden* was "no longer good law," explaining that the operative "language in the statute that the Ninth Circuit relied on remains unchanged." 1-ER-021.

The court further held that Health Care Providers had standing by applying the three-factor test set forth in *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), which addresses when a threat of prosecution is sufficient to establish an Article III injury. First, the court concluded that Health Care Providers had shown an intent to violate the law because they "sufficiently alleged that they have already provided care that would violate Idaho's abortion statute under the [Labrador Interpretation]" but had stopped doing so since the March 27 Opinion. 1-ER-029-30. Second, the court held that Health Care Providers had identified a threat of enforcement in the Labrador Interpretation because the March 27 Opinion was publicly available, was issued and signed by AG Labrador, was sent to a member of the Idaho Legislature, and contained AG Labrador's only interpretation of the abortion ban. 1-ER-031. The court also found

that *Wasden*'s reasoning established a sufficient connection between AG Labrador and the enforcement of the unconstitutional interpretation. 1-ER-032. And under *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022), and *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), the threat was not too generalized—the very "speech [Health Care Providers] say is chilled is the exact speech criminalized under the Attorney General's interpretation of the statute." 1-ER-033-037. The April 7 Letter did not change this calculus because its withdrawal was "procedural—not substantive" and was "best characterized as a 'mere litigation position[.]'" 1-ER-039-040. Third, the court concluded that the lack of past enforcement had "minimal, if any weight" given that "only nine days passed between the issuance of [the Labrador Interpretation] and the filing of this lawsuit." 1-ER-042-043.

The district court also held that the case was ripe because the March 27 Opinion containing the Labrador Interpretation, while it "did not have the status of law," was "a 'definitive statement of an agency's position'" and "expressly interpreted the law to prohibit certain, specific conduct." 1-ER-048-049. The court found that Health Care Providers had also shown hardship because the Labrador Interpretation forced them to "choose between facing criminal penalties themselves and offering referrals and information about legal out-of-state medicinal services to their patients." 1-ER-050.

Last of the jurisdictional inquiries, the court held that the case was not mooted by the April 7 Letter. Applying the voluntary cessation doctrine, it held that because the April 7 Letter "is entirely procedural" and "neither rejects the [March 27 Opinion]'s statutory interpretation, nor provides an alternative that would resolve [Health Care Providers'] concern that their conduct is unlawful under [the abortion ban,]" it did nothing to eliminate the controversy between the parties. 1-ER-053. It similarly rejected AG Labrador's arguments that amendments to the abortion ban mooted the case because those amendments did not affect "the specific, relevant language of [Idaho Code § 18-622]" at issue. 1-ER-054-055.

On the merits, the court noted that AG Labrador had chosen not to engage with Health Care Providers' substantive arguments "in any way, relying instead entirely on its jurisdictional challenges." It found a likelihood of success on at least Health Care Providers' First Amendment claim. 1-ER-056-057. This loss of First Amendment freedoms caused irreparable harm, and also tipped the balance of the equities in Health Care Providers' favor. 1-ER-058-059. The court therefore held that Health Care Providers had met all three requirements necessary to obtain a preliminary injunction. 1-ER-059.

Overall, the court concluded that, though "it would not have been particularly difficult for the State to definitively establish that no case or controversy exists," by simply "denounc[ing] the [Labrador Interpretation] or mak[ing] an affirmative

statement that he, or his office, will not enforce Idaho's criminal abortion statute in such a manner," AG Labrador had instead "strained at every juncture possible to distance" himself from the letter itself "without committing to a new interpretation or providing any assurances." 1-ER-056. The court characterized this "targeted silence" as "deafening." *Id*.

## SUMMARY OF THE ARGUMENT

The district court was well within its discretion in granting Health Care Providers preliminary relief enjoining enforcement of AG Labrador's blatantly unconstitutional interpretation of Idaho Code § 18-622. AG Labrador's arguments to the contrary are all unavailing. First, AG Labrador asserts that he is entitled to Eleventh Amendment immunity, but this Court already rejected that argument in *Wasden*, which controls here. Second, AG Labrador challenges standing, ripeness, and mootness, but Health Care Providers demonstrated that they were actively self-censoring, an entirely reasonable response to the threat of prosecution communicated by the Labrador Interpretation and AG Labrador's subsequent refusal to disavow its reasoning, and none of his post-filing actions have mooted the case. AG Labrador states that he "went to great lengths to make clear that … he [did] not intend to enforce" his interpretation of the abortion ban. AG Br. 16. But that is not so. As the district court correctly recognized, AG Labrador explicitly refused on several occasions—in his purported "withdrawal" of the March 27 Opinion in his

April 7 Letter, in conversations with Health Care Providers' counsel, and in open court upon questioning by the district judge—to repudiate the "legal analysis or conclusion drawn in" the March 27 Opinion. 1-ER-040. The district court thus rightly determined that Health Care Providers' speech had been, and would continue to be, unconstitutionally chilled unless and until AG Labrador was enjoined from making good on his threat of prosecution.

Finally, there is nothing approaching the extraordinary circumstances that would necessitate the drastic step of reassigning this case to a different district judge on remand. The district court set a reasonable schedule, and AG Labrador was not entitled to demand that the court consider multiple belated filings raising arguments that could have been raised earlier. Thus, this Court should affirm the district court's order granting Health Care Providers preliminary injunctive relief against AG Labrador and should decline AG Labrador's meritless request to reassign this case.

## STANDARD OF REVIEW

A district court's grant of a preliminary injunction is reviewed for an abuse of discretion. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). This Court reviews *de novo* whether the district court applied "the correct legal standard" and then "determine[s] if the district court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quoting *California Pharmacists Ass'n v.*

*Maxwell-Jolly*, 596 F.3d 1098, 1104 (9th Cir. 2010)).  An appellant meets this high bar only where the district court's ruling is "based on an erroneous legal standard or a clearly erroneous finding of fact amounts to an abuse of discretion."  *Id.* Jurisdictional questions are reviewed *de novo*.  *Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023).

Whether a prudential ripeness issue was properly excluded below is reviewed for abuse of discretion.  *See Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 900 (9th Cir. 2000), *as amended* (Aug. 11, 2000) ("We review for a clear abuse of discretion the district court's ruling excluding nonjurisdictional standing issues as untimely."); *see also Patel v. City of South El Monte*, 2022 WL 738625, at *1 (9th Cir. Mar. 11, 2022) (mem.) ("[W]e review for abuse of discretion the district court's ruling on whether a prudential ripeness issue is waived.").

Reassignment of a district case on remand is an *extreme* remedy "reserved for '*rare and extraordinary* circumstances.'"  *Krechman v. County of Riverside*, 723 F.3d 1104, 1112 (9th Cir. 2013) (quoting *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1118 (9th Cir. 2001) (emphasis added)).

# ARGUMENT

## I. AG LABRADOR IS NOT ENTITLED TO ELEVENTH AMENDMENT IMMUNITY

Ninth Circuit precedent clearly forecloses AG Labrador's argument that he is immune from suit under the Eleventh Amendment. To satisfy the *Ex parte Young* exception to sovereign immunity for claims that seek prospective injunctive relief, there must be "'some connection' between a named state officer and enforcement of a challenged state law." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (internal citations omitted). Nothing more is required.

"The connection required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Mecinas v. Hobbs*, 30 F.4th 890, 903-904 (9th Cir. 2022) (quoting *Wasden*, 376 F.3d at 919) (cleaned up).

As the district court correctly concluded, this Court in *Wasden* rejected "a nearly identical argument that AG Labrador was not a proper defendant under *Ex Parte Young* because, without direct enforcement power, he was immune from suit." 1-ER-020. AG Labrador's attempts to distinguish and diminish *Wasden*—including his unsupported contention that a County Prosecutor must be a proper defendant in this litigation for the *Ex Parte Young* exception to apply against him—are unavailing. In any event, the County Prosecutors are proper defendants here. It is

thus inescapable that, as the district court determined below, AG Labrador is not immune from suit under the Eleventh Amendment.

## A. Under *Wasden*, AG Labrador Is A Proper Defendant

In *Wasden*, Planned Parenthood of Idaho sued the Idaho Attorney General and the Ada County Prosecutor in an action to enjoin enforcement of an Idaho abortion restriction, including—as relevant here—provisions that imposed criminal penalties against physicians. 376 F.3d at 914-915. The Attorney General claimed that he was immune from suit under the Eleventh Amendment on the grounds that he did not "hav[e] authority to enforce any part of the statute." *Id.* at 919. This Court noted that pursuant to the Idaho statute that outlines the duties of the Attorney General, Idaho Code § 67-1401(7), "the attorney general may 'assist' county prosecutors in a 'collaborative effort,' but may not 'assert[] dominion and control' over prosecutions against the county prosecutor's wishes." 376 F.3d at 919 (quoting *Newman v. Lance*, 922 P.2d 395, 399-401 (Idaho 1996)). "However, and determinatively here," this Court continued, "unless the county prosecutor objects, '[t]he attorney general may, in his assistance, *do every act* that the county attorney can perform." *Id.* at 920 (quoting *Newman*, 922 P.2d at 399) (emphasis in original). In other words, in assisting a County Prosecutor, "the attorney general may in effect deputize himself … to stand in the role of [the] county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have. That power demonstrates

the requisite causal connection for standing purposes" and "[f]or the same reasons," both the attorney general and the county prosecutor were "properly named [defendants] under *Ex parte Young.*" *Id.*

*Wasden* is on all fours with this case. As the district court correctly concluded, the procedural posture in *Wasden* is "nearly identical" to the circumstances here. 1-ER-020. The relevant portion of Idaho Code § 67-1401(7) is unchanged today;[6] thus, AG Labrador retains the power—in the assistance of a County Prosecutor—to enforce the criminal penalties of Idaho Code § 18-622. *Wasden*, 376 F.3d at 920; *see* 1-ER-023 ("[W]hile *Wasden* is particularly relevant to the case at hand, that is not because the underlying challenges in both cases relate to abortion statutes. Rather it is because both focus on the language of Idaho Code § 67-1401(7) and the application of the 'assisting' power of the Attorney General."). This power, under clearly established Ninth Circuit precedent, is sufficient to demonstrate the "requisite causal connection" for AG Labrador to be a properly named defendant

---

[6] AG Labrador argued before the district court that *Wasden* was "no longer good law because it construed a prior version of the attorney general statute." 1-ER-021. The district court correctly rejected that argument because, despite the fact "that Idaho Code § 67-1401 has undergone amendments since *Wasden*, the assisting language in the statute that the Ninth Circuit relied on remains unchanged." *Id.* AG Labrador has abandoned this argument on appeal.

under *Ex parte Young* where, as here, a criminal statute creates a risk of prosecution. *Wasden*, 376 F.3d at 920.[7]

AG Labrador's attempts to distinguish *Wasden* are unavailing. *First*, AG Labrador argues that *Wasden* does not apply because the district court here supposedly does not have "jurisdiction over any county prosecutor." AG Br. 22-23. In AG Labrador's reading of *Wasden*, "a county prosecutor with enforcement authority" must be a "proper defendant" in a case such that "the Attorney General could have provided assistance on request." AG Br. 25. *Wasden* does not mandate any such procedural requirement to establish a causal connection between AG Labrador and the challenged statute. To the contrary, *Wasden* plainly states that the Attorney General's *power* to assist County Prosecutors in the enforcement of a criminal statute is sufficient—standing alone—to establish that AG Labrador is a proper defendant under *Ex parte Young*. It does not matter whether a County

---

[7] AG Labrador's suggestion that *Wasden* could be read to "permit the Attorney General to self-initiate criminal proceedings without the request for assistance of a prosecutor or without the Governor directing such assistance," AG Br. 27 n.6, is wrong. Indeed, *Wasden* acknowledges that the Attorney General "may not 'assert[] dominion and control' over prosecutions against the county prosecutor's wishes." *Wasden*, 376 F.3d at 919 (quoting *Newman*, 922 P.2d at 399-401). Rather, as discussed below (at pp. 20-21), *Wasden* simply states that the Attorney General's statutory assistance power is sufficient, standing alone, to establish the Attorney General as a proper defendant under *Ex parte Young*, regardless of whether the Governor or a County Prosecutor has asked or directed the Attorney General to provide such assistance. *See id.* at 919-920.

Prosecutor is named as a defendant in the case. *Wasden* explicitly distinguished the specific prosecutorial assistance power bestowed on the Idaho Attorney General from the "general supervisory power" bestowed on other state attorneys general. *Wasden*, 376 F.3d at 919.

*Wasden* also made clear that the required connection between the Attorney General and a challenged criminal statute is independent from the presence of a County Prosecutor and that relief enjoining only the Attorney General from enforcing a particular statute would be sufficient to redress a plaintiff's harm. *See* 376 F.3d at 920 ("An injunction against the attorney general could redress plaintiffs' alleged injuries, just as an injunction against the Ada County prosecutor could."); *see also Idaho Bldg. and Const. Trades Council, AFL-CIO v. Wasden*, 836 F. Supp. 2d 1146, 1158 (D. Idaho 2011) (concluding, in a case where no county prosecutor was a named defendant, that "jurisdiction over [the Attorney General was] proper under the doctrine of *Ex Parte Young*" because "local county prosecutors may bring criminal charges against violators of the Open Access to Work Act" and the Attorney General could "'deputize himself' to enforce the statute" (quoting *Wasden*, 376 F.3d at 920)), *vacated in part on other grounds sub nom. Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Assoc. Builders & Contractors, Inc.*, 801 F.3d 950 (9th Cir. 2015).

Even assuming that the presence of a County Prosecutor as a proper defendant was necessary to establish a causal connection between AG Labrador and Idaho Code § 18-622—which it certainly is not— Health Care Providers sued all forty-four County Prosecutors, each of whom is a proper defendant because they have the "primary duty of enforcing all the penal provisions of any and all [Idaho] statutes." Idaho Code § 31-2227; *see Wasden*, 376 F.3d at 919.

AG Labrador complains that "the district court did not devote a word of analysis to its jurisdiction over any county prosecutor," AG Br. 23, but that was entirely understandable, given the procedural circumstances. As the district court stated, the issue of jurisdiction as to the County Prosecutors was not raised "until a group of county prosecutors filed a separate motion to dismiss … long after oral argument [on Health Care Providers' motion for a preliminary injunction] was held." 1-ER-017. Thus, the court stated that it would "defer making any determinations on the individual county prosecutors" so that it could "adequately address all the individual county prosecutors with the benefit of a more developed record." 1-ER-018. Far from ignoring the issue of jurisdiction as to the County Prosecutors, as AG Labrador insinuates, the district court deferred its ruling rather than further delay the injunctive relief to which Health Care Providers were entitled because of *the State's* failure to timely raise this jurisdictional issue.

Most importantly, *even if* the district court had addressed the County Prosecutors' motion to dismiss *and* had determined that the motion should be granted as to all of the moving County Prosecutors, there are still two named County Prosecutors who "are not represented by the Attorney General's office, *nor have they joined the State's original motion to dismiss*." 1-ER-018 (emphasis added). Thus, even if all of the County Prosecutors represented by the State were dismissed from this case, there would *still* be two named County Prosecutors who have not objected to the district court's jurisdiction over them in this case. This fact alone would be sufficient to establish the causal connection between AG Labrador and Idaho Code § 18-622 that AG Labrador—wrongly—contends is necessary to abrogate his sovereign immunity under *Ex parte Young*.

*Second*, AG Labrador contends that because "no county prosecutor has requested [his] assistance to prosecute a Section 622 case," there can be no connection between AG Labrador and Idaho Code § 18-622. AG Br. 21. This argument also is foreclosed by *Wasden*—there, no county prosecutor had initiated a prosecution against Plaintiffs or requested the Attorney General's assistance to prosecute violations of the abortion restriction. 376 F.3d at 916-917. The Ninth Circuit concluded that the Attorney General was a proper defendant under *Ex parte Young* nonetheless. *Id.* at 920. As the *Wasden* Court acknowledged, it is well established that a plaintiff may bring a pre-enforcement challenge to a criminal

statute where, as here, there is a "credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see infra* pp. 27-28.

*Third*, AG Labrador suggests—without support—that *Wasden* is inapposite because the plaintiffs in *Wasden* "brought facial challenges to the statutes themselves" rather than "an interpretation of a statute." AG Br. 25. This is a meaningless distinction—whether a constitutional challenge is facial or as-applied, and whether the challenge is to the statute itself or an announced interpretation of the statute by a state's chief law officer has no bearing on *Wasden*'s holding that the Attorney General's prosecutorial assistance power creates the requisite causal connection to a challenged criminal statute to establish the Attorney General as a proper defendant under *Ex parte Young*. *See, e.g.*, *Almerico v. Denney*, 532 F. Supp. 3d 993, 1000-1001 (D. Idaho 2021) (citing *Wasden*, 376 F.3d at 920) (concluding that Attorney General was a proper defendant under *Ex Parte Young* in as-applied challenge to Idaho's Medical Consent and Natural Death Act).

### B. Neither *Newman* Nor AG Opinion 23-1 Undermine The Outcome Dictated By *Wasden*

Unable to distinguish *Wasden*, AG Labrador turns to other sources that he argues should dictate an outcome in his favor. AG Labrador first argues that the Idaho Supreme Court's ruling in *Newman* somehow undermines reliance on *Wasden*. AG Br. 21-22. But *Newman* was decided earlier, and expressly addressed

in *Wasden*. *See Wasden*, 376 F.3d at 920 (quoting *Newman*, 922 P.2d at 399) (emphasis in original). It cannot be a basis for declining to follow *Wasden.*

AG Labrador also claims that AG Opinion 23-1, which he issued after the preliminary injunction and dismissal motions were argued, requires rethinking *Wasden*, and faults the district court for "ignor[ing]" this opinion. AG Br. 23-24. But the district court was well within its discretion in choosing to adhere to the briefing schedule it set. It was not required to afford AG Labrador endless opportunities to add new arguments. And in any event, AG Opinion 23-1 changes nothing. It merely cloaks in the form of a (non-binding) opinion the same argument that AG Labrador made about his authority in his motion to dismiss briefing.[8] And the supposed limits on his authority reflected in the opinion that he has "independent authority to prosecute" only to assist a County Prosecutor, 3-ER-320, would not change the outcome in *Wasden,* which found that very assistance power sufficient

---

[8] *Compare* SER-019 ("the Attorney General … has no general authority to prosecute violations of state criminal law on abortion" and "any such authority exists only on referral from county prosecutors"), *with* 3-ER-317 ("[T]he Idaho Attorney General may bring or assist in a prosecution under Idaho Code § 18-622 only if specifically requested by a county prosecutor pursuant to an appointment made by a district court under Idaho Code § 31-2603."). The district court substantively rejected this argument as a basis for evading *Wasden*, *see* 1-ER-019; AG Labrador cannot seek another bite at the apple by reproducing his contentions as an official opinion.

for the Attorney General to be a named defendant under *Ex parte Young*. 376 F.3d at 920.

## II. AG LABRADOR'S REMAINING JUSTICIABILITY ARGUMENTS FAIL

### A. Health Care Providers Have Standing Because They Are Injured By The Labrador Interpretation's Threat Of Enforcement

Standing requires (1) "injury in fact," (2) causation, and (3) redressability. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). AG Labrador does not contest the latter two elements, and for good reason. *Wasden*, 376 F.3d at 920 (holding that the Idaho Attorney General's powers "demonstrate[] the requisite causal connection for standing purposes" and that relief against him "could redress plaintiffs' alleged injuries").[9] AG Labrador instead argues that Health Care Providers' decision to stop referring individuals out of state for abortion care or otherwise assisting patients in accessing such care in states where it is legal—following AG Labrador's statement that such conduct is unlawful—is an

---

[9] As described *supra* pp. 25-26, *Wasden* remains applicable law. Even setting *Wasden* aside, Health Care Providers' injuries—namely, the chilling effect on their speech rights—are "fairly traceable" to AG Labrador's warning and will be "redressed by a favorable decision" preventing AG Labrador from participating in prosecutions against Health Care Providers based on his interpretation. *See Friends of the Earth*, 528 U.S. at 180-181. Indeed, a case or controversy may exist when an attorney general merely "encourage[s] local law enforcement agencies" to enforce the relevant statute. *See Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999) (internal quotation marks omitted).

insufficient injury for standing.  AG Br. 27-31.  The district court correctly rejected this argument below, and this Court should do the same.

A plaintiff need not "first expose himself to actual arrest or prosecuting to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights"—instead, a plaintiff may bring a pre-enforcement challenge seeking injunctive or declaratory relief when facing a "credible threat of prosecution." *Babbitt*, 442 U.S. at 298.  This Court applies a three-factor test to determine "whether a threat of enforcement is genuine enough to confer an Article III injury": "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1067-1068 (9th Cir. 2022) (quoting *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).  In the First Amendment context, this test "tilts dramatically towards a finding of standing."  *Id.*; *see Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences.").

1.  **Health Care Providers have a concrete plan to violate the Labrador Interpretation**

As found by the district court and not meaningfully disputed by AG Labrador, Health Care Providers have a concrete plan to violate the Labrador Interpretation. To satisfy this factor, Health Care Providers need allege only "specific past instances" of acting "in a way that would violate the law." *Tingley*, 47 F.4th at 1068. Having alleged that, in the past, Health Care Providers have made referrals and otherwise assisted patients to receive abortions out-of-state and are chilled from doing so by the Labrador Interpretation, *see supra* pp. 6-8, Health Care Providers need not "specify 'when, to whom, where, or under what circumstances'" they plan to violate it. *Tingley*, 47 F.4th at 1068. This Court has explained that any more stringent requirement would be effectively impossible to meet in the medical context, like here, as providers "cannot control when clients will come" seeking services. *Id.*

2.  **The Labrador Interpretation was a threat of enforcement**

To satisfy the second prong of the *Tingley* test, a plaintiff alleging First Amendment injury "need only demonstrate that a threat of potential enforcement will cause him to self-censor." *Tingley*, 47 F.4th at 1068. Health Care Providers easily met that burden. The Labrador Interpretation states that "Idaho law prohibits an Idaho medical professional from [] referring a woman across state lines to access

abortion services." 3-ER-345.[10] This interpretation, on official stationery and signed by AG Labrador, was directed at a specific act, rather than mere general enforcement of the statute, and applied to only a small category of individuals: those who refer patients out of state for abortions. It thus constituted a specific warning, as the district court found. 1-ER-035 ("[I]t is more than a mere general warning about enforcing Idaho's criminal abortion statute. Rather … [it] applies to only a small subset of individuals[.]"). At the very least, it constituted a general warning to medical professionals that the abortion ban could be enforced against them based on the assistance and guidance they provide regarding referrals for out-of-state abortions. As a legal matter, a "general warning" is sufficient when a plaintiff self-censors in a case alleging First Amendment harm, as here. *See Tingley*, 47 F.4th at 1068; *see supra* pp. 6-8; 3-ER-364-365 ¶¶ 7-10, 3-ER-371 ¶¶ 6-9, SER-040 at ¶¶ 6-7 (alleging self-censorship even following April 7 letter). AG Labrador effectively concedes that Health Care Providers face at least a general threat of enforcement when he writes only that Health Care Providers have not shown a "non-generalized" threat. AG Br. 29.

---

[10] While AG Labrador focused on language that applies to license revocation, that license revocation provision applies only where a medical professional "assists" in performing an abortion "in violation of this subsection"—demonstrating his belief that abortions performed out of state violate the criminal provisions of the abortion ban. 3-ER-345.

Even if the Labrador Interpretation were insufficient to be warning on its own, a credible threat can also be established by the "the government's failure to *disavow* enforcement." *Tingley*, 47 F.4th at 1068; *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (finding that the state's "refusal to disavow" enforcement is "strong evidence that the state intends to enforce" and that plaintiffs face a "credible threat"); *see 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2310 (2023) (accepting the Tenth Circuit's standing holding, which noted that "Colorado [has] decline[d] to disavow future enforcement proceedings" (alterations in original)). Here, despite every opportunity, including direct inquiry from the district court, AG Labrador has refused to disavow the Labrador Interpretation or state that he will not enforce the statute with respect to referrals and other assistance for out-of-state abortions. *See infra* pp. 37-38, 40-41.

AG Labrador denies that he "himself communicate[d] a specific warning or threat to initiate proceedings against Plaintiffs," because he claims that he intended the March 27 Opinion to remain confidential. AG Br. 29. But this argument fails for multiple reasons.

First, a secret threat is worse, not better. A practitioner learning that the Attorney General considered their conduct unlawful would hardly be comforted by learning that the Attorney General had hoped to keep that belief secret for the time being. That is particularly true because Idaho law mandates that "all written

opinions" be made publicly available. Idaho Code § 67-1401(6). The suggestion that the Attorney General intended not to follow that rule makes his threats even more chilling, not less.[11] In any event, there is no requirement to show that AG Labrador intended to communicate his threat publicly. It did become public, and the legal test focuses on whether the *plaintiff's fear* is reasonable, not on whether the state official *intended* their message to be a threat. *See*, *e.g.*, *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("We think [plaintiff's] fear was reasonable."). It plainly was.

Finally, AG Labrador does not contest that Health Care Providers have self-censored, but he challenges whether that self-censoring was in response to a specific warning and a "plausible and reasonable" fear of prosecution. AG Br. 29-30; *see also* AG Br. 28 (also arguing the Health Care Providers' lack of "realistic danger of sustaining direct injury"). He does not tie his argument to any of the three factors that inform pre-enforcement standing, AG Br. 28, and, as already explained, the

---

[11] Citing his own internal regulations, AG Labrador claims that the March 27 Opinion was a "level two" opinion, and that such opinions are attorney-client privileged and need not be published. AG Br. 4-5 (citing 3-ER-338-340); *id.* at 29. But the March 27 Opinion does not match the regulations' description of a "level two" opinion because it was signed by AG Labrador himself, not by his staff. 3-ER-340. And in any event, nothing in the internal regulations could (or even purports to) limit the statutory obligation to make opinions public.

Labrador Interpretation was plainly a warning of enforcement, such that Health Care Providers reasonably feared prosecution.

Critically, AG Labrador's arguments about a lack of "plausible and reasonable" fear or a "realistic danger" of injury also turn on his connection to the county prosecutors, AG Br. 28-30,[12] and in so doing he conflates the causation and redressability prongs of standing—which he has declined to address on appeal and which are controlled by *Wasden*, *see supra* p. 26—with the injury prong. He merely repeats his sovereign immunity argument that the Idaho Attorney General's relationship to the County Prosecutors is insufficient for a plaintiff to be reasonably afraid of prosecution despite the Attorney General describing the plaintiff's conduct as criminal. AG Br. 28-30. But this is effectively the same question that this Court

---

[12] AG Labrador also asserts that Planned Parenthood's sponsorship of billboards containing truthful information about the legality of abortion in other states demonstrates that they are "not self-censoring." AG Br. 30; *see id.* at 12-13 (citing Andrew Baertlein, *Planned Parenthood Billboards Will Direct Idahoans to Out-of-State Abortion Care*, KTVB7 (July 25, 2023, 7:47 PM MDT) https://tinyurl.com/7x6d225a; Kyle Simchuk, *Planned Parenthood Launches Billboard Campaign in North Idaho*, Krem 2 News (July 28, 2023, 10:12 PM PDT), https://tinyurl.com/5n8f6u4t. Planned Parenthood has attempted to alleviate this ongoing harm of the Labrador Interpretation by engaging in public service announcements stating truthful information about how it is legal to travel to other states for abortions. These billboards, which do not involve medical advice or concrete assistance in obtaining out-of-state abortion are entirely different from the type of speech addressed in the Labrador Interpretation. The undisputed record is that, prior to the entry of the injunction, Health Care Providers had ceased engaging in the very activity that the Labrador Interpretation brands as against the law. 4-ER-413 ¶ 17; 4-ER-422-223 ¶¶ 14-18; 4-ER-432-433 ¶¶ 14-18

resolved in *Wasden* when it held that the Idaho Attorney General is an appropriate

defendant in a pre-enforcement suit related to Idaho's criminal laws, and even AG

Labrador concedes his authority to assist in prosecutions. AG Labrador cannot

evade *Wasden*'s preclusive effect by recharacterizing this as an injury argument,

rather than a causation or redressability argument. Regardless, the Ninth Circuit has

held that even more distant relationships suffice for Article III standing, *see Culinary

Workers Union*, 200 F.3d at 618 ("We have reasoned that a 'case or controversy'

may exist when it is demonstrated that the state attorney general intends either to

enforce a statute or to 'encourage local law enforcement agencies' to do so."), further

demonstrating that it is eminently reasonable for Health Care Providers to fear

prosecution. [13]

### 3.    Enforcement history has "little weight" for new laws

On the third factor, this Court has repeatedly recognized that the history of

enforcement is entitled to "little weight" for recently enacted laws, such that standing

must be found where the other two factors are satisfied. *Tingley*, 47 F.4th at 1069;

*California Trucking*, 996 F.3d at 653. Here, Health Care Providers filed suit *days*

---

[13] Similarly, *National Shooting Sports Foundation v. Attorney General of New Jersey*, --- F.4th ---, 2023 WL 5286171 (3d Cir. Aug. 17, 2023), is consistent with finding standing here. *Contra* AG Br. 30-31. There, the Court found no threat of civil enforcement where the statute did not clearly apply to the plaintiffs' conduct and the state Attorney General had not provided his "view" on the "sweep[]"of the law. *Id.* at *4. Here, the Labrador Interpretation laid out precise conduct that AG Labrador believed violates the abortion ban. 3-ER-345.

after the issuance of the Labrador Interpretation in the March 27 Opinion. In addition, Idaho's abortion ban, the subject of the Labrador Interpretation, had been in effect for less than a year. Both time periods are significantly less than the three years between when the statute at issue in *Tingley* was enacted and when it was challenged. *Tingley*, 47 F.4th at 1069. The lack of prosecutions should thus be accorded little weight, and even AG Labrador concedes that "this factor does not say much either way." AG Br. 30.[14]

### B. The Case Is Ripe Because Plaintiffs Have Standing And Because Prudential Ripeness Is Satisfied

In an action for pre-enforcement relief from a criminal statute, standing and constitutional ripeness "boil down to the same question." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014); *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1153 (9th Cir. 2017) ("[R]ipeness coincides squarely with standing's injury-in-fact prong" (quoting *Thomas*, 220 F.3d at 1138)). And, because it is a

---

[14] These same facts also establish Health Care Providers' standing to sue the County Prosecutors—which AG Labrador mistakenly contends is relevant to the Eleventh Amendment analysis. The first and third *Tingley* factors—concrete plan and history of enforcement—carry the same force against County Prosecutors as they do against AG Labrador. And the second *Tingley* factor has been met as to the County Prosecutors, because no County Prosecutor has disavowed AG Labrador's threat, despite having many opportunities to do so. *See California Trucking*, 996 F.3d at 653 (a government official's "refusal to disavow enforcement" of a challenged law or interpretation is "strong evidence that the state intends to enforce" that law and serves as a general warning that plaintiffs face a "credible threat"); *Tingley*, 47 F.4th at 1066-1068 ("general warning" of enforcement can consist of "the government's failure to disavow enforcement").

question of subject matter jurisdiction, constitutional ripeness is assessed at the time of filing of the complaint. *See Yamada v. Snipes*, 786 F.3d 1182, 1203-1204 (9th Cir. 2015) (noting that "all questions of subject matter jurisdiction except mootness" are "determined as of the date of the filing of the complaint"). Thus, for the same reasons that they have standing, Health Care Providers satisfy constitutional ripeness. *Supra* pp. 26-35.

Courts have sometimes also considered prudential ripeness, which looks to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Tingley*, 47 F.4th at 1070. The prudential ripeness doctrine sits on uncertain footing.[15] At most, it is a discretionary issue, rather than a jurisdictional one. *See McClung v. City of Sumner*, 548 F.3d 1219, 1224 (9th Cir. 2008), *abrogated on other grounds by Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013). Because it is a nonjurisdictional issue, a defendant forfeits prudential ripeness arguments that are not properly raised to the district court. *See Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000), *as amended* (Aug. 11, 2000) ("[A] party waives objections to nonconstitutional standing not properly raised before the district court.").

---

[15] The Supreme Court has indicated that prudential ripeness is "in tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Driehaus*, 573 U.S. at 158 (cleaned up).

Health Care Providers satisfy any fitness requirement that might apply because their claims are primarily legal and offer more than sufficient factual context for the Court to rule, since the Labrador Interpretation specifies the conduct that Health Care Providers reasonably fear prosecution for doing, and it effectively compels Health Care Providers to immediately comply. *See Tingley*, 47 F.4th at 1070 (considerations for the fitness prong include whether "the issues raised are primarily legal" and "do not require further factual development," and whether the "challenged action is final," which can turn on whether "the action has a direct and immediate effect on the complaining parties" and "requires immediate compliance with its terms" (internal quotation marks omitted)); 1-ER-048-049 (finding that the Labrador Interpretation was a "definitive statement of an agency's position" and referred to "certain, specific conduct"). Health Care Providers likewise satisfy the hardship prong, which looks at whether the challenged law or action "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Tingley*, 47 F.4th at 1070-1071. The Labrador Interpretation has already inflicted and, if the injunction is vacated will again inflict, constitutional violations on Health Care Providers by chilling their exercise of their right to inform patients about and refer patients to legal out-of-state abortions. *See supra* pp. 6-8.

AG Labrador cites no authority suggesting that a defendant can, by disavowal or voluntary cessation, render unripe a case that was ripe when filed; indeed, such a rule would be inconsistent with this Court's standing and mootness jurisprudence. He nevertheless rehashes his post-filing efforts in another attempt to avoid the merits of Health Care Providers' case by arguing that it is not ripe. As an initial matter, AG Labrador has forfeited any prudential ripeness argument based on AG Opinion 23-1 by failing to "properly raise[]" it to the district court. *See Pershing*, 219 F.3d at 899-900. As described, *supra* pp. 10, the district court rejected as procedurally deficient AG Labrador's attempt to raise AG Opinion 23-1 in supplemental briefing, 3-ER-291, a ruling well within its discretion, *see Pershing*, 219 F.3d at 900 (reviewing such a decision for "clear abuse of discretion").

Moreover, even if these post-filing actions could unripen a case—they cannot—neither the April 7 Letter nor AG Opinion 23-1 have any impact on Health Care Providers' injury or on the fitness or hardship prongs of the prudential ripeness analysis. *Contra* AG Br. 32-33. The April 7 Letter purports to simply withdraw the March 27 Opinion; it says nothing about the source of Health Care Providers' injuries, which arise from the threat inherent in the Labrador Interpretation, not the March 27 Opinion itself. AG Opinion 23-1 similarly does not disavow either that interpretation of the abortion ban or AG Labrador's willingness to assist in a future prosecution on those grounds; it concerns only procedural steps prior to AG

Labrador's becoming involved in a prosecution under the law. *Cf. Culinary Workers Union*, 200 F.3d at 618 ("We do not agree with the state that the attorney general's subsequent disavowal of her authority can be construed to eliminate [the credible threat]"). Finally, as with injury-in-fact, *supra* pp. 27-35, AG Labrador's reference to his connection to the County Prosecutors confuses ripeness with the causation and redressability prongs of standing doctrine, both of which were conclusively resolved in *Wasden*. Moreover, the County Prosecutors also have not disavowed the Labrador Interpretation. *See supra* p. 35 n.14.[16]

### C.    AG Labrador's Litany Of Post-Filing Actions Have Not Mooted The Case

AG Labrador repeats his litany of purported disavowals as grounds to find mootness. In doing so, he again misunderstands the law and the nature of Health Care Providers' injury.

*First,* "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth*, 528 U.S. at 189 (citation omitted). To show mootness by voluntary action, a defendant "bears the formidable burden of

---

[16] *Trump v. New York*, 141 S. Ct. 530 (2020), does not change this analysis. There, the plaintiff had no ongoing injury because the alleged chill on census responses ended when the census response period ended. *Id.* at 534. Here, by contrast, Health Care Providers continue to see patients who need assistance obtaining abortions out-of-state.

showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190. This can ordinarily be accomplished by statutory change, but "an executive action that is not governed by any clear or codified procedures cannot moot a claim." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). Put another way, "a voluntary change in official stance or behavior moots an action only when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018). Even uncritically accepting AG Labrador's descriptions of his actions following the complaint, all they amount to are voluntary cessations or mere litigation positions. *See Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) ("Of course, the government's disavowal must be more than a mere litigation position."). He "withdrew" the March 27 Opinion, issued AG Opinion 23-1 regarding his authority to enforce Idaho criminal statutes, and made statements in briefing and argument that the Labrador Interpretation "is not being enforced." AG Br. 34-35. Each of these are at best "executive actions" that are not codified and can be reversed just as easily as they were taken, and thus cannot moot the claim. *McCormack*, 788 F.3d at 1025; *Fikre*, 904 F.3d at 1039.

*Second*, even if they were not made irrelevant by the voluntary cessation doctrine, none of AG Labrador's post-filing actions actually address Health Care Providers' injuries, and thus cannot moot the case. As described, *supra* pp. 37-38, Health Care Providers' injuries are caused by the Labrador Interpretation set forth in the March 27 Opinion, not by the March 27 Opinion itself, so merely "withdrawing" that Opinion without disclaiming that interpretation does nothing to moot the claim. Similarly, AG Opinion 23-1 does not address the substance of the Labrador Interpretation. Most perplexingly, AG Labrador highlights his counsel's statements to the district court that the March 27 Opinion "is not an opinion that is being enforced," AG Br. 35; but, obviously, stating that the statute "is not being enforced" is not tantamount to disavowing future enforcement, and has no impact whatsoever on claims in a *pre-enforcement* suit.

AG Labrador argues that the government is not required to "affirmatively state that its own actions are wrong" or offer a "substantive" rejection to moot the case, AG Br. 37, but this argument is flatly contradicted by Ninth Circuit precedent. *See McCormack*, 788 F.3d at 1025 (noting that the relevant official "never repudiated the statute as unconstitutional" and that, despite ceasing to prosecute, that decision was not "because he believed the prosecution was unlawful"); *Fikre*, 904 F.3d at 1040 (concluding that without offering proper reasons for cessation, "we may not infer the government's acquiescence to the righteousness of [plaintiff's]

contentions"). As *McCormack* and *Fikre* demonstrate, substantive repudiation *is* a critical element of a mootness inquiry, and there was no such repudiation here.

Contrary to AG Labrador's statement, it is easy "to imagine how the Attorney General could have more convincingly disavowed intent to enforce [the March 27] Opinion's analysis," AG Br. 35—he could have said in an official opinion or affidavit that the abortion ban *cannot* be enforced against medical providers for making referrals or assisting individuals in obtaining out-of-state abortions. 1-ER-056 ("Instead, the Attorney General has strained at every juncture possible to distance himself from his previous statement without committing to a new interpretation or providing any assurances to this Court or the [Health Care Providers]. Attorney General Labrador's targeted silence is deafening.").

## III. REASSIGNMENT TO A NEW DISTRICT COURT JUDGE IS UNWARRANTED

AG Labrador's concluding argument is that Judge Winmill cannot be trusted to fairly decide this case and that it must be assigned to a different judge on remand. This argument rests on the false premises that Judge Winmill ignored relevant materials, misrepresented the positions of AG Labrador, and prejudiced AG Labrador through his rulings.

Reassignment to a different district court judge is appropriate only in "rare and extraordinary circumstances" based on consideration of

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind

41

previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Krechman v. County of Riverside*, 723 F.3d 1104, 1111-1112 (9th Cir. 2013).

None of those factors is present here. As explained in more detail above (at p. 10), Judge Winmill's decision not to consider various belated filings from AG Labrador, including AG Opinion 23-1, was logical, justified, and well within his discretion. *See McDonald v. Lauren*, 808 F. App'x 576, 577 (9th Cir. 2020) (noting a district court's "broad discretion to manage its docket" in denying a request for supplemental briefing). And allowing briefing on AG Opinion 23-1 would not have made any difference, because it merely makes legal arguments that the district court addressed and held do not dictate the outcome here. *See* 3-ER-317-321 (determining that "[t]he Idaho Attorney General may bring or assist in a prosecution under Idaho Code § 18-622 only if specifically requested by a county prosecutor pursuant to an appointment made by a district court under Idaho Code § 31-2603"); 1-ER-019-021 (rejecting the nature of AG Labrador's enforcement authority as a ground for dismissal, based on *Wasden*).

Moreover, the denial was not, as AG Labrador suggests, "without explanation." AG Br. 39. The court provided detailed reasoning for why it denied the requests, namely that AG Labrador failed to timely brief arguments on the

schedule set by the court, and instead dragged out the urgent preliminary injunction proceedings with many supplemental filings that were neither permitted nor requested. 3-ER-291-292. Courts regularly deny requests for similarly unnecessary and unauthorized filings. *See, e.g.*, *Shetty v. Lewis*, 2017 WL 1177993, at *3 (N.D. Cal. Mar. 30, 2017), *aff'd*, 704 F. App'x 687 (9th Cir. 2017). And AG Labrador's representations regarding the County Prosecutors' motions to dismiss are equally misleading. The court did not "refus[e] to consider" the motions to dismiss, AG Br. 40—it instead deferred ruling on them and ruled only as to AG Labrador. 1-ER-060.

In any event, AG Labrador cites no authority for his position that such routine rulings as those denying motions for supplemental briefing, or deferring a ruling on certain motions while deciding others—both of which are within the district court's broad discretion to manage its docket—"leads to an appearance of impropriety that would be best cured by reassignment to a new judge on remand." AG Br. 40. Moreover, the district court's rulings went both ways—he declined to strike twenty-four declarations from County Prosecutors that were also filed without permission. 1-ER-015.

Likewise, AG Labrador's assertion that the district court "mischaracterized the Attorney General's arguments," AG Br. 40, is equally false. AG Labrador *did* confirm at the preliminary injunction hearing that he did not disavow the substance

of the Labrador Interpretation exactly as the district court said. The additional text that the district court "omitted" was not "relevant and material," AG Br. 40, and does nothing to change the fact that AG Labrador has repeatedly avoided making any representation that he will not prosecute, which is the crucial question for all of the issues raised by AG Labrador in this case. AG Labrador's argument amounts to a mere correction of what he views as a Bluebooking error.

Finally, AG Labrador's argument that Judge Winmill issued prejudicial rulings is just a repackaging of his easily dismissed argument that Judge Winmill should have considered his late-filed submissions. Although these rulings were favorable to Health Care Providers and AG Labrador may believe that they are incorrect, they were well within Judge Winmill's discretion. *See McDonald*, 808 F. App'x at 577.

In sum, the "rare and extraordinary circumstances" required to reassign a case to a new judge are far from present here. *Krechman*, 723 F.3d at 1112. AG Labrador's arguments to the contrary are just another in a long line of desperate litigation tactics to obtain an undeserved advantage in this case.

## CONCLUSION

For the foregoing reasons, this Court should affirm the order of the district court granting Health Care Providers preliminary injunctive relief against AG Labrador. Further, given the complete absence of extraordinary circumstances

necessitating judicial transfer, this Court should not reassign this case to a different district judge.

Date: September 26, 2023

Respectfully submitted,

/s/ Peter G. Neiman

JENNIFER R. SANDMAN
CATHERINE PEYTON HUMPHREVILLE
PLANNED PARENTHOOD FEDERATION OF
  AMERICA
123 William Street
New York, NY 10038
(212) 965-7000

*Attorneys for Plaintiff-Appellee
Planned Parenthood Great Northwest,
Hawaii, Alaska, Indiana, Kentucky*

DINA FLORES-BREWER
AMERICAN CIVIL LIBERTIES UNION OF
  IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
(208) 344-9750

ANDREW BECK
MEAGAN BURROWS
RYAN MENDÍAS
SCARLET KIM
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633

Peter G. Neiman
Alan E. Schoenfeld
Michelle Nicole Diamond
Rachel E. Craft
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
New York, NY 10007
(212) 230-8800
peter.neiman@wilmerhale.com

KATHERINE V. MACKEY
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6993

COLLEEN R. SMITH
STRIS & MAHER LLP
AMERICAN CIVIL LIBERTIES UNION
  OF IDAHO FOUNDATION
  COOPERATING ATTORNEY
1717 K Street NW, Suite 900
Washington, DC 2006
(202) 800-5749

*Attorneys for Plaintiffs-Appellees*

*Attorneys for Plaintiffs-Appellees Drs.*
*Caitlin Gustafson and Darin Weyhrich*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-35518

I am the attorney or self-represented party.

**This brief contains** 10,602 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Peter G. Neiman **Date** 9/26/23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

# STATUTORY ADDENDUM
# TABLE OF CONTENTS

Page

28 U.S.C. §1292(a)(1)................................................................Add. 1

28 U.S.C. §1331........................................................................Add. 2

28 U.S.C. §1343........................................................................Add. 3

Idaho Code §19-304..................................................................Add. 4

Idaho Code §31-2603................................................................Add. 5

Idaho Code §67-1401................................................................Add. 6

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE

CHAPTER 83. COURTS OF APPEALS

## §1292. Interlocutory decisions

(a) Except as provided in subsections (c) and (d) of this section, the court of appeals shall have jurisdiction of appeals from:

>   (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

***

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
    CHAPTER 85. DISTRICT COURTS; JURISDICTION

## §1331. Federal Question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
    CHAPTER 85. DISTRICT COURTS; JURISDICTION

**§1343. Civil rights and elective franchise**

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

> (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

> (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

(b) For purposes of this section—

> (1) the District of Columbia shall be considered to be a State; and

> (2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

TITLE 19. CRIMINAL PROCEDURE
  CHAPTER 3. LOCAL JURISDICTION OF PUBLIC OFFENSES

**§19-304.  OFFENSES COMMITTED IN DIFFERENT COUNTIES**. (1) When a public offense is committed in part in one (1) county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two (2) or more counties, the venue is in either county.

(2)  When more than one (1) felony is committed in more than one (1) county pursuant to a continuing criminal transaction or a common scheme or plan, venue shall be in any county in which one or more of such offenses has occurred.

(3)  If a crime has been committed in the state of Idaho but it cannot be shown which county properly has venue, then in such case Ada county shall be the proper county of venue.

TITLE 31. COUNTIES AND COUNTY LAW

CHAPTER 26. PROSECUTING ATTORNEY

**§31-2603. SPECIAL PROSECUTOR — APPOINTMENT.** (a) When the prosecuting attorney for the county is absent from the court, or when he has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged, and for which he is to be tried on a criminal charge, or when he is near of kin to the party to be tried on a criminal charge, or when he has a business connection or kinship with the complainant or defendant, or when he is unable to attend to his duties, the district court may, upon petition of the prosecuting attorney or board of county commissioners, by an order entered in its minutes, stating the cause therefor, appoint some suitable person to perform for the time being, or for the trial of such accused person, the duties of such prosecuting attorney, and the person so appointed has all the powers of the prosecuting attorney, while so acting as such.

(b) The prosecuting attorney may petition the district judge of his county for the appointment of a special assistant attorney-general to assist in the prosecution of any criminal case pending in the county; and if it appears to the district judge to whom such petition is addressed that good cause appears for granting such petition, the district judge, may, with the approval of the attorney-general, appoint an assistant attorney-general to assist in such prosecution. The compensation of the person so appointed shall be fixed by agreement between the district judge and the attorney-general and shall be paid by the attorney-general out of appropriations made available for the conduct of his office.

# Idaho Code §67-1401

TITLE 67. STATE GOVERNMENT AND STATE AFFAIRS
     CHAPTER 14. ATTORNEY GENERAL

**67-1401.  DUTIES OF ATTORNEY GENERAL**. Except as otherwise provided in this chapter, it is the duty of the attorney general:

(1)  To perform all legal services for the state and to represent the state and all departments, agencies, offices, officers, boards, commissions, institutions and other state entities in all courts and before all administrative tribunals or bodies of any nature. Representation shall be provided to those entities exempted pursuant to the provisions of section 67-1406, Idaho Code. Whenever required to attend upon any court or administrative tribunal, the attorney general shall be allowed necessary and actual expenses, all claims for which shall be audited by the state board of examiners.

(2)  To advise all departments, agencies, offices, officers, boards, commissions, institutions and other state entities in all matters involving questions of law.

(3)  After judgment in any of the causes referred to in this chapter, to direct the issuing of such process as may be necessary to carry the same into execution.

(4)  To account for and pay over to the proper officer all moneys received that belong to the state.

(5)  To enforce the Idaho charitable solicitation act, chapter 12, title 48, Idaho Code; the Idaho nonprofit hospital sale or conversion act, chapter 15, title 48, Idaho Code; to supervise charitable organizations, as such term is defined in section 48-1903(4), Idaho Code; and to enforce whenever necessary any noncompliance or departure from the charitable purpose of such charitable organizations as set forth and provided in chapter 19, title 48, Idaho Code.

(6)  To give an opinion in writing, without fee, to the legislature or either house thereof, or any senator or representative, and to the governor, secretary of state, treasurer, state controller, and the superintendent of public instruction, when requested, upon any question of law relating to their respective offices. The attorney general shall keep a record of all written opinions rendered by the office and such opinions shall be compiled annually and made available for public inspection. All costs incurred in the preparation of said opinions shall be borne by

the office of the attorney general. A copy of the opinions shall be furnished to the supreme court and to the state librarian.

(7) When required by the public service, to repair to any county in the state and assist the prosecuting attorney thereof in the discharge of duties.

(8) To bid upon and purchase, when necessary, in the name of the state, and under the direction of the state controller, any property offered for sale under execution issued upon judgments in favor of or for the use of the state and to enter satisfaction in whole or in part of such judgments as the consideration for such purchases.

(9) Whenever the property of a judgment debtor in any judgment mentioned in subsection (8) of this section has been sold under a prior judgment, or is subject to any judgment, lien, or encumbrance, taking precedence of the judgment in favor of the state, under the direction of the state controller, to redeem such property from such prior judgment, lien, or encumbrance; and all sums of money necessary for such redemption must, upon the order of the board of examiners, be paid out of any money appropriated for such purposes.

(10) When necessary for the collection or enforcement of any judgment hereinbefore mentioned, to institute and prosecute, on behalf of the state, such suits or other proceedings as may be necessary to set aside and annul all conveyances fraudulently made by such judgment debtors; the cost necessary to the prosecution must, when allowed by the board of examiners, be paid out of any appropriations for the prosecution of delinquents.

(11) To exercise all the common law power and authority usually appertaining to the office and to discharge the other duties prescribed by law.

(12) To report to the governor the condition of the affairs of the attorney general's office and of the reports received from prosecuting attorneys.

(13) To appoint deputy attorneys general and special deputy attorneys general and other necessary staff to assist in the performance of the duties of the office. Such deputies and staff shall be nonclassified employees within the meaning of section 67-5302, Idaho Code.

(14) To establish a medicaid fraud control unit pursuant to the provisions of section 56-226, Idaho Code, and to exercise concurrent investigative and prosecutorial

authority and responsibility with county prosecutors to prosecute persons for the violation of the criminal provisions of chapter 2, title 56, Idaho Code, and for criminal offenses that are not defined in said chapter 2, title 56, Idaho Code, but that involve or are directly related to the use of medicaid program funds or services provided through the medicaid program.

(15)  To seek injunctive and any other appropriate relief as expeditiously as possible to preserve the rights and property of the residents of the state of Idaho and to defend as necessary the state of Idaho, its officials, employees, and agents in the event that any law or regulation violating the public policy set forth in the Idaho health freedom act, chapter 90, title 39, Idaho Code, is enacted by any government, subdivision, or agency thereof.

(16)  To establish an internet crimes against children unit pursuant to the provisions of section 67-1410, Idaho Code, and to exercise concurrent investigative and prosecutorial authority and responsibility with county prosecutors to prosecute persons for the violation of the criminal provisions of sections 18-1507, 18-1509A, 18-1513 and 18-1515, Idaho Code, which may also encompass criminal offenses that are not defined in said sections but that involve or are directly related to child pornography and solicitation of minors for pornography, prostitution or sex-related offenses.

(17)  To respond to allegations of violation of state law by elected county officers, to investigate such claims, to issue appropriate findings and to refer such cases for further investigation and prosecution pursuant to section 31-2002, Idaho Code.

(18)  To establish a sobriety and drug monitoring program to reduce the number of people on Idaho's highways who drive under the influence of alcohol or drugs, to reduce the number of repeat offenders for certain offenses in which the abuse of alcohol or drugs was a contributing factor, and to increase pretrial and posttrial options for prosecutors and judges in responding to repeat DUI offenders and offenders for certain crimes in which the abuse of alcohol or drugs was a contributing factor in the commission of the crime; and to adopt such rules and establish such fees as are necessary for the operation of said program, as set forth by law.