No. 23-35518

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, ET AL.,

*Plaintiffs-Appellees,*

*v.*

RAÚL LABRADOR, ET AL.,

*Defendant-Appellant,*

On Appeal from the United States District Court
for the District of Idaho

No. 1:23-cv-00142-BLW
The Honorable B. Lynn Winmill

## REPLY BRIEF OF APPELLANT

RAÚL R. LABRADOR
  *Attorney General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
brian.church@ag.idaho.gov

JOSHUA N. TURNER
  *Acting Solicitor General*

BRIAN V. CHURCH
  *Deputy Attorney General*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

REPLY ..............................................................................................................1

I.  The Attorney General Has Eleventh Amendment Immunity And
Wasden Does Not Say Otherwise................................................................2

II.  The Attorney General Hasn't Threatened Plaintiffs—Or Anyone—So Plaintiffs
Have No Article III Injury And Their Claims Are Not Ripe................................9

III.  The Attorney General Has Unambiguously Said That He Will Not
Attempt To Enforce The "Labrador Interpretation," So Plaintiffs'
Claims Are Also Moot ............................................................................. 17

IV.  On Remand, Reassignment Is Appropriate .......................................... 20

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Bates v. Bankers Life and Cas. Co.*,
848 F.3d 1236 (9th Cir. 2017).................................................................6

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) ..............................................................................16

*Brach v. Newsom*,
38 F.4th 6 (9th Cir. 2022).........................................................12, 18, 19

*Bd. Of Trustees of the Glazing Health and Welfare Trust v. Chambers*,
941 F.3d 1195 (9th Cir. 2019)...............................................................19

*California Trucking Association v. Bonta*,
996 F.3d 644 (9th Cir. 2021)..................................................................12

*Culinary Workers Union v. Del Papa*,
200 F.3d 614 (9th Cir. 1999)......................................................8, 14, 16

*Ex parte Young*,
209 U.S. 123 (1908) .................................................................................2

*Fikre v. FBI*,
904 F.3d 1033 (9th Cir. 2018).................................................................18

*Flast v. Cohen*,
392 U.S. 83 (1968) .............................................................................1, 16

*Guzman-Andrade v. Gonzales*,
407 F.3d 1073 (9th Cir. 2005)..................................................................6

*Herklotz v. Parkinson*,
848 F.3d 894 (9th Cir. 2017)....................................................................6

*Idaho Bldg. and Const. Trades Council, AFL-CIO v. Inland
Pac. Chapter of Assoc. Builders and Contractors, Inc.*,
801 F.3d 950 (9th Cir. 2015)....................................................................4

*Idaho Bldg. and Const. Trades Council, AFL-CIO v. Wasden*,
836 F.Supp.2d 1146 (D. Idaho 2011)......................................................4

*Long v. Van de Kamp,*
  961 F.2d 151 (9th Cir. 1992) ........................................................................8

*McCormack v.* Herzog,
  788 F.3d 1017 (9th Cir. 2015) ....................................................................18

*Newman v. Lance,*
  922 P.2d 395 (Idaho 1996) ......................................................................3, 4

*Planned Parenthood of Idaho, Inc. v. Wasden,*
  376 F.3d 908 (9th Cir. 2004) ................................................................ 2, 3, 4

*Snoeck v. Brussa,*
  153 F.3d 984 (9th Cir. 1998) ....................................................................2, 5

*Southern Pac. Transp. Co. v. Brown,*
  651 F.2d 613 (9th Cir. 1980) ........................................................................7

*State v. Summer,*
  76 P.3d 963 (Idaho 2003) ...........................................................................15

*Tingley v. Ferguson,*
  47 F.4th 1055 (9th Cir. 2022) ...................................................9, 10, 12, 16

*Thomas v. Anchorage Equal Rights Comm'n,*
  220 F.3d 1134 (9th Cir. 2000) ................................................... 9, 10, 13

*Trump v. New York,*
  141 S.Ct. 530 (2020) ...................................................................................17

*Wolfson v. Brammer,*
  616 F.3d 1045 (9th Cir. 2010) ......................................................10, 13, 14

**STATUTES**

Idaho Code § 18-622 ...................................................................................*passim*

R<small>EPLY</small>

Plaintiffs' response strains at every turn to press a claim where none exists. It is the Article III equivalent of The Emperor's New Clothes, with Plaintiffs assuring the Court not to worry, jurisdiction exists. But it doesn't. Any decision short of dismissal would be an advisory opinion. The Court should decline Plaintiffs' invitation to ignore "the oldest and most consistent thread in the federal law of justiciability." *Flast v. Cohen*, 392 U.S. 83, 96 (1968). Federal "courts will not give advisory opinions." *Id.*

The Court also need not be concerned that Plaintiffs' First Amendment rights to speak about abortions hang in perilous danger. They do not. Weeks before the district court enjoined the Attorney General and the supposedly muzzling "opinion"— void as it was—Plaintiff Planned Parenthood put up billboards across Boise emblazoned with the message they were allegedly prevented from speaking:



That picture speaks volumes, and one thing it says is that Plaintiffs' claims of self-censorship and fears of prosecution for speaking lack credibility.

The district court ignored Article III's limits on judicial power. It issued an injunction against an immune state official over an interpretation of Idaho's criminal law that the Attorney General has not threatened, does not hold, did not defend, cannot prosecute, and will not enforce. Accordingly, this Court should vacate the injunction and remand to a new district judge with instructions to dismiss for lack of jurisdiction.

## I.  The Attorney General Has Eleventh Amendment Immunity And *Wasden* Does Not Say Otherwise.

This case cannot get past the sovereign immunity the Constitution guarantees the Attorney General. Plaintiffs' only response is that this Court's decision in *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), controls here. It does not, and Plaintiffs' blind reliance on that case cannot overcome the substantive and outcome-determinative distinctions present on this record.

Because Plaintiffs improperly minimize the showing, the Attorney General emphasizes *Ex parte Young*'s requirement: a state officer is immune from suit unless he has "some connection with enforcement of the act." *Ex parte Young*, 209 U.S. 123, 124 (1908). The connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quotations and citations omitted). And whether a sufficient connection exists "must be determined under state law." *Id.*

2

That important constitutional standard separates this case from *Wasden*. In *Wasden*, the Court had jurisdiction over the Ada County Prosecutor. No one disputed that fact. *Wasden*, 376 F.3d at 919 ("The Ada County prosecutor acknowledges, correctly, that he is a proper defendant with regard to those provisions creating the potential for prosecution."). That fact was also necessary to the Court's Eleventh Amendment conclusion. As the Court recognized, "[u]nder Idaho law, the attorney general may 'assist' county prosecutors in a 'collaborative effort,' but may not 'assert dominion and control' over prosecutions against the county prosecutor's wishes." *Id.* (quoting *Newman v. Lance*, 922 P.2d 395, 399-401 (Idaho 1996)). Idaho law is clear that the Attorney General cannot "assist" a county prosecutor without the county prosecutor first requesting assistance, and even then, he may not act unilaterally. *Newman*, 922 P.2d at 399-401. As Opinion No. 23-1, a formal statement on the Attorney General's authority, confirms, the Attorney General does not have the authority to prosecute violations of Idaho Code § 18-622, and his assistance responsibility is derivative of a request from a county prosecutor. 3-ER-318-19. The district court erred by not considering this authoritative statement from the Attorney General.[1]

---

[1] Plaintiffs' answering brief says the district court appropriately ignored the opinion based on "the briefing schedule it set." Dkt. #34-1 at 33. Plaintiffs are apparently referring to the district court's order denying the Attorney General's request for supplemental briefing, 3-ER-290. However, the Attorney General is not asserting that the court erred in disallowing supplemental briefing (though it should have allowed such briefing); the point instead is that the district court should have considered the informative and authoritative stance on Idaho law relating to the Attorney General's

But here, Plaintiffs do not have standing against any county prosecutor, and the district court's Eleventh Amendment analysis necessarily depends on the Attorney General having unilateral enforcement authority. He does not have that authority, as even Plaintiffs concede, *see* Dkt. #34-1 at 28 n.7, and so this case is nothing like *Wasden*.[2]

Plaintiffs offer various responses to this direct—and determinative—difference, but each is unconvincing. First, Plaintiffs say that "[i]t does not matter whether a County Prosecutor is named as a defendant in the case." Dkt. #34-1 at 28-29. It matters a great deal. And it is incompatible with their admission that the Attorney General cannot "self-initiate criminal proceedings without the request for assistance of a prosecutor." *See id.* at 28 n.7. The *Wasden* decision plainly depended on the attorney general acting "in his assistance" to a county prosecutor, which at the very least requires a county prosecutor to request the attorney general's assistance. *Wasden*, 376 F.3d at 919. That threshold step is both a matter of commonsense and binding Idaho law. *See Newman*, 922 P.2d at 399 (explaining attorney general may not act "to the exclusion of" the county prosecutor).

_____

authority to prosecute violations under Idaho Code § 18-622 and his assistance responsibility.

[2] This point distinguishes the District of Idaho case cited by Plaintiffs where the district court found that the attorney general could bring his own suit "in place of the county attorney" *Idaho Bldg. and Const. Trades Council, AFL-CIO v. Wasden*, 836 F.Supp.2d 1146, 1158 (D. Idaho 2011), *vacated in part sub nom. Idaho Bldg. and Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Assoc. Builders and Contractors, Inc.*, 801 F.3d 950 (9th Cir. 2015).

Without that initial request, the Attorney General lacks the necessary enforcement connection. *Snoeck*, 153 F.3d at 986.

Plaintiffs' view that the Attorney General's "*power* to assist County Prosecutors in the enforcement of a criminal statute is sufficient—standing alone—to establish" the *Ex parte Young* exception is nonsensical. Dkt. #34-1 at 28. The Attorney General has *no* power at all—to assist or do anything else related to enforcement—unless and until his assistance is sought by a county prosecutor. Plaintiffs' reading nullifies the requirement that the Attorney General have a "fairly direct" connection to "enforcement" of the statute at issue. *Snoeck*, 153 F.3d at 986. Plaintiffs must at the very least establish that the source of their threat of injury includes a county prosecutor. That's why the district court's refusal to address the County Prosecutors' standing requires dismissal under the Eleventh Amendment. Right now, Plaintiffs cannot even show that a county prosecutor is in the picture.

Seeming to recognize that their no-county-prosecutor-needed position is untenable, Plaintiffs next contend that the district court properly ignored whether it has jurisdiction over any county prosecutor. Dkt. #34-1 at 30. For example, Plaintiffs say that the district court did not need to address whether it had jurisdiction over any prosecutor because the Attorney General allegedly failed "to timely raise this jurisdictional issue." Dkt. #34-1 at 30. Not so. These county prosecutors did not accept service until after the April 7 scheduling conference and the April 24 hearing, and they filed a timely motion to dismiss—the timeliness of which is confirmed by the Plaintiffs'

own stipulation. FER-03-04. And Plaintiffs well know that timeliness did not prevent the district court from satisfying its "independent obligation" on standing. *Herklotz v. Parkinson*, 848 F.3d 894, 897 (9th Cir. 2017). The County Prosecutors' motion to dismiss for lack of standing had been fully briefed for nearly two months before the district court ruled.

Last, and as Plaintiffs see it, "most importantly," they argue that the district court's refusal to address the County Prosecutor's jurisdictional motion is beside the point because two County Prosecutors have not moved for dismissal. Plaintiffs think that the district court—or this Court—could find no jurisdiction exists as to 42 County Prosecutors but because 2 County Prosecutors have not moved for dismissal, the Attorney General would lack Eleventh Amendment immunity. That could not be more wrong. First, because jurisdiction cannot be waived, can be raised at anytime, and must be independently verified by federal courts, the failure of the 2 County Prosecutors to move for dismissal would not prevent their dismissal—particularly on the heels of the other 42 being dismissed. *See Bates v. Bankers Life and Cas. Co.*, 848 F.3d 1236, 1238 n.1 (9th Cir. 2017). Second, Plaintiffs misunderstand what is necessary to overcome Eleventh Amendment immunity. The mere existence of a county prosecutor as a lingering, named defendant is not what matters. *Cf. Guzman-Andrade v. Gonzales*, 407 F.3d 1073, 1077 (9th Cir. 2005) (parties cannot manufacture jurisdiction). Plaintiffs instead must show—and it is their burden—that the source of their injury stems from a county prosecutor.

6

Here, Plaintiffs have not, and cannot, make that showing, and it isn't even close. Not only are Plaintiffs outside the jurisdiction of most of the County Prosecutors, but the County Prosecutors did not even learn about the "Labrador Interpretation" until Plaintiffs sued them and attached the opinion. There is simply no way Plaintiffs can establish any County Prosecutor has threatened them with enforcement of an "interpretation" the County Prosecutors knew nothing about. There is a reason why the district court still has not addressed their motion.

All of this makes Plaintiffs' case like *Southern Pac. Transp. Co. v. Brown*, 651 F.2d 613 (9th Cir. 1980). There, the plaintiffs challenged an Oregon law as unconstitutional, and the Oregon "attorney general stipulated that he would advise Oregon district attorneys to presume the act constitutional and that they would enforce it unless restrained." *Id.* at 614. But this Court found that the attorney general's direct advice to prosecuting attorneys was insufficient to bypass the Eleventh Amendment. *Id.* at 615. At most, the Court held that "his opinion might be persuasive, but the Oregon courts have not held that it would be binding and Oregon law guarantees district attorneys autonomy." *Id.* That is as, if not more, true here. The "Labrador Interpretation" was at most an opinion; it was never communicated to County Prosecutors; County Prosecutors do not regard it as a directive or binding on them; and County Prosecutors continue to operate autonomously with their own discretion intact. 3-ER-142; 3-ER-152; 3-ER-155; 3-ER-158; 3-ER-164; 3-ER-171; 3-ER-174; 3-ER-177; 3-ER-180; 3-ER-183; 3-ER-185; 3-ER-192; 3-ER-195; 3-ER-208; 3-ER-211; 3-ER-214; 3-ER-217;

7

3-ER-220; 3-ER-223; 3-ER-229; 3-ER-231; 3-ER-234; 3-ER-241; 3-ER-245; 3-ER-249; 3-ER-252; 3-ER-255; 3-ER-259; 3-ER-263; 3-ER-267; 3-ER-275; 3-ER-279; 3-ER-283; 3-ER-286.

Plaintiffs rely on *Culinary Workers Union v. Del Papa*, 200 F.3d 614 (9th Cir. 1999), but that case supports the Attorney General's position, not theirs. This Court held that the Nevada attorney general was subject to suit under *Ex parte Young* because she sent a letter directly to the plaintiffs "threatening either to enforce the statute on behalf the Banking Commissioner or to refer the matter to a local prosecutor," and she later "defend[ed] her authority and power to do so during much of the proceedings before the district court." *Id.* at 619. That case demonstrates the total absence of facts here that could trigger *Ex parte Young*'s exception. The Attorney General did not send his now-retracted opinion to Plaintiffs at any point, and the opinion nowhere threatened Plaintiffs with prosecution. There has never been a threat that the Attorney General would enforce his opinion of a law he has no authority to enforce. *Cf. Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir. 1992) ("Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction.").

Contrary to Plaintiffs' claims, this case is not "on all fours" with *Wasden*. Dkt. #34-1 at 27. The Attorney General cannot enforce Section 622, nor has he threatened to enforce Section 622. And no County Prosecutor has given any indication that it would enforce the "Labrador Interpretation," let alone request the Attorney General's

assistance in doing so. The district court had no business ignoring the Eleventh Amendment, and this Court should vindicate the Attorney General's immunity.

## II. The Attorney General Hasn't Threatened Plaintiffs—Or Anyone—So Plaintiffs Have No Article III Injury And Their Claims Are Not Ripe.

Plaintiffs have no standing because they cannot show that they have ever faced "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Dkt. #23-1 at 36 (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (citation omitted)). The law requires them to show evidence of a "specific warning or threat" to initiate proceedings. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022). "Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies this test." *Id.*

Plaintiffs' answering brief contends the "Labrador Interpretation" was a specific warning or threat to initiate proceedings. Dkt. #34-1 at 37. But it was not. The interpretation in the Crane Letter was only ever an "opinion" on Idaho law from an elected official with no enforcement authority. The letter was provided by hand delivery to a state representative. 3-ER-344. And it addressed a personal request to opine on Idaho's criminal abortion law's application in three circumstances. *Id.* The letter was not hand delivered to Plaintiffs. The Attorney General did not post the letter on Plaintiffs' social media, did not mail, email, or otherwise transmit the opinion to Plaintiffs.

Plaintiffs nevertheless contend that the interpretation in the Crane Letter was a specific warning because it was signed by the Attorney General on his letterhead, and addressed a topic—three actually—that "applied to only a small category of individuals." Dkt. #34-1 at 37. But these reasons ignore that the Crane Letter was simply a letter with an "opinion" provided by one state official to another. The Crane Letter was not a warning to the public, to doctors, or to Plaintiffs specifically. *See* 3-ER-344. It cannot fairly be characterized as any type of threat, however generalized. The fact that the letter addressed a question that would only concern doctors providing abortions is not characteristic of a threat, but of an Attorney General answering a request for his "opinion" on the issue.

Plaintiffs also say that even if the "Labrador Interpretation" was a general warning, then their self-censorship establishes standing. Dkt. #34-1 at 37. But they wrongly rely on this Court's holding from *Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010), that a First Amendment pre-enforcement challenge may be appropriate where "a threat of enforcement may be inherent in the challenged statute, sufficient to meet the constitutional component of the ripeness injury." *Wolfson,* 616 F.3d at 1059 (citing cases). That is true, but the rule remains that "'[n]either the mere existence of a proscriptive statute nor a generalized threat of prosecution'" is sufficient. *Tingley*, 47 F.4th at 1067 (quoting *Thomas*, 220 F.3d at 1139).

The latent-threat-of-prosecution doctrine is inapplicable. In this case, Plaintiffs have not actually self-censored, and contrary to Plaintiffs' assertion, the Attorney

General certainly disputes that they have self-censored. *Cf.* Dkt. #34-1 at 39. They are putting billboards around Boise trumpeting the very speech they allege has been chilled. 4-ER-449-50. And they admit that their speech is apparently not so chilled or muzzled that they are able to "alleviate" the alleged "ongoing harm of the Labrador Interpretation." Dkt. #34-1 at 40 n.12. Moreover, Plaintiffs only challenge the "Labrador Interpretation," not the statute itself. And that is problematic because the "opinion" in the Crane Letter made no threat of prosecution and cannot be construed as an inherent threat given its non-statutory, unenforceable status. Again, the lack of threat is confirmed by the Attorney General's inability to prosecute violations of Idaho Code § 18-622.

Plaintiffs cling to their frenzied reading of the Crane Letter and argue that the Court can construe it as a credible threat because the Attorney General has not disavowed enforcement. But that argument is factually and legally wrong. The below shows just how clearly the Attorney General has, in fact, disavowed any enforcement:

> And while having no enforcement authority necessarily means having no intent to enforce, even if a case were referred to him by a county prosecutor, the Attorney General does not defend the theory of the Crane Letter and it is not being enforced. Tr. at 45–46 (Apr. 24, 2023); Dkt. 107 at 1; Dkt. 85 at 10. Put simply, the Attorney General has shown that he does not intend to bring any prosecution consistent with the theory of the Crane Letter.

3-ER-134. Without support from any authority, Plaintiffs say more is required for disavowal. Specifically, Plaintiffs say the Attorney General should "have said in an

official opinion or affidavit that the abortion ban *cannot* be enforced against medical providers for making referrals or assisting individuals in obtaining out-of-state abortions." Dkt. #34-1 at 49 (Plaintiffs' emphasis). What Plaintiffs are demanding is that the Attorney General formally *approve* their conduct, but that is something very different than disavowal of enforcing the opinion in the Crane Letter. *See Brach v. Newsom*, 38 F.4th 6, 14 (9th Cir. 2022) (en banc). Disavowal is about removing any perceived threat—offering an advisory opinion authorizing desired activity and forbidding county prosecutors who don't report to him from taking action takes this Court's law way beyond its limits.

In *California Trucking Association v. Bonta*, 996 F.3d 644 (9th Cir. 2021), the threat of enforcement remained because of "the state's refusal to disavow *enforcement*"—not because of the state's unwillingness to affirmatively and expressly approve of any specific action. *Id.* at 653 (emphasis added). Likewise, in *Tingley* there was no disavowal because Washington "confirmed that it will enforce the ban on conversion therapy as it enforces other restrictions on unprofessional conduct." *Tingley*, 47 F.4th at 1068. Plaintiffs' desire for some type of cover from the Attorney General is not a disavowal requirement.

Plaintiffs try to sidestep the "specific warning or threat" requirement by arguing that the Attorney General made "a secret threat." Dkt. #34-1 at 38. It is unclear how a "secret" threat can even operate as a threat in the first place, but there is no question a "secret" threat is not a "specific warning or threat to initiate proceedings," which *Thomas*

requires. *Thomas*, 220 F.3d at 1139. The most Plaintiffs can muster is that Crane Letter, in their view, was bound to be public because of Idaho Code § 67-1401(6). But Plaintiffs misunderstand Idaho law, which only requires publishing of formal, level three opinions.[3] The guidance offered through the Attorney General's office in level one and level two opinions is not subject to a publication requirement. And regardless, the third-party publisher of the Crane Letter simply revealed a letter with an "opinion" on Idaho law by a state official; it did not contain a threat or warning, much less a specific threat or warning regarding enforcement directed to Plaintiffs.

Plaintiffs last argue that the Attorney General fails to tie any of his arguments to the three *Thomas* factors. Dkt. #34-1 at 39. That's a strange claim coming on the heels of nearly four pages of responding to the Attorney General's argument about the *Thomas* factors. Stranger yet, Plaintiffs claim that *Wasden* carries some type of "preclusive effect" that establishes their fear of prosecution as "plausible and reasonable." *Id.* at 40-41. Of course, that is not the case. Because Plaintiffs have no "plausible" or "reasonable" fear of prosecution from any County Prosecutor, they also lack any basis to fear prosecution from the Attorney General and self-censorship standing alone won't satisfy the injury requirement. *See Wolfson*, 616 F.3d at 1062.

---

[3] In footnote 11 of the answering brief, Plaintiffs allege that the Crane Letter was not a "level two" opinion because "it was signed by AG Labrador himself, not by his staff." Dkt. #34-1 at 39 n.11. Plaintiffs cite 3-ER-340, but nothing on that page supports Plaintiffs' assertion. Nothing in Section VI of the policy requires staff to sign letters, and section IV of the policy in discussing the dispatching of opinions begins by noting how level two opinions are "generally" dispatched. 3-ER-339-40.

Despite Plaintiffs' odd and contrary claim, the *Wasden* decision did not hold that a plaintiff has an injury in fact anytime the Attorney General opines on the law.

Plaintiffs are also wrong that the "plausible and reasonable" requirement is solely relevant to causation and redressability. *Cf.* Dkt. #34-1 at 40-41. The simple fact is that Plaintiffs' self-censorship counts as an injury only if they establish a "plausible and reasonable fear of prosecution." *See Wolfson*, 616 F.3d at 1062. The Attorney General cannot enforce Section 622 nor has he threatened to. No County Prosecutor has threatened to either. Plaintiffs' self-censorship—if it is even happening—does not arise from a plausible or reasonable fear of prosecution.

Plaintiffs again reference *Culinary Workers Union,* 200 F.3d at 618, but it is no more helpful for standing than immunity purposes. There is no threat to enforce a statute or encouragement to local law enforcement agencies to enforce a statute in a certain way in the Crane Letter. Likewise, Plaintiffs' cursory assertion that the recent Third Circuit decision supports their position, Dkt #34-1 at 41 n.13, fails to respond to the analysis provided by the Attorney General, and the reasoning of the Third Circuit demonstrates why there is no jurisdiction here. Dkt. #23-1 at 38-39.

Finally, in footnote 14, Plaintiffs attempt to assert that they have standing to sue the prosecutors, alleging that no prosecutor has disavowed enforcement. Dkt. #34-1 at 42 n.14. Again, the district court elected to not decide this issue, even though it had to because of the contingent nature of Attorney General's authority. Regardless, Plaintiffs are incorrect in their assertion. As discussed above, Plaintiffs are not challenging a

statute, but the "Labrador Interpretation" offered by one official to another in a letter, from an official with no enforcement authority. This is problematic because Plaintiffs have identified no statute requiring the county prosecutors to follow this now withdrawn interpretation—there is none because the Attorney General cannot direct prosecutors' independent actions, *see State v. Summer*, 76 P.3d 963, 968 (Idaho 2003). Further, the prosecutors have made clear that they never received the Crane Letter, do not consider it any type of guidance or directive regarding Section 622, and have not adopted the Crane Letter's interpretation of Section 622. 3-ER-142; 3-ER-152; 3-ER-155; 3-ER-158; 3-ER-164; 3-ER-171; 3-ER-174; 3-ER-177; 3-ER-180; 3-ER-183; 3-ER-185; 3-ER-192; 3-ER-195; 3-ER-208; 3-ER-211; 3-ER-214; 3-ER-217; 3-ER-220; 3-ER-223; 3-ER-229; 3-ER-231; 3-ER-234; 3-ER-241; 3-ER-245; 3-ER-249; 3-ER-252; 3-ER-255; 3-ER-259; 3-ER-263; 3-ER-267; 3-ER-275; 3-ER-279; 3-ER-283; 3-ER-286.

In sum, the district court erred by concluding Plaintiffs had standing to sue the Attorney General over an opinion of Idaho law that he never had authority to enforce against Plaintiffs (or anyone), never threatened to enforce against Plaintiffs (or anyone), and did not enforce against Plaintiffs (or anyone).

*Ripeness.* Plaintiffs incorrectly believe that the Attorney General is arguing that their claims have become "unripe" due to post-filing events. For the reasons stated above, Plaintiffs' claims were never ripe. The district court's injunction rests on a series of speculative and contingent future events that renders its opinion advisory. The ripeness doctrine and rule against advisory opinions jointly ensure that courts decide

issues that present concrete controversies fit for judicial review. *See Flast*, 392 U.S. at 96. This case is a textbook example of why Article III limits judicial power to cases and controversies.

Plaintiffs are also incorrect that ripeness does not take account of the state of things as they exist now, on appeal. *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974). The following three post filing developments *are* relevant: the withdrawal of the Crane Letter; Opinion No. 23-1 with the Attorney General's disavowal of enforcement authority; and the lack of any prosecutor endorsing the guidance in the Crane Letter. *See* Dkt. #23-1 at 40-41. And each of them confirms that Plaintiffs' claims are not fit for review. The "Labrador Interpretation" has no "direct and immediate effect" on Plaintiffs; it does not have "the status of law"; and it does not require "immediate compliance with its terms." *See Tingley*, 47 F.4th at 1070.

Plaintiffs also cannot show that they will suffer any hardship from this Court withholding review. Plaintiffs' billboard advertising shows that Plaintiffs themselves do not believe the "law requires an immediate and significant change in [their] conduct," and the voidance of the Crane Letter combined with the Attorney General's express disavowal and lack of enforcement authority triply confirms that Plaintiffs do not face "serious penalties." *Id.* at 1071.

Plaintiffs' rebuttal to the three post-filing developments, *see* Dkt. #34-1 at 45-46, repeats arguments already addressed above. Plaintiffs' reference to *Culinary Workers Union*, Dkt. #34-1 at 46 (citing 200 F.3d at 618), where the Attorney General made an

express threat in a letter to the union that "she will cause the statute to be enforced unless the union ceases distribution of the handbill", only shows why that case is so different from the situation here. And instead of engaging with the U.S. Supreme Court's ripeness analysis in *Trump v. New York*, 141 S.Ct. 530 (2020), as discussed by the Attorney General in his opening brief, Dkt. #23-1 at 41, Plaintiffs simply reference the standing holding, Dkt. #34-1 at 46 n.16, without recognizing the "standing and ripeness inquiries" that both showed judicial resolution was premature in the *Trump* case. Just as in *Trump*, Plaintiffs' claims depend on a string of speculative and contingent events that impede judicial review. Dkt. #23-1 at 41-42. Their case is not ripe.

III. **The Attorney General Has Unambiguously Said That He Will Not Attempt To Enforce The "Labrador Interpretation," So Plaintiffs' Claims Are Also Moot.**

Plaintiffs continue to press the fiction that they remain under threat of prosecution. Even assuming there was ever anything to enjoin in this suit, there is certainly nothing left now. The Crane Letter was rescinded, and the Attorney General made clear the opinion was not being enforced. Dkt. #23-1 at 43 (citations omitted). The Attorney General has also formally disavowed authority to enforce violations of Idaho Code § 18-622 without a county prosecutor for requesting his assistance and without a state trial court appointing him to assist in an existing prosecution. *Id.* at 42. And the Attorney General informed the Court that he did not defend the theory of the Crane Letter and would not enforce it. *Id.* at 43 (citations omitted).

17

In their answering brief, Plaintiffs contend that the Attorney General's points are "at best 'executive actions.'" Dkt. #34-1 at 47. Yet Plaintiffs ignore that their suit is not based on the alleged illegality of the statute itself, but only a challenge to the "Labrador Interpretation." The "Labrador Interpretation" is void and withdrawn. Plaintiffs' references to *McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015), and *Fikre v. FBI*, 904 F.3d 1033 (9th Cir. 2018), are not on point. In *McCormack* a county prosecutor dropped criminal charges and offered transactional immunity to the plaintiff—but the statute on which such charges were brought still remained on the books. 788 F.3d at 1025. The Ninth Circuit found the voluntary cessation exception applied given the timing of the offer—it came after the Ninth Circuit concluded the statute was unconstitutional—and did not satisfy the court that prosecution would not recur. *Id.* Likewise, in *Fikre*, the government's removal of an individual from the No-Fly List did not, in the court's view, satisfy it that the case was not moot. 904 F.3d at 1040-41.

In those cases, the government had already taken action against the plaintiffs. But not so here. There's been no threat. No charge. No listing. And the "Labrador Interpretation" is void and withdrawn, and there is no basis for Plaintiffs' concern. Any fears Plaintiffs have are remote and speculative. *See Brach*, 38 F.4th at 14. As the Attorney General explained in his opening brief, like the repeal of a statute, the Withdrawal Letter "has voided the challenged 'legal' basis for the Plaintiffs' alleged threat." Dkt. #23-1 at 44. Plaintiffs offered nothing to overcome the presumption that should apply to the voidance and withdrawal of the Crane Letter. *Cf. Bd. of Trustees of the*

*Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc). Even if the Court was not convinced that the voidance and withdrawal of the letter were sufficient, certainly the combination of that action, the express statements of his lack of direct prosecutorial authority over violations of Idaho Code § 18-622 in Opinion No. 23-1, and the statements made by the Attorney General to the district court confirm that he will not enforce the "Labrador Interpretation" in any way. *Cf. Brach*, 38 F.4th at 14.

Plaintiffs' argument that the Attorney General could simply reverse course, Dkt. #34-1 at 47, is belied by the Court's recent decision in *Brach*. There, the Court addressed the plaintiffs' similar argument that the California governor had the continuing authority to close schools. 38 F.4th at 14. That is, Governor Newsom could, plaintiffs contended, simply issue another executive order. *Id.* The Court rejected plaintiffs' speculation and dismissed the fact that Governor Newsom could similarly exercise his power to close schools, relying on the actions taken by the state officials. *Id.* The same is true here. The *Brach* case also demonstrates, contrary to Plaintiffs' argument, Dkt. #34-1 at 48, that a state official need not affirmatively state that its own actions were wrong or offer a substantive rejection of its prior actions.

The district court erred in not dismissing this case as moot based on the Attorney General's actions and assurances.

**IV.     On Remand, Reassignment Is Appropriate**.

The Attorney General does not request reassignment lightly, but this is one of the rare cases where it is appropriate. Plaintiffs do not dispute that the district court omitted the full response from counsel for the Attorney General and made it appear as though nothing were omitted. That was especially inappropriate given the claim the district court was attributing to the Attorney General. It reflects unfairness and creates a legitimate question of whether the Attorney General will be treated impartially. So do the district court's decisions to ignore material evidence and filings related to its jurisdictional determination. The district court did not even cite or analyze Opinion No. 23-1 in its preliminary injunction decision. Likewise, the district court did not consider the impact of the motions to dismiss by the prosecutors. Although Plaintiffs chalk this up to a simple deferral, this was not a case where the court could defer consideration of its authority over the named prosecutors. The reasons outlined by the Attorney General, Dkt. #23-1 at 47-49, suggest why it is advisable to reassign this case.

## CONCLUSION

For the foregoing reasons, the Attorney General has Eleventh Amendment sovereign immunity; there is no federal court jurisdiction over this matter; and, respectfully, the case should be reassigned to a different judge once this case is reversed and remanded.

Respectfully submitted,

October 26, 2023.

HON. RAÚL R. LABRADOR
Attorney General

/s/    *Joshua N. Turner*
JOSHUA N. TURNER
Acting Solicitor General
BRIAN V. CHURCH
Deputy Attorney General


*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

9th Circuit Case No.:          23-35518

I am the attorney representing Appellant.

**This brief contains 5,176 words,** including 23 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.


/s/ *Joshua N. Turner*                        October 26, 2023
JOSHUA N. TURNER

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing/attached documents on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Description of Documents:

Reply Brief of Appellant

/s/ *Joshua N. Turner*                                        October 26, 2023
JOSHUA N. TURNER