**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PLANNED PARENTHOOD GREAT NORTHWEST, HAWAII, ALASKA, INDIANA, KENTUCKY, On Behalf of Itself, Its Staff, Physicians and Patients; CAITLIN GUSTAFSON, On Behalf of Herself and Her Patients; DARIN WEYHRICH, On Behalf of Himself and His Patients, | No. 23-35518 |
| | D.C. No. 1:23-cv-00142-BLW |
| | |
| *Plaintiffs-Appellees*, | OPINION |
| | |
| v. | |
| | |
| RAUL R. LABRADOR, In His Official Capacity as Attorney General of the State of Idaho, | |
| | |
| *Defendant-Appellant*, | |
| | |
| and | |
| | |
| MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE; IDAHO STATE BOARD OF NURSING, In Their Official Capacities; COUNTY PROSECUTING ATTORNEYS, In Their Official Capacities; CODY BROWER, Oneida County Prosecutor; | |

STEVE STEPHENS, Butte County
Prosecutor; JAN BENNETTS, Ada
County Prosecutor; CHRIS BOYD,
Adams County Prosecutor; ALEX
GROSS, Boise County Prosecutor;
ANDRAKAY PLUID, Boundary
County Prosecutor; JIM THOMAS,
Camas County Prosecutor; MCCORD
LARSEN, Cassia County Prosecutor;
E. CLAYNE TYLER, Clearwater
County Prosecutor; TREVOR
MISSELDINE, Gooding County
Prosecutor; MARK TAYLOR,
Jefferson County Prosecutor; ROB
WOOD, Madison County Prosecutor;
LANCE STEVENSON, Minidoka
County Prosecutor; BENJAMIN
ALLEN, Shoshone County Prosecutor;
GRANT LOEBS, Twin Falls County
Prosecutor; BRIAN NAUGLE, Valley
County Prosecutor; LOUIS E.
MARSHALL, Bonner County;
RICHARD TALBOT ROATS;
ADAM STRONG; BRYAN
TAYLOR; ADAM MCKENZIE, Bear
Lake County Prosecutor; S. DOUG
WOOD, Caribou County Prosecutor;
JUSTIN COLEMAN, Nez Perce
County Prosecutor; PAUL WITHERS;
JASON MACKRILL, Power County
Prosecutor; JUSTIN OLESON;
MARIAH DUNHAM, Benewah
County Prosecutor; PAUL ROGERS,

PLANNED PARENTHOOD V. LABRADOR                    3

Bingham County Prosecutor; SHONDI
LOTT, Elmore County Prosecutor;
LINDSEY BLAKE, Fremont County
Prosecutor; BRAD CALBO, Jerome
County Prosecutor; STANLEY
MORTENSEN, Kootenai County
Prosecutor; BILL THOMPSON, Latah
County Prosecutor; BRUCE
WITHERS, Lemhi County
Prosecutors; ZACHARY PALL,
Lewis County; CHRISTOPHER
TOPMILLER, Owyhee County
Prosecutor; MIKE DUKE, Payette
County Prosecutor; DELTON
WALKER, Washington County
Prosecutor; STEPHEN F. HERZOG,
Bannock County Prosecutor; RANDY
NEAL, Bonneville County Prosecutor;
KIRK ANGUS MACGREGOR, Idaho
County Prosecutor; JANNA BIRCH,
Clark County Prosecuting Attorney;
MATT FREDBACK, Blaine County
Prosecutor; VIC PEARSON, Franklin
County Prosecutor; ERICK
THOMSON, Gem County Prosecutor;
BAILEY SMITH, Teton Valley
Prosecutor,

*Defendants*.

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

4 PLANNED PARENTHOOD V. LABRADOR

Argued and Submitted March 27, 2024
Seattle, Washington

Filed December 4, 2024

Before: Kim McLane Wardlaw, William A. Fletcher, and
Eric D. Miller, Circuit Judges.

Opinion by Judge W. Fletcher;
Partial Concurrence by Judge Miller

## SUMMARY[*]

### First Amendment/Abortion

The panel affirmed the district court's order preliminarily enjoining on First Amendment grounds the Idaho Attorney General from enforcing his interpretation of a provision of Idaho's criminal abortion statute, Idaho Code § 18-622(1), as prohibiting medical providers from referring a patient across state lines to an abortion provider.

Idaho Code § 18-622 criminalizes performing or attempting to perform an abortion as a felony punishable by two to five years in prison. Subparagraph 1 of § 18-622 imposes professional licensing penalties on any health care professional who "assists in performing or attempting to perform an abortion." Idaho Code § 18-622(1). In their lawsuit, Planned Parenthood and two physicians allege that

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 18-622(1), as interpreted by the Attorney General in an opinion letter to a state legislator ("Opinion Letter"), violates, among other things, their right to free speech because it prevents medical providers in Idaho from providing patients with information about abortion services in other states.

The panel first held that the physician plaintiffs, who prior to the Opinion Letter, had provided their patients with information or referrals to abortion providers outside of Idaho, had established Article III standing. The panel next held that the case was ripe and not moot despite the Attorney General's subsequent withdrawal of the Opinion Letter as void on procedural grounds. The withdrawal did not disavow the Attorney General's interpretation of § 18-622(1), and the Attorney General remained free to enforce the interpretation. Finally, because the Attorney General was authorized to assist in the enforcement of §18-622(1), the Eleventh Amendment did not bar the suit, and he was properly named a defendant under *Ex parte Young*.

Addressing the merits, the panel agreed with the district court that the plaintiffs established a likelihood of success on the merits of their First Amendment claim. The Attorney General's interpretation of § 18-622(1) in the Opinion Letter was a content-based restriction on speech because it silences healthcare providers on the specific topic of abortion. The interpretation forbids the expression of a particular viewpoint—that abortion services in another state would likely help a patient. Because the physician plaintiffs made out a colorable First Amendment claim, they demonstrated that they likely would suffer irreparable harm absent an injunction. The panel affirmed the district court's order granting the preliminary injunction and denied the Attorney

General's request to assign this case to a different district judge.

Concurring in part and concurring in the judgment, Judge Miller noted that in this preliminary injunction appeal, the Idaho Attorney General challenged only the jurisdiction of the district court and expressly disclaimed any challenge to the merits of the injunction. Judge Miller agreed with the majority that the Attorney General's jurisdictional argument failed, but did not join the portion of the opinion in which the court went on to address the merits because the court should confine itself to the issues presented by the parties and refrain from opining on constitutional questions that have not been briefed and that are unnecessary to the resolution of this appeal.

## COUNSEL

Peter G. Neiman (argued), Alan E. Schoenfeld, Michelle N. Diamond, and Rachel E. Craft, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Katherine Mackey, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts; Jennifer R. Sandman and Catherine P. Humphreville, Planned Parenthood Federation of America, New York, New York; Emily M. Croston and Paul C. Southwick, American Civil Liberties Union of Idaho Foundation, Boise, Idaho; Andrew D. Beck, Meagan Burrows, Scarlet Kim, and Ryan Mendias, American Civil Liberties Union Foundation, Washington, D.C.; Colleen R. Smith, Stris & Maher LLP, Washington, D.C.; for Plaintiffs-Appellees.

Alan M. Hurst (argued) and Brian V. Church, Deputy Attorneys General; Lincoln D. Wilson, Chief, Civil Litigation and Constitutional Defense; Joshua N. Turner, Deputy Solicitor General; Theodore J. Wold, Solicitor General; Raul R. Labrador, Idaho Attorney General; Office of the Idaho Attorney General, Boise, Idaho; for Defendant-Appellant.

---

## OPINION

W. FLETCHER, Circuit Judge:

Idaho Code § 18-622 criminalizes performing or attempting to perform an abortion as a felony punishable by two to five years in prison.  A subparagraph of § 18-622 imposes professional licensing penalties on any health care professional who "assists in performing or attempting to perform an abortion."  Idaho Code § 18-622(1).

In March 2023, Idaho Attorney General Raúl Labrador wrote a letter on his official stationery to a state legislator stating that he interpreted the word "assists" in § 18-622(1) as prohibiting medical providers from "refer[ring]" a patient "across state lines to an abortion provider."  Soon thereafter, the letter was published on the public website of a third-party organization.  Planned Parenthood and two physicians sued, alleging that § 18-622(1) as interpreted by the Attorney General violated the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Commerce Clause.  Based on the First Amendment, the district court preliminarily enjoined the Attorney General from enforcing § 18-622(1) under the Attorney General's interpretation as set forth in that letter.

On appeal, the Attorney General contends that plaintiffs have not suffered an injury sufficient for Article III standing and that their claims are simultaneously unripe and moot. The Attorney General also contends that he is not a proper defendant under the Eleventh Amendment. We disagree and affirm the district court's grant of a preliminary injunction. We deny the Attorney General's request for reassignment to a different district judge.

## I. Factual and Procedural Background

### A. Idaho Code § 18-622

The Idaho legislature passed Idaho Code § 18-622 in 2020. The statute went into effect shortly after the Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022).

With exceptions not relevant here, § 18-622 criminalizes performing or attempting to perform an abortion as a felony punishable by two to five years in prison. Section 18-622(1) imposes professional licensing penalties on "any health care professional who performs or attempts to perform an abortion or who assists in performing or attempting to perform an abortion in violation of this subsection." Section 18-622(1) mandates that the provider's license be suspended for at least six months upon the first offense and permanently revoked upon the second.

### B. The Opinion Letter

On March 27, 2023, Attorney General Labrador sent a letter to Idaho Representative Brent Crane (the "Opinion Letter"). Representative Crane had requested the Attorney General's opinion on whether § 18-622 prohibits referral of women across state lines to obtain abortion services. In

response to Representative Crane's request, the Attorney General wrote:

> Idaho law prohibits an Idaho medical provider from either referring a woman across state lines to access abortion services or prescribing abortion pills for the woman to pick up across state lines. Idaho law requires the suspension of a health care professional's license when he or she "*assists* in performing or attempting to perform an abortion." Idaho Code § 18-622(2)[1] (emphasis added). The plain meaning of assist is to give support or aid. An Idaho health care professional who refers a woman across state lines to an abortion provider or who prescribes abortion pills for the woman across state lines has given support or aid to the woman in performing or attempting to perform an abortion and has thus violated the statute.

(emphasis in original).

The Opinion Letter was signed by the Attorney General and printed on his official letterhead. In his brief to us, the Attorney General writes that the Opinion Letter was intended to be a communication only to Representative

---

[1] A prior version of Idaho Code § 18-622 was in effect when the Attorney General issued the Opinion Letter. The relevant language remains unchanged. However, the language that now appears in subparagraph 622(1) of the statute was in subparagraph 622(2) at the time of the Opinion Letter. *Compare* Idaho Code § 18-622 (effective July 1, 2023) *with* Idaho Code § 18-622 (effective July 1, 2020). We will consistently refer to subparagraph 622(1) in our opinion.

Crane. However, the letter was soon published on the public website of a third-party organization.

## C. The Lawsuit

On April 5, 2023, after the Opinion Letter was made public, Planned Parenthood Great Northwest and two physicians, Dr. Caitlin Gustafson and Dr. Darin Weyhrich, (collectively, "plaintiffs"), sued the Attorney General, all Idaho county prosecutors, and individual members of the Idaho State Boards of Medicine and Nursing. Plaintiffs alleged that § 18-622(1), as interpreted by the Attorney General in the Opinion Letter, violated their First Amendment right to free speech because it prevented medical providers in Idaho from providing patients with information about abortion services in other states. Plaintiffs also alleged that the Attorney General's interpretation of the statute violated the Due Process Clause and the Commerce Clause because it criminalized abortions performed outside of Idaho. They sought a temporary restraining order and a preliminary injunction to enjoin enforcement of § 18-622(1) as interpreted in the Opinion Letter.

The Attorney General and some of the county prosecutor defendants filed a motion to dismiss and an opposition to the plaintiffs' motion for a preliminary injunction. They maintained that the case should be dismissed as non-justiciable and as barred by the Eleventh Amendment. They did not defend the constitutionality of § 18-622(1) as interpreted in the Opinion Letter; nor did they address the merits of plaintiffs' request for a preliminary injunction.

## D. Post-Filing Developments

On April 7, two days after plaintiffs filed suit, the Attorney General sent a second letter to Representative

Crane, withdrawing his Opinion Letter and characterizing it as void (the "Withdrawal Letter"). The Attorney General provided the Withdrawal Letter to the district court on the same day. The Attorney General wrote to Representative Crane in the Withdrawal Letter:

> On March 27, 2023, I provided you with a letter analysis of several questions prepared by my Associate Attorney General. Since then, the letter analysis has been mischaracterized as law enforcement guidance sent out publicly to local prosecutors and others. It was not a guidance document, nor was it ever published by the Office of the Attorney General.

> Due to subsequent events in the legislative process and my determination that your request was not one I was required to provide under Idaho law, that analysis is now void. Accordingly, I hereby withdraw it.

The Withdrawal Letter characterized the Opinion Letter as void on the ground that Representative Crane's request for an opinion was procedurally improper under Idaho Code § 67-1401(6). The Withdrawal Letter declared that the Opinion Letter did not "represent the views of the Attorney General on any question of Idaho law," but the Withdrawal Letter did not disavow or disclaim the legal reasoning or conclusions in the Opinion Letter. Nor did it offer an alternative interpretation of § 18-622(1).

On April 24, the district court held a hearing on the motion to dismiss and the motion for a preliminary injunction. The court asked counsel for the Attorney

General whether "there [was] still no disavowal of the legal analysis or conclusions drawn in [the Opinion Letter]." Counsel for the Attorney General answered, "[T]hat is . . . correct, but it's not the right framing of the issue. And that's because if there is no properly presented context for us to have an opinion on this issue, then we don't have an opinion on this issue. Nothing has called on us to do so."

On April 27, the Attorney General issued Opinion No. 23-1, an official opinion regarding the Attorney General's statutory authority to enforce § 18-622. Opinion No. 23-1 reviewed Idaho statutory authority and case law and concluded that "under Idaho law, the Attorney General has prosecutorial authority only if specifically conferred by the Legislature or if requested by county prosecutors and approved by a state district judge." The opinion concluded that, because the Idaho legislature has not specifically authorized the Attorney General to prosecute violations of § 18-622, the "Attorney General may not bring or assist in a prosecution under Idaho Code § 18-622 unless a county prosecutor specifically so requests and an appointment is made by the district court under Idaho Code § 31-2603."

That same day, the Attorney General asked permission to file a supplemental brief to address the effect of Opinion No. 23-1 on the justiciability of plaintiffs' claims. He also asked permission to submit supplemental briefing to address whether plaintiffs' intended conduct of counselling and referring patients to out-of-state abortion providers was protected speech under the First Amendment. The district court denied both requests, writing that the Attorney General "could have issued the new opinion or made the protected speech argument on the original briefing schedule. Plaintiffs have waited several weeks for urgent relief—due in part to the Court's calendar—and the Court will not impose further

delay for matters that could and should have been brought sooner."

### E. The Preliminary Injunction

On July 31, the district court denied the motion to dismiss and granted plaintiffs' motion to preliminarily enjoin the Attorney General from enforcing § 18-622(1) as interpreted in the Opinion Letter.[2]  The court held that the physician plaintiffs have Article III standing to bring a pre-enforcement First Amendment challenge, that the First Amendment claim was ripe and not moot,  and that the Attorney General is subject to suit for prospective relief under *Ex parte Young*, 209 U.S. 123 (1908).  The district court granted a preliminary injunction, holding that plaintiffs have shown a likelihood of success on the merits of their First Amendment claim and a likelihood of irreparable harm absent an injunction.  The Attorney General timely appealed.

### II.  Standard of Review

"We review the district court's decision to grant or deny a preliminary injunction for abuse of discretion."  *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam).  We review de novo the district court's interpretation of underlying legal principles. *Id.*  "[A] district court abuses its discretion when it makes an error of law."  *Id.*

---

[2] The district court declined to issue an injunction against the members of the Idaho State Boards of Medicine and Nursing because plaintiffs did not address standing for their claims against those defendants.  The court deferred ruling on the county prosecutors' jurisdictional objections. Accordingly, the members of the State Boards and the county prosecutors are not subject to the preliminary injunction and are not parties to this appeal.

### III.  Discussion

### A.  Justiciability

### 1.  Article III Standing

The "irreducible constitutional minimum" of Article III standing has "three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Article III "requires a plaintiff to have [1] suffered an injury in fact, [2] caused by the defendant's conduct, that [3] can be redressed by a favorable result." *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022) (citing *Lujan*, 504 U.S. at 560–61) (bracketed numbers added).  Where, as here, plaintiffs bring a pre-enforcement challenge under the First Amendment, "'unique standing considerations' . . . 'tilt dramatically toward a finding of standing.'" *Id.* at 1066–67 (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)).  That is because "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013).

On appeal, the Attorney General argues that the two physician plaintiffs have not established an Article III injury with respect to their First Amendment claims.  Specifically, he argues the Opinion Letter does not convey "a credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); "Pre-enforcement injury is a special subset of injury-in-fact," where "the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024).  However, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" satisfies the injury requirement.

*Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). "Rather, there must be a 'genuine threat of imminent prosecution.'" *Id.* (quoting *San Diego Cnty. Gun Rts. Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)).

In *Thomas*, our circuit articulated a three-prong framework for "evaluating the genuineness of a claimed threat of prosecution." *Id.*

The Supreme Court has articulated the framework for evaluating pre-enforcement injury in a slightly different way, "albeit incorporating part of the essence of the Ninth Circuit test." *Peace Ranch*, 93 F.4th at 487. Under *Driehaus*, a plaintiff demonstrates injury-in-fact by showing "[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298) (bracketed numbers added).

Though our circuit "has toggled between" the *Thomas* and *Driehaus* formulations, we have "adopt[ed] the Supreme Court's framework" in *Driehaus*. *Peace Ranch*, 93 F.4th at 487 (adopting *Driehaus* and citing *Arizona v. Yellen,* 34 F.4th 841, 849 (9th Cir. 2022) (applying *Driehaus*), and *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018) (applying *Thomas*)). The parties' briefing and the district court's order analyzed standing under *Thomas.* Shortly before oral argument, the parties filed Rule 28(j) letters that raised arguments under *Driehaus* in light of our decision in *Peace Ranch*.

The Attorney General does not challenge the Article III standing of Planned Parenthood in this appeal. If the physician plaintiffs have standing, we need not address the

standing of Planned Parenthood. "Where the legal issues on appeal are fairly raised by 'one plaintiff [who] had standing to bring the suit, the court need not consider the standing of the other plaintiffs.'" *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 (9th Cir. 2004) (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1086 (9th Cir. 2003)). We are satisfied that the physician plaintiffs have established injury sufficient for Article III standing under *Driehaus*.

We address the three *Driehaus* criteria in turn.

### a. Intended Course of Conduct Affected with a Constitutional Interest

It is clear that plaintiffs have shown that they had an intended course of conduct affected with a constitutional interest. "[A] plaintiff need not plan to break the law" to show an "intention to engage in a course of conduct" under *Driehaus*. *Peace Ranch*, 93 F.4th at 488. Rather, we "must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed." *Id.*

The physician plaintiffs testified that prior to the Attorney General's Opinion Letter they referred or planned to refer patients to out-of-state abortion services. They stopped providing such referrals after the Opinion Letter became public because they feared enforcement. *See Tingley*, 47 F.4th at 1068 ("[W]e do not require plaintiffs to specify 'when, to whom, where, or under what circumstances' they plan to violate the law when they have already violated the law in the past.") (quoting *Thomas*, 220 F.3d at 1139).

Dr. Gustafson stated in a sworn declaration that, after § 18-622 went into effect but before the Opinion Letter

became public, she provided "options counseling" for pregnant patients. That counseling "involve[d] an open-ended conversation with the patient that would cover giving birth, adoption, and abortion." If the patient were considering abortion, Dr. Gustafson provided details about different abortion options and explained that such services are unavailable in Idaho. She informed patients about "where abortion services remain legal and advise[d] them on their out-of-state options for abortion care." She also directed patients with medical complications to facilities that could provide appropriate care. For example, she told "a patient who was 20 weeks pregnant and with a medically complicated pregnancy that her best out-of-state option for abortion care was in Portland or Seattle, because many other hospitals and clinics cannot provide appropriate care for such patients."

Before the Opinion Letter became public, Dr. Gustafson also referred patients to abortion providers outside of Idaho. The referral process involved conversations with patients and with "out-of-state providers to help facilitate continuity of care and provide medically pertinent information to the receiving physician." If, for example, a patient presented with a medical complication or a complex mental health or social history and needed abortion care, Dr. Gustafson contacted out-of-state abortion providers to communicate the patient's medical history.

After the Opinion Letter became public, Dr. Gustafson stopped providing patients with information and recommendations about out-of-state abortion services because she feared her statements violated § 18-622(1) as interpreted by the Attorney General. She also stopped referring patients to abortion providers in other states. She explained in her declaration that the licensing penalties she

could face under § 18-622(1) would jeopardize her livelihood and ability to practice medicine.

Dr. Weyhrich stated in a sworn declaration that, even after § 18-622 came into effect, he continued to treat patients who would choose to seek abortion care. For example, some of Dr. Weyhrich's patients who were considering prenatal screening asked whether he could refer them to out-of-state abortion providers if the screening showed severe fetal anomalies. Although Dr. Weyhrich has not yet needed to make any such referrals, he explained that, before the Opinion Letter became public, he typically would have discussed the patients' "options for abortion care in other states" and "recommend[ed] or refer[red] them to abortion providers in other states." If necessary, he also would have called abortion providers in other states to facilitate continuity of care. After the Opinion Letter became public, Dr. Weyhrich decided he could no longer provide information or refer patients to abortion providers outside of Idaho due to the risk of serious licensing penalties.

b. Conduct Arguably Proscribed by the Statute

It is equally clear that plaintiff's intended conduct was arguably proscribed by the statute. The Attorney General's Opinion Letter states that § 18-622(1) prohibits "referring" a patient "across state lines to access abortion services." That is precisely what the physician plaintiffs did or intended to do before the Opinion Letter was made public.

c. Substantial Threat of Enforcement

Finally, plaintiffs have shown a substantial threat of enforcement. The ability to satisfy this prong "often rises or falls with the enforcing authority's willingness to disavow enforcement." *Peace Ranch*, 93 F.4th at 490. In *Peace*

*Ranch*, for example, the Attorney General had "stop[ped] short of stating its intention to enforce" the challenged law against the plaintiff, "and his briefing diligently avoid[ed] taking a stance." *Id.* But there was no question that the challenged law targeted the plaintiff, and at oral argument the Attorney General's counsel refused to "commit" to not enforcing the law against the plaintiff. *Id.* We held that the "clear targeting" of the plaintiff and the Attorney General's failure to disavow enforcement were "enough to substantiate the threat and satisfy the final *Driehaus* prong." *Id.*

The same is true here. Far from a general warning of enforcement, the Opinion Letter singled out "Idaho health care professional[s]" who perform the specific act of "referring" patients to abortion providers "across state lines." Both physician plaintiffs testified that they referred or intended to refer patients to abortion providers outside Idaho but have self-censored after the Opinion Letter became public.

The Attorney General has refused to disavow his interpretation of § 18-622(1) contained in the Opinion Letter. *See Tingley*, 47 F.4th at 1068 ("We have, however, interpreted the government's failure to *disavow* enforcement of the law as weighing in favor of standing."); *see also Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("Here, the state's refusal to disavow enforcement . . . is strong evidence that the state intends to enforce the law and that [plaintiffs] face a credible threat."). And the Attorney General has not offered an alternative interpretation of the scope of § 18-622(1).

The Attorney General argues there is no threat of enforcement based on the Opinion Letter because he lacks authority to enforce § 18-622(1) directly. Several county

prosecutors submitted declarations in opposition to the preliminary injunction motion stating that they do not view the Opinion Letter as "guidance or directive." But it is important to note that a substantial number of county prosecutors did *not* submit such declarations. Further, we note that the Governor can direct the Attorney General to assist a prosecutor. Idaho Code § 67-802(7).

On the record before us, we conclude that there is a significant likelihood that a county prosecutor will enforce § 18-622(1) and will rely on the Opinion Letter's interpretation to support such enforcement. There is also some likelihood that a county prosecutor will request the Attorney General's assistance in the enforcement, and some likelihood that the Governor will direct the Attorney General to assist a prosecutor. To the extent the Attorney General suggests causation is lacking, our precedent makes clear that the Attorney General's authority to assist county prosecutors in the enforcement of penal statutes like § 18-622(1) "demonstrates the requisite causal connection for standing purposes." *See Wasden*, 376 F.3d at 920.

The Attorney General also argues that the Opinion Letter cannot be construed as a threat of enforcement because it was intended as a private communication. However, the Opinion Letter is no ordinary private communication. It was signed by the Attorney General in his official capacity, written on the Attorney General's official letterhead, and delivered to an Idaho lawmaker in response to that lawmaker's request for the Attorney General's interpretation of the statute. As the district court noted, the Opinion Letter remains the Attorney General's only public written interpretation of § 18-622(1). On this record, the physician plaintiffs reasonably viewed the Opinion Letter as

"communicat[ing] a specific warning or threat to initiate proceedings" against them.  *Thomas*, 220 F.3d at 1139.

### 2. Ripeness

"The ripeness doctrine is 'drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Cath. Soc. Servs, Inc.*, 509 U.S. 43, 57 n.18 (1993)).  The doctrine is intended to prevent "premature adjudication" and judicial entanglement in "abstract disagreements."  *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  Ripeness, like standing, is evaluated "less stringently in the context of First Amendment claims."  *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173–74 (9th Cir. 2022) (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).  But ripeness, unlike standing, takes into account events that have occurred after the filing of the complaint.  *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974) ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern.").

### a. Constitutional Ripeness

"For a suit to be ripe within the meaning of Article III, it must present 'concrete legal issues, presented in actual cases, not abstractions.'"  *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (quoting *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947)).  In many cases, the constitutional component of ripeness "is synonymous with the injury-in-fact prong of the standing inquiry."  *Twitter*, 56 F.4th at 1173 (quoting *Cal. Pro-Life*

*Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003)).  But "[w]hile standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur."  *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997).

The Attorney General argues this case is constitutionally unripe for the same reasons he contends the physician plaintiffs lack injury-in-fact.  But as is apparent from our discussion above, the physician plaintiffs' First Amendment claim is a concrete rather than abstract challenge to the Attorney General's interpretation of § 18-622(1) in the Opinion Letter.  The ripeness requirement of Article III is therefore satisfied.

### b.  Prudential Ripeness

Unlike Article III standing and ripeness, "[p]rudential considerations of ripeness are discretionary."  *Thomas*, 220 F.3d at 1142.  The Supreme Court has stated that the prudential ripeness doctrine is "in some tension" with "the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'"  *Driehaus*, 573 U.S. at 167 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).  However, we need not address this tension because both prongs of the prudential ripeness test—"the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"—are easily satisfied here.  *Thomas*, 220 F.3d at 1141 (quoting *Abbott Lab'ys*, 387 U.S. at 149).

With regard to the fitness of the issues for judicial decision, "pure legal questions that require little factual development are more likely to be ripe."  *San Diego County*, 98 F.3d at 1132.  The Attorney General argues that plaintiffs'

First Amendment claims are not ripe and are "riddled with contingencies and speculation that impede judicial review" because they depend on a county prosecutor relying on the interpretation of § 18-622(1) in the Opinion Letter, prosecuting one of the plaintiffs, and requesting the assistance of the Attorney General in the prosecution. We disagree with the Attorney General's conclusion. The First Amendment claim is primarily legal. The Opinion Letter specifies the conduct that the physician plaintiffs reasonably fear prosecution for doing; and the declarations of Drs. Gustafson and Weyrich "provide enough of a specific factual context" because they describe in detail how the Opinion Letter has impaired their ability to treat patients. *See Tingley*, 47 F.4th at 1070. The Letter effectively compelled the physician plaintiffs to self-censor, and it had a "direct and immediate effect" on their ability to provide information and referrals to patients in need of abortion services. *Id.* (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)).

The hardship prong of prudential ripeness "dovetails, in part, with the constitutional consideration of injury." *Thomas*, 220 F.3d at 1142. It "requires looking at whether the challenged law 'requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Tingley*, 47 F.4th at 1070–71 (quoting *Stormans, Inc.*, 586 F.3d at 1126). Section 18-622(1) requires exactly that. The physician plaintiffs described in detail how the publication of the Opinion Letter forced them to choose between "refraining from desired speech or engaging in that speech and risking costly sanctions." *Id.* at 1071. As noted above, there are serious professional licensing penalties for noncompliance with § 18-622(1).

The Attorney General also contends this case is prudentially unripe due to the issuance of the Withdrawal Letter, which characterized the Opinion Letter as void on procedural grounds. However, the Withdrawal Letter said nothing to disavow the Attorney General's interpretation of § 18-622(1), which is the source of the physician plaintiffs' constitutional injury.

### 3. Mootness

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)) (some internal quotation marks omitted). In evaluating mootness, we may "look to changing circumstances that arise after the complaint is filed." *ACLU of Nev. v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006) (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001)).

"[A] defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *F.B.I. v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth*, *Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). This is a "formidable burden." *Id.* (quoting *Friends of the Earth*, 428 U.S. at 190). "Were the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off." *Id.* Accordingly, "[t]o show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'"

*Id.* (some internal quotation marks omitted) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)).

The voluntary cessation rule "holds for governmental defendants no less than for private ones." *Id.* The government is entitled to a presumption of good faith when it asserts mootness, but it "must still demonstrate that the change in its behavior is 'entrenched' or 'permanent.'" *Fikre v. F.B.I.*, 904 F.3d 1033, 1037 (9th Cir. 2018) (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015)). "[A] voluntary change in official stance or behavior moots an action only when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Id*. at 1039 (first quoting *McCormack*, 788 F.3d at 1025, then quoting *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014)). Thus, "an executive action that is not governed by any clear or codified procedure cannot moot a claim." *McCormack*, 788 F.3d at 1025; *see also Rosebrock*, 745 F.3d at 971 ("[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot.").

This case is not moot despite the Attorney General's efforts to make it so. While plaintiffs' motion for a preliminary injunction was pending, the Attorney General withdrew the Opinion Letter and characterized it as void solely on procedural grounds. He also repeatedly disclaimed any authority to enforce § 18-622(1) directly. But the Attorney General still has not repudiated his conclusion that § 18-622(1) prohibits referring patients to out-of-state abortion providers. Nor has he provided an alternative interpretation of § 18-622(1) that would ease plaintiffs' fears

of enforcement. The Withdrawal Letter, Opinion No. 23-1, and the Attorney General's statements during the pendency of the litigation do not change the fact that absent an injunction the Attorney General remains "free to return to his old ways" and enforce § 18-622(1) as he interpreted it in his Opinion Letter. *W.T. Grant Co.*, 345 U.S. at 632.

## B. Eleventh Amendment

Absent abrogation, the Eleventh Amendment prohibits federal and state courts from entertaining suits against unconsenting states and their instrumentalities. However, suits seeking prospective relief under federal law may ordinarily proceed against state officials sued in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908); *see also Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022). To be the proper subject of judicially ordered prospective relief, a state official must have "some connection with the enforcement" of the challenged act. *Ex parte Young*, 209 U.S. at 157. The connection requirement is "modest." *Mecinas*, 30 F.4th at 904. It "demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state laws or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Id.* at 903–04 (quoting *Wasden*, 376 F.3d at 919).

The Attorney General contends he is not a proper defendant under *Ex parte Young* because he does not have authority to enforce § 18-622(1) directly. Idaho law grants county prosecutors the "primary duty" to enforce the state's penal statutes. Idaho Code § 31-2227; *see also id.* § 31-2604 (listing the duties of county prosecutors). Absent a specific grant of authority by the Idaho legislature, the Attorney General has the duty to "assist" county prosecutors "in the

discharge of duties" "[w]hen required by the public service," *id.* § 67-1401(7), or when ordered by the governor of Idaho, *id.* § 67-802(7).

Idaho law sets out at least three avenues through which the Attorney General may assist county prosecutors. First, a county prosecutor may move for the trial court to appoint the Attorney General as a special prosecutor with "all the powers of the prosecuting attorney." *Id.* § 31-2603(a). Second, a county prosecutor may ask the trial court to appoint a special assistant Attorney General to prosecute or assist in prosecuting a criminal case. *Id.* § 31-2603(b). Third, the Governor may direct the Attorney General to assist a prosecutor. *Id.* § 67-802(7). The Idaho Supreme Court has held that when rendering assistance the Attorney General may "do every act that the county attorney can perform." *Newman v. Lance*, 922 P.2d 395, 399 (Idaho 1996) (per curiam).

The Attorney General argues that his authority to assist in the enforcement of § 18-622 is insufficient to subject him to suit under *Ex parte Young*. The district court appropriately concluded that our decision in *Wasden* forecloses the Attorney General's argument. *See Wasden*, 376 F.3d at 919. The plaintiffs in *Wasden* sought to enjoin the Idaho Attorney General and the Ada County prosecutor from enforcing an Idaho statute that governed minors' access to abortion services. The Attorney General argued he was not a proper defendant under the Eleventh Amendment because he lacked authority to enforce the challenged statute directly because under Idaho law he could only assist county prosecutors in the discharge of their duties. We held that there was a sufficient enforcement connection to subject the Attorney General to suit because "unless the county prosecutor objects, '[t]he attorney general may, in his

assistance, *do every act* that the county attorney can perform.'" *Wasden*, 376 F.3d at 920 (quoting *Newman*, 922 P.2d at 399) (emphasis in *Wasden*). "That is, the attorney general may in effect deputize himself (or be deputized by the governor) to stand in the role of a county prosecutor, and in that role exercise the same power to enforce the statute the prosecutor would have." *Id.* We held "[t]hat power demonstrates the requisite causal connection" for standing and *Ex parte Young* purposes. *Id.*

The same is true here. The Attorney General's authority to assist in the enforcement of § 18-622(1) is essentially the same as the authority at issue in *Wasden*. Opinion No. 23-1, the official opinion the Attorney General issued after the preliminary injunction hearing, does not alter the analysis. Opinion No. 23-1 asserts that the analysis in *Wasden* "is immaterial" to the Attorney General's authority to enforce penal laws. It also states that the Idaho Governor may not require the Attorney General to render assistance over the objections of a county prosecutor. However, Opinion No. 23-1 ultimately concludes that the Attorney General has authority to enforce § 18-622 only "if specifically requested by a county prosecutor pursuant to an appointment made by a district court under Idaho Code § 31-2603." That describes essentially the same assistance authority that *Wasden* held satisfied *Ex parte Young*. *See Wasden*, 376 F.3d at 919–20.

The Attorney General's attempts to distinguish *Wasden* on other grounds are unpersuasive. He points out that in *Wasden* there was no dispute that the Ada County prosecutor was "a proper defendant with regard to those provisions creating the potential for prosecution." *Id.* at 919. Here, however, the district court has not yet determined whether it has jurisdiction over the county prosecutor defendants

because it deferred ruling on their jurisdictional objections. Even if the district court were to conclude that it does not have jurisdiction over the county prosecutors (a question we do not reach), it unquestionably has jurisdiction over the Attorney General.

The Attorney General also asserts there can be no enforcement connection for *Ex parte Young* purposes until there is a "live claim" against a county prosecutor and the prosecutor requests the assistance of the Attorney General in enforcing § 18-622(1). The Attorney General misreads *Wasden*. In *Wasden*, as in the case before us, the county prosecutor defendant had not initiated a prosecution against the plaintiff or requested the Attorney General's assistance to enforce the challenged statute.

The Attorney General is thus a properly named defendant under *Ex parte Young*.

### C. The Preliminary Injunction

Having determined that the physician plaintiffs' First Amendment claim is justiciable and that the Eleventh Amendment poses no bar, we now turn to the preliminary injunction itself.

The district court granted the preliminary injunction on the merits. In its briefing to us, Planned Parenthood did not argue this point, but it asked this Court to affirm on the merits, urging us to "affirm the order of the district court granting . . . preliminary injunctive relief."

Despite ample opportunity to do so, the Attorney General has not contested in our court the merits of the preliminary injunction. On appeal, he has relied only on the jurisdictional challenges discussed above. We take the failure to object on the merits to the district court's

preliminary injunction as a concession by the Attorney General that the district court was correct in granting the injunction. But we will not permit the Attorney General, through the tactic of failing to argue the merits of his appeal of the preliminary injunction, to avoid our addressing those merits in the course of affirming the district court.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* (quoting *Winter*, 555 U.S. at 24). Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor" if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. This reflects our circuit's "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131.

We agree with the district court that plaintiffs established a likelihood of success on their First Amendment claim. The professional medical speech at issue here is entitled to at least as much First Amendment protection as other speech. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 767–68 (2018) ("Speech is not unprotected merely because it is uttered by 'professionals.'"). The exception for "regulations of professional conduct that incidentally burden

speech" does not apply here. *Id.* at 769. Section 18-622(1), as interpreted by the Attorney General in the Opinion Letter, is not merely an incidental burden. It directly prohibits medical professionals from "referring" a patient "across state lines to access abortion services." That is, it prohibits speech that is distinct from the actual provision of treatment. *See Tingley*, 47 F.4th at 1073 (listing the recommendation of treatment "from out-of-state providers" as an example of speech distinct from professional conduct).

The Attorney General's interpretation of § 18-622(1) in the Opinion Letter is a content-based restriction on speech because it silences healthcare providers on the specific topic of abortion. The interpretation forbids expression of a particular viewpoint—that abortion services in another state would likely help a patient. *See Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002) (holding that a statute that imposed licensing penalties on physicians who recommended medical marijuana to patients was content- and viewpoint-discriminatory).

Because the physician plaintiffs have made out "a colorable First Amendment Claim, they have demonstrated that they likely will suffer irreparable harm" absent an injunction, *Am. Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc), and that the balance of equities and public interest tip "sharply" in their favor, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023). We therefore affirm the district court's order granting the preliminary injunction.

## D. Reassignment

The Attorney General has asked that we assign this case to a different district judge. "We reassign only in 'rare and

extraordinary circumstances.'" *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015) (quoting *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1112 (9th Cir. 2013)). We may reassign when the judge "'has exhibited personal bias,' or when 'reassignment is advisable to maintain the appearance of justice.'" *Id.* (citations omitted) (quoting *In re Ellis*, 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc) and *United States v. Kyle*, 734 F.3d 956, 967 (9th Cir. 2013)). The Attorney General has not come close to meeting that standard.

No "reasonable outside observer" could conclude that the district judge harbors personal bias against the defendants or that reassignment is warranted to preserve the appearance of justice. *See id.* at 1046. The Attorney General charges that the district judge ignored relevant materials, mischaracterized the record, and unfairly denied supplemental briefing. This charge is patently false. The thorough preliminary injunction order shows that the district judge carefully considered the record, the Attorney General's arguments, and the parties' timely filings. The compressed briefing schedule reflects the emergency nature of the relief plaintiffs requested. The decisions to deny supplemental briefing and reject untimely filings were well within the district judge's broad discretion to manage his docket.

## Conclusion

We affirm the grant of a preliminary injunction and deny the request for reassignment.

**AFFIRMED.**

MILLER, Circuit Judge, concurring in part and concurring in the judgment:

In this preliminary-injunction appeal, the Idaho Attorney General challenges the jurisdiction of the district court, but he expressly disclaims any challenge to the merits of the injunction. I agree that the Attorney General's jurisdictional arguments fail, so I join most of the court's opinion.

I do not join Section III.C, however, in which the court goes on to address the merits. In my view, we should confine ourselves to the issues presented by the parties and refrain from opining on constitutional questions that have not been briefed and that are unnecessary to the resolution of this appeal. *See United States v. Sineneng-Smith*, 590 U.S. 371 (2020); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).